# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| KAREN FINN, et al.,<br><br>  Plaintiffs,<br><br>-v-<br><br>COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION and JANINE EVELER, in her official capacity as Director of the Cobb County Board of Elections and Registration, and COBB COUNTY SCHOOL DISTRICT,<br><br>  Defendants. | Case No. 1:22-cv-2300-ELR |

## DEFENDANT COBB COUNTY SCHOOL DISTRICT'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Defendant Cobb County School District (the "District"), files this, its Answer to Plaintiffs' Amended Complaint for Declaratory Judgment and Injunctive Relief, showing this Honorable Court as follows:

## FIRST DEFENSE

Plaintiffs' Amended Complaint and each of its causes of action fail to state a claim upon which relief can be granted.

**SECOND DEFENSE**

Some or all of Plaintiffs lack standing and/or the capacity to assert the claims asserted in the Amended Complaint.

**THIRD DEFENSE**

There is no justiciable case or controversy with respect to some or all of the Plaintiffs.

**FOURTH DEFENSE**

This case should be dismissed due to Plaintiffs' failure to include the State of Georgia as a necessary party.

**FIFTH DEFENSE**

The Challenged Districts were drawn on the basis of traditional redistricting criteria and other lawful criteria.

**SIXTH DEFENSE**

Race was not a predominant factor in the drawing of the Challenged Districts.

**SEVENTH DEFENSE**

Even if race was a predominant factor in the drawing of any of the Challenged Districts, any such consideration of race was lawful and did not violate the Fourteenth Amendment because the District had good reason to believe that any such

consideration of race was required to comply with Section 2 of the Voting Rights Act.

## **EIGHTH DEFENSE**

The District reserves the right to assert any additional affirmative defenses allowed by Rule 8 depending on evidence discovered in pursuit of this litigation.

## **NINTH DEFENSE**

For answer to the respective paragraphs of the Amended Complaint, the District shows as follows:

## **INTRODUCTION**

1.

Defendant Cobb County School District ("the District") denies the allegations pled in paragraph 1 of the Amended Complaint.

2.

The District denies the allegations pled in paragraph 2 of the Amended Complaint. Further responding, as Plaintiffs are or should be aware, there was no "secret" process. The Chairman of the Cobb County Board of Education ("the Board"), Randy Scamihorn, employed the same process with the same attorney at the same law firm that Democrat Board members utilized in developing proposed redistricting maps. Both utilized the assistance of Bryan Tyson of Taylor English

Duma, LLP, the attorney and law firm hired by the District to assist with redistricting. Moreover, Chairman Scamihorn's map, as well as two proposed alternative redistricting maps prepared and submitted by Democrat Board members Leroy Tre' Hutchins and Charisse Davis were circulated to all Board members three days before they were to be considered and voted upon. However, prior to voting, Mr. Hutchins and Ms. Davis decided to withdraw their proposed alternative redistricting maps from consideration by the Board.

Further responding, Plaintiffs' allegations of race discrimination in connection with other Board actions taken in recent years are in reality a reflection of their years of dissatisfaction with the outcome of political disagreements between the 4 Republican Board members and the 3 Democrat Board members regarding various hot-button political and operational issues within the District. Literally every single ubiquitous reference in Plaintiffs' Amended Complaint to the "White Board members" could be changed to "Republican Board members" without altering the import of the factual allegations made. Likewise, literally every single ubiquitous complaint about the treatment of the "Black Board members" could be changed to "Democrat Board members" without altering the import of any of their factual allegations.

These hot-button issues about which the 4 Republican Board members and the 3 Democrat Board members disagreed include repeated allegations of racism and sexism by Democrat Board members following the Republican majority voting for a nominee of their own political party as Board Chair and/or Vice-Chair instead of a Democrat, how the District spent federal relief aid, how the District should operate amidst the COVID-19 pandemic, false allegations that District spending favored the districts of Republican Board members, the appropriate role of Board members in daily governance of the District, whether the District should prohibit employees from mis-applying tenets of critical race theory toward students, and the District defending itself against complaints made with the District's accreditation body, Cognia.

3.

The District denies the allegations pled in paragraph 3 of the Amended Complaint. After substantial debate both during an August 19, 2021 work session and during the Board meeting that evening, the Board voted 4-3 to retain Taylor English Duma, LLP ("Taylor English") to assist with drawing redistricting maps, with the 4 Republican Board members voting in favor of retaining Taylor English and the 3 Democrat Board members voting against retaining Taylor English. Attorney Bryan Tyson, a longtime and acknowledged expert in redistricting law, led

Taylor English's work. Mr. Tyson and Taylor English represent both Republican and Democrat clients and have substantial experience in drawing redistricting maps compliant with all legal requirements. Moreover, the Board was not required to solicit bids for the retention of professional services and has not had a "practice" of doing so in the past. Although the Board (composed mostly of different individuals than the ones currently in office) did not hire a third party in connection with the previous redistricting cycle, the Republican majority on the Board determined (and at least one Democrat Board member agreed) that it would be prudent to retain outside professionals to assist with the redistricting process. Finally, the District notes that the Democrat Board members consulted extensively with Taylor English to assist them in drawing multiple proposed alternative redistricting maps. However, 2 Democrat Board members decided to withdraw their proposed alternative redistricting maps from consideration by the Board.

4.

The District admits that Chairman Scamihorn used the same process in developing (with the assistance of Taylor English) his proposed redistricting map that the Democrat Board members used in developing their proposed alternative redistricting maps, also with the assistance of Taylor English. The District also admits that the Board voted 4-3 along partisan lines to adopt the redistricting map

proposed by Chairman Scamihorn and to reject a Democrat Board member's motion to retain the existing district lines. The District denies the remaining allegations pled in paragraph 4 of the Amended Complaint. Further responding, Democrat Board members Leroy Tre' Hutchins and Charisse Davis decided to withdraw their proposed alternative redistricting maps from consideration by the Board.

5.

The District admits that the redistricting map recommended by the Board was adopted by the General Assembly in a vote along partisan lines and over the objections of the Democrats in Cobb County's state legislative delegation. The District is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in paragraph 5 of the Amended Complaint.

6.

The District denies the allegations pled in paragraph 6 of the Amended Complaint.

7.

The District shows that the allegations pled in paragraph 7 constitute a legal conclusion and thus are denied.

8.

The District denies the allegations pled in paragraph 8 of the Amended Complaint. By way of further response, the District shows that Mr. Tyson conducted a functional analysis of the redistricting map adopted by the Board. This functional analysis included an assessment of the precinct voting data for the 2018 gubernatorial race, the 2020 Public Service Commission race and certain 2020 county-wide races. Attached hereto and incorporated herein by reference as Exhibit 1 are several examples of the voting data analyzed by Mr. Tyson in completing his functional analysis of the redistricting map adopted by the Board.

9.

The District denies the allegations pled in paragraph 9 of the Amended Complaint.

10.

The District denies the allegations pled in paragraph 10 of the Amended Complaint.

11.

The District denies the allegations pled in paragraph 11 of the Amended Complaint.

## JURISDICTION AND VENUE

### 12.

The District admits that Plaintiffs seek to invoke subject matter jurisdiction, and denies the remaining allegations pled in paragraph 12 of the Amended Complaint.

### 13.

The District admits that Plaintiffs seek to invoke subject matter jurisdiction, and denies the remaining allegations pled in paragraph 13 of the Amended Complaint.

### 14.

The allegations pled in paragraph 14 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District admits that Plaintiffs invoke personal jurisdiction over the remaining Defendants and denies the remaining allegations pled in said paragraph.

### 15.

The District admits that Plaintiffs seek to invoke venue, and denies the remaining allegations pled in paragraph 15 of the Amended Complaint.

## PARTIES

### 16.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 16 of the Amended Complaint.

### 17.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 17 of the Amended Complaint.

### 18.

Upon information and belief, the District admits that Plaintiff Daly recently graduated from a high school within the District, and is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in paragraph 18 of the Amended Complaint.

### 19.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 19 of the Amended Complaint.

### 20.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 20 of the Amended Complaint.

21.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 21 of the Amended Complaint.

22.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 22 of the Amended Complaint.

23.

The District shows that Plaintiff GALEO attempts to invoke standing, and denies the allegations pled in paragraph 23 of the Amended Complaint.

24.

The District shows that Plaintiff GALEO attempts to invoke standing, and denies the allegations pled in paragraph 24 of the Amended Complaint.

25.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 25 of the Amended Complaint. However, the District shows that Plaintiff New Georgia Project Action Fund, a self-described "non-partisan" organization, is an entity founded by Stacey Abrams, the Democrat nominee for Governor in 2018 and 2022, and whose chairman between 2017 and early 2020 was Democrat Senator Raphael Warnock. A Georgia ethics

commission found the New Georgia Project Action Fund had violated campaign ethics laws eight times when it failed to disclose using funds on campaign flyers and election canvassing on behalf of Democratic candidates and Abrams.[1]

26.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 26 of the Amended Complaint.

27.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in the first sentence of paragraph 27 of the Amended Complaint, and denies the remaining allegations pled in paragraph 27 of the Amended Complaint.

28.

The District shows that Plaintiff GPAF attempts to invoke standing, and denies the allegations pled in paragraph 28 of the Complaint.

29.

The District shows that Plaintiff NGPAF attempts to invoke standing, and denies the allegations pled in paragraph 29 of the Complaint.

---

[1]https://www.wsbtv.com/news/local/atlanta/new-georgia-project-says-theyre-unsurprised-ethics-commission-found-violations-against-group/JXTBLZRVPVDW7F3CUBQC5WB5QI/.

30.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 30 of the Amended Complaint.

31.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 31 of the Amended Complaint.

32.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 32 of the Amended Complaint.

33.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 33 of the Amended Complaint

34.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in the first sentence of paragraph 34 of the Amended Complaint, and denies the remaining allegations pled in paragraph 34 of the Amended Complaint.

35.

The District shows that Plaintiff League attempts to invoke standing, and denies the allegations pled in paragraph 35 of the Complaint.

36.

The District admits that Plaintiff League attempts to invoke standing, and denies the remaining allegations pled in paragraph 36 of the Complaint.

37.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 37 of the Amended Complaint.

38.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 38 of the Amended Complaint.

39.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in the first sentence of paragraph 39 of the Amended Complaint, and denies the remaining allegations pled in paragraph 39 of the Amended Complaint.

40.

The District admits that Plaintiff GCPA attempts to invoke standing, and denies the remaining allegations pled in paragraph 40 of the Amended Complaint.

41.

The District shows that Plaintiff GCPA attempts to invoke standing, and denies the allegations pled in paragraph 41 of the Amended Complaint.

42.

The allegations pled in paragraph 42 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District, upon information and belief, admits the allegations pled in said paragraph, except it denies she is responsible for implementing laws and regulations, including with respect to the Challenged Districts at issue.

43.

The allegations pled in paragraph 43 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District, upon information and belief, admits the allegations pled in said paragraph, except it denies she is responsible for implementing laws and regulations, including with respect to the Challenged Districts at issue.

## STATEMENT OF FACTS

44.

The District admits the allegations pled in paragraph 44 of the Amended Complaint.

45.

The District admits that the Republican majority on the Board decreased from 6-1 to 4-3 after the 2018 election cycle, and denies the remaining allegations pled in paragraph 45 of the Amended Complaint. The District shows that the actions about which Plaintiffs complain in reality reflect disagreements in political philosophy and ideology, not race.

46.

The District denies the allegations pled in paragraph 46 of the Amended Complaint.

I. **Georgia's History Regarding Black Voting Is Irrelevant To This Litigation**

47.

The District shows that the contents of the referenced case law speak for themselves, and deny the allegations pled in paragraph 47 of the Amended Complaint. Further responding, the District denies that the referenced history of voting rights of black voters and other minority voters has any relevance to this case.

In this regard, the Eleventh Circuit has emphasized that "old, outdated intentions of previous generations" should not "taint [a state's] legislative action forevermore on certain topics." League of Women Voters of Florida, Inc. v. Florida Secretary of State, 32 F.4th 1363, 1373 (11th Cir. 2022) ("League") (quoting Greater Birmingham Ministries v. Sec'y of State for Al., 992 F.3d 1299, 1325 (11th Cir. 2021) ("GBM") (punctuation omitted)). Any analysis of historical background "should be focus[ed] … on the specific sequence of events leading up to the challenged decision rather than providing an unlimited lookback to past discrimination." League, 32 F.4th at 1373 (quoting GBM, 992 F.3d at 1325 and Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 267 (1977) (punctuation omitted)).

48.

The District shows that the contents of the referenced case law speak for themselves, and deny the allegations pled in paragraph 48 of the Amended Complaint. Further responding, the District denies that the referenced history of voting rights of black voters and other minority voters has any relevance to this case. See, e.g., League and GBM, supra.

49.

The District admits that Georgia was required to get clearance from the Department of Justice and denies the remaining allegations pled in the first sentence of paragraph 49 of the Amended Complaint. The District shows that the contents of the referenced documents speak for themselves, and deny the allegations pled in the second sentence of paragraph 48 of the Amended Complaint. Further responding, the District denies that the referenced letters have any relevance to this case. See, e.g., League and GBM, supra.

50.

The District admits the allegations pled in paragraph 50 of the Amended Complaint.

51.

The District admits that HB 1028 is the Board's first redistricting plan to be enacted since the Supreme Court issued its decision in Shelby County v. Holder, 570 U.S. 529 (2013) invalidating the unconstitutional preclearance requirement under the Voting Rights Act for Georgia and other states. The District denies the remaining allegations pled in paragraph 51 of the Amended Complaint.

## II.   <u>Demographic Changes in Cobb County</u>

52.

The District admits that Cobb County's white adult population decreased from 2010 to 2020, and denies the remaining allegations pled in paragraph 52 of the Complaint. The District registers a continuing objection to Plaintiffs' repeated and baseless assertion that Democrat candidates are the default "preferred candidates" of "people of color" and "people of color" cannot be identified as supporting any position other than that of the Democratic Party. As noted below, in the 2020 general election, two candidates seeking public office in Cobb County were black and Republican.

53.

The District admits that Cobb County's black population and Latino population increased from 2010 to 2020. The District also admits that Cobb County's white children under age 18 population decreased from 2010 to 2020, and that Cobb County's Latino children under age 18 population increased from 2010 to 2020. The District denies the remaining allegations pled in paragraph 53 of the Amended Complaint.

54.

The District admits that President Barack Obama lost Cobb County by approximately 12.6% in 2012, that Hillary Clinton won Cobb County by 2% in 2016, and that Joe Biden won Cobb County by 14% in 2020. The District denies the remaining allegations pled in paragraph 54 of the Amended Complaint.

55.

The District admits that Stacey Abrams won Cobb County by 9.6% in the 2018 election for governor, that Lisa Cupid was elected as Cobb County's first black county commissioner in 2020, that Cobb County voters elected its first black sheriff and district attorney in 2020, and that Raphael Warnock and Jon Ossoff won majorities in Cobb County in the U.S. Senate runoffs elections in January 2021. Further eroding Plaintiffs' attempt to confound race and political identification Plaintiffs' recitation of recent Cobb County election history conveniently omits Joyette Holmes, Cobb County's first black female district attorney and a Republican, lost her election in 2020 to a Democrat. Similarly, Fitz Johnson, a black male Republican candidate for Cobb County commissioner, lost his election in 2020 to a Democrat. The District denies the remaining allegations pled in paragraph 55 of the Amended Complaint.

56.

The District admits that the Board consisted of six white Board members and one black Board members before the 2018 election, that Dr. Jaha Howard (black) and Charisse Davis (black) won seats on the Board in the 2018 election and replaced two white Board members, that Leroy Tre' Hutchins replaced David Morgan on the Board in the 2020 election, and that Republican Board member Brad Wheeler won re-election in District 7 by 4%. The District denies the remaining allegations pled in paragraph 56 of the Amended Complaint.

57.

The District denies the allegations pled in paragraph 57 of the Amended Complaint.

## III. Differences of Opinion Between Republican Majority and Democrat Board Members on Numerous Issues

58.

The District denies the allegations alleged in paragraph 58 of the Amended Complaint. The Board actions about which Plaintiffs complain were not based on race, but rather reflected a political, philosophical and/or ideological disagreement between Republican Board members and Democrat members regarding Board members attempting to place matters that were entrusted to the District's administration by state law and/or Board policy on the Board's agenda.

A.   **The Board's Republican Majority Adopts Reasonable Measures To Prevent The Board's Democrat Members From Excessive And Irrelevant Comments During Board Meetings**

59.

The District admits that the Board previously allowed Board members to speak at the end of Board meetings on whatever topics they so chose. The District denies the remaining allegations pled in paragraph 59 of the Amended Complaint.

60.

The District admits that, upon their election, Democrat Board members Dr. Jaha Howard and Charisse Davis spent significant amounts of time speaking at the end of Board meetings discussing matters that had no relevance to the District or its operations, including race and their opinions of "social justice." The District denies the remaining allegations pled in paragraph 60 of the Amended Complaint.

61.

The District admits that, after the 2018 election, the Board adopted a measure ending the Board's practice of allowing Board members unlimited speaking time at the end of Board meetings to speak about any topics that were of interest or concern to them, even if such topics were not relevant to the District or its operations. The Board adopted this measure to address complaints that Board meetings (which could

last until midnight) were too long. The District denies the remaining allegations pled in paragraph 61 of the Amended Complaint.

62.

The District denies the allegations pled in paragraph 62 of the Amended Complaint. Further responding, paragraph 62 of the Amended Complaint misstates the process for placing an item on the Board's agenda. Under the Board's policies and procedures, the Board Chairman and the Superintendent have the unilateral authority to place an item on the Board's agenda. If the Board Chairman and the Superintendent decline a Board member's request to place an item on the agenda, the Board member nevertheless may place the item on the agenda if he or she obtains support from a sufficient number of Board members to place the item on the agenda. Especially in the past year, the Superintendent or Board Chairman almost always have approved requests from Board members (including the Democrat Board members) to place a requested item on the agenda for a Board meeting or work session.

The District admits that the Board voted 4-2 along partisan lines during the Board's November 19, 2020 work session to increase the number of votes necessary to place an item on the agenda over the objections of the Superintendent and the Board Chairman from three votes to four votes. The Board majority took this action

to streamline Board meetings to address complaints that meetings were too long (some meetings would last until midnight) due to items being added to the agenda that either had no bearing on the District or its operations, or lacked the necessary support for approval due to the item's lack of merit. Also, the Board majority believed that if a proposed item could not earn the support of 4 Board members to be placed on the agenda, that item had little or no chance of being approved by the Board, in which case it would be just a waste of the Board's time to consider the agenda item.

63.

The District denies the allegations pled in paragraph 63 of the Amended Complaint.

64.

The District denies the allegations pled in paragraph 64 of the Amended Complaint. The changes adopted by the Board did not alter the Board Chairman's authority with respect to determining agenda items that could be voted on by the Board.

65.

The District denies the allegations pled in paragraph 65 of the Amended Complaint. Further responding to illustrate the partisan nature of Plaintiffs'

complaint, an analysis of total speaking time by Board members from January 2019 through April 2021 shows that Democrat Board member Dr. Jaha Howard had 13 hours, 44 minutes of speaking time, which was ***five hours and 26 minutes more*** speaking time than the Board member with the second highest amount of speaking time, which was (not surprisingly) Board Chairman Scamihorn, who had 8 hours, 18 minutes of speaking time during the same time frame. Democrat Board member Charisse Davis had substantially more speaking time during this time period (5 hours, 1 minute) than the combined time of two other Republican Board members, Brad Wheeler (2 hours, 6 minutes) and David Chastain (1 hour, 29 minutes). Therefore, since Democrat Board members spoke for more than 61% of this speaking time, they obviously were not "effectively silenced" by the Board's procedural changes.

66.

Plaintiffs' reference to the Cognia November 2021 special review team report fails to notify the Court that the report was publicly withdrawn in its entirety in February 2022. Plaintiffs failed to disclose that the Cognia November 2021 special review team report was subject to review by Cognia, which conducted a review of the report to determine whether it was consistent with Cognia policy and/or aligned with factual evidence supplied by the District. In February 2022, Cognia concluded

the special review team report was overly dependent upon innuendo and rumor and did not align with factual evidence.  Accordingly, Cognia publicly withdrew the report in its entirety. The District shows that the content of the referenced preliminary report in November 2021 speaks for itself, and denies the allegations pled in paragraph 66 of the Amended Complaint. Further responding, upon information and belief, the District believes that the Cognia inquiry referenced in paragraph 66 was prompted by frivolous and unfounded complaints to Cognia generated by partisan political allies, as part of an elaborate scheme to inflict maximum injury on the District (consistent with their "burn it to the ground" strategy) and score cheap political points against the Republican majority on the Board. Indeed, the President and CEO of Cognia, Mark Elgart, admitted in testimony before the State House Study Committee in October 2022 that he met with Democrat Board members.

This political maneuver, however, ultimately backfired, as Cognia ultimately exonerated the District and the Board of all the charges levied against them (albeit at substantial cost to the District in time and resources). The only preserved finding was noting the obvious fact that the Board is sharply divided politically.

67.

The District shows that the Plaintiffs again refer to the publicly withdrawn Cognia November 2021 special review report whose contents speak for itself and denies the allegations pled in paragraph 67 of the Amended Complaint. Further responding, as aptly stated by Cognia's Chief Executive Officer during a Board meeting after the public withdrawal of the referenced report, all of the allegations initially made against the District and the Board were completely meritless, other than the obvious fact that the Board is divided politically.

68.

The District denies the allegations pled in paragraph 68 of the Amended Complaint. Further responding, the District must again note to the Court Plaintiffs' employment and continuing mischaracterization of a preliminary report from the District's accreditor that Plaintiffs know is erroneous and was withdrawn. Further, the three Democrat Board members were not "silence[d]" or "ignore[d]" in connection with the redistricting process, but rather participated fully in that process and collaborated extensively with the District's retained map-drawer to generate a multitude of proposed alternative redistricting maps. Plaintiffs' contention that there was no "substantive debate or legitimate consideration of alternatives" is especially baseless in light of the fact that Democrat Board members Leroy Tre' Hutchins and

Charisse Davis submitted proposed alternative redistricting maps for the Board's consideration during its December 9, 2021 Board meeting and work session – but then chose to withdraw their proposed maps at the eleventh hour.

**B.    The Republican Majority on The Board Votes in Ways with Which the Democrat Board Members Disagree**

69.

The District denies the allegations pled in paragraph 69 of the Complaint. Distilled to its essence, Plaintiffs' allegations merely constitute dissatisfaction with the outcome of political disagreements between the Republican majority on the Board and their Democrat counterparts on various political issues.

**i.    The Board's Republican Majority Declines to Re-Name Wheeler High School**

70.

The District admits that Wheeler High School is a high school in Cobb County named after Joseph E. Wheeler and that Wheeler served multiple terms as a U.S. House of Representative member from Alabama after the Civil War, and denies the remaining allegations pled in the first sentence of paragraph 70 of the Amended Complaint. Wheeler was in the Confederate Army during the Civil War, and he later served in the United States Army as a general during the Spanish-American War and the Philippine-American War. The District admits that approximately 25% of the

students at Wheeler High School are white, and denies the remaining allegations pled in the second sentence of paragraph 70 of the Amended Complaint. The District admits that a number of individuals signed a petition for the name of Wheeler High School to be changed, and is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in the third sentence of paragraph 70 of the Amended Complaint. Upon information and belief, the District believes that this petition was organized and orchestrated by third-party partisan groups via social media and email campaigns as part of a campaign to explicitly "disrupt" the schools of the District.

71.

The District admits that a committee was formed to study whether to change the name for Wheeler High School, but then voted 4-2 along partisan lines to disband the committee based on the belief of the majority of the Board that it needed to address the renaming issue as a Board as a whole rather than via a committee. The District denies the remaining allegations pled in paragraph 71 of the Amended Complaint.

72.

The District admits that the Board has not changed the name for Wheeler High School. The District also admits that there were speakers who spoke in support of

changing the name for Wheeler High School during the public comment portion of the Board's April 22, 2021 meeting. The District denies the remaining allegations pled in paragraph 72 of the Amended Complaint.

73.

The District denies the allegations pled in paragraph 73 of the Amended Complaint.

### ii.   The Board's Republican Majority Votes To Ban Critical Race Theory and Lessons Influenced by the 1619 Project

74.

The District admits that, on June 10, 2021, the 4 Republican Board members voted in favor of a resolution banning the use of critical race theory ("CRT") and the 1619 project, and that the three Democrat Board members voted to abstain on this resolution. The District denies the remaining allegations pled in paragraph 74 of the Amended Complaint. Further responding, the District notes that the State Board of Education for the State of Georgia previously adopted a resolution on June 3, 2021 providing that CRT should not be taught in Georgia public schools. The Georgia General Assembly similarly passed legislation on April 1, 2022 banning the teaching of nine "divisive concepts" relating to CRT.

75.

The District denies the allegations pled in paragraph 75 of the Amended Complaint.

76.

The District denies the allegations pled in paragraph 76 of the Amended Complaint. Further responding, the District notes the "No Place for Hate" program contained openly political programming aligned with Democratic Party positions (such as characterizing Georgia's voting security laws as "voter suppression") that participating schools were expected to impose upon students under the guise of an "anti-bullying" curriculum. The referenced No Place for Hate program (which the Anti Defamation League complained about) was replaced by a local program.

77.

The District denies the allegations pled in paragraph 77 of the Amended Complaint. The District further notes that it has a myriad of policies and programming prohibiting discrimination, bullying, and other behaviors based on race. In the face of allegations by Board members and self-identified community activists, the District has repeatedly requested anyone with evidence of such behaviors to share those with the District, noting that perpetrators will be punished

if found guilty. Demonstrably, when such actions have occurred, the District has acted swiftly and decisively.

78.

The District admits that Plaintiff Dr. Jillian Ford attended the June 10, 2021 Board meeting and provided public comment, which included alleged incidents of threats of racial violence directed toward black students. Defendants deny the remaining allegations pled in paragraph 78. Further responding, Dr. Ford prefaced her remarks by referring to the Superintendent's alleged "hypocrisy." Dr. Ford's comments included repeated use of vulgar language, including but not limited to the word "f—k". Dr. Ford brazenly violated the Board's policy on public participation in Board meetings, which prohibits abusive language and the use of profane or vulgar remarks during public commentary, and also prohibits making unsubstantiated claims about an identified employee. When Chairman Scamihorn civilly told her that he would not listen to vulgar language or attacks on individuals, Dr. Ford became argumentative with him and repeatedly interrupted him. Because of Dr. Ford's belligerent and disrespectful behavior, Chairman Scamihorn instructed staff to turn off her microphone and not permit her to continue her commentary.

79.

The District admits that Jennifer Susko, a school counselor, resigned. Further

responding, the District shows that the content of the referenced resignation letter

speaks for itself and denies the allegations pled in paragraph 79 of the Amended

Complaint.

### iii. The Republican Majority On The Board Responds Appropriately To COVID-19 And Declines To Micromanage Superintendent Or Implement Excessive Lockdowns Or Mask Mandates

80.

The District shows that the contents of the referenced articles speak for

themselves, and deny the allegations pled in paragraph 80 of the Amended

Complaint.

Further responding, the Republican majority on the Board for legitimate,

nondiscriminatory reasons rejected the demands of Democrat Board members to

substitute their judgment for that of the Superintendent and to interfere in the daily

operations of the District, which is not the Board's role. In the context of COVID-

19, the Republican Board members decided to defer to the judgment of the

Superintendent (Chris Ragsdale), who is a member of the Cobb County Board of

Health, to determine how the District should operate amidst the COVID-19

pandemic. Relying on the recommendations of the Cobb County Board of Health,

the Superintendent determined that it was in the best interests of the students in the District to return to in-person learning sooner than other school districts in the Metro Atlanta area did and to end mask mandates sooner than other school districts in the Metro Atlanta area did. Nevertheless, while re-opening its schools to in-person learning, the District gave students and their families the option of remaining in virtual learning if they felt more comfortable in that setting in light of the COVID-19 pandemic. Similarly, the District gave students the option to wear masks or to not wear masks. With these parameters, approximately 75,000 District students opted to return to in-person learning, and approximately 30,000 District students chose to continue with remote learning. The District believes that the passage of time has proven the wisdom of the Superintendent's decisions on these issues: In the aftermath of the COVID-19 pandemic, District students often have outperformed academically their peers in other Metro Atlanta school districts that imposed longer school lockdowns and longer mask mandates.

81.

The District denies the allegations pled in paragraph 81 of the Amended Complaint.

82.

The District denies the allegations pled in paragraph 82 of the Amended Complaint. Further responding, the District shows that, near the end of the August 19, 2021 work session, after the Board had already voted to approve the agenda for the upcoming Board meeting that evening, Board member Leroy Tre' Hutchins made a request to add "COVID protocols" as an agenda item for that evening's Board meeting. Mr. Hutchins explained that he wanted to discuss "COVID protocols" that the Superintendent had issued two days after the Board's July 15, 2021 Board meeting. The Board's attorney explained that Mr. Hutchins' last-minute request to add an item to the agenda for that evening's Board meeting raised an Open Meetings Act issue. The Board's attorney further explained that, under case law interpreting the Open Meetings Act, items may only be added to the agenda at the last-minute if the item is an emergency, time-sensitive matter that could not have been foreseen. Chairman Scamihorn recognized that the agenda item proposed by Mr. Hutchins was based on "COVID protocols" issued by the Superintendent approximately one month previously, and thus was an item that could have been foreseen. Accordingly, Chairman Scamihorn denied Mr. Hutchins' request. Although Board member Dr. Jaha Howard asked for a definition of "emergency,"

the Board's attorney already had explained the narrow circumstances under which an item may be added to the agenda at the last minute.

83.

The District denies the allegations pled in paragraph 83 of the Amended Complaint. More specifically, Chairman Scamihorn stated to Board Member Dr. Jaha Howard that he was "speaking out of order" and told Dr. Howard that he was being "very impolite and rude" because Dr. Howard repeatedly and disrespectfully interrupted Chairman Scamihorn. As the Board's presiding officer, Chairman Scamihorn was obligated to maintain order and decorum in the work session.

84.

The District denies the allegations pled in paragraph 84 of the Amended Complaint. The Board already had voted to approve the agenda for the upcoming Board meeting that evening before Board member Leroy Tre' Hutchins made a last-minute request to add "COVID protocols" as an agenda item for that evening's Board meeting. After Chairman Scamihorn denied Mr. Hutchins' request, the Board voted 4-3 to go into executive session, with the 4 Republican Board members voting in favor of the motion to go into executive session and the 3 Democrat Board members voting against the motion.

85.

The District denies the allegations pled in paragraph 85 of the Amended Complaint.

### iv.    The Republican Majority on the Board Properly Leaves Disciplinary Decisions to School Administrators

86.

The District denies the allegations pled in paragraph 86 of the Amended Complaint.

87.

The District denies the allegations pled in the first sentence of paragraph 87 of the Amended Complaint. The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in the second, third, fourth and sixth sentences of paragraph 87 of the Amended Complaint. The District admits that a student from Campbell High School spoke at a Board meeting about alleged race-based comments and conduct by white students there, and is without knowledge or information sufficient to admit or deny the remaining allegations pled in the fifth sentence of paragraph 87 of the Amended Complaint.

More generally, the District shows that it strictly prohibits discrimination against students because of race (as well as many other protected traits) by teachers, staff or fellow students, and it has appropriate complaint procedures in place for

students who believe they are being discriminated against because of race or other protected traits. If school administrators determine that a student, teacher or staff has discriminated against a student because of race, appropriate disciplinary action is taken. However, the District cannot publicize such disciplinary action because of its confidentiality obligations.

### 88.

The District shows that the content of the referenced document speaks for itself and denies the allegations pled paragraph 88 of the Amended Complaint. More specifically, the District denies that race plays any role in its student discipline decisions, including decisions regarding referral to law enforcement.

### 89.

The District shows that the content of the referenced document speaks for itself and denies the allegations pled paragraph 89 of the Amended Complaint. In particular, the District denies that race plays any role in its student discipline decisions, including decisions regarding referral to law enforcement.

### 90.

The District denies the allegations pled in paragraph 90 of the Amended Complaint.

91.

The District admits that a group of students silently protested during the Board's March 2022 meeting, and denies the remaining allegations pled in paragraph 91 of the Amended Complaint. Further responding, the District shows that decisions regarding student discipline in connection with alleged incidents of harassment and bullying and alleged racist incidents are made by school administrators, not the Board.

92.

Upon information and belief, the District admits that there is an advocacy group called Stronger Together, and denies the remaining allegations pled in paragraph 92 of the Amended Complaint.

93.

The District admits that the 3 Democrat Board members walked out of a September 2021 Board meeting, and denies the remaining allegations pled in paragraph 93 of the Amended Complaint.

IV.   **The Board of Education's and Georgia Legislature's Redistricting Process Did Not Exclude Black Members And Followed Permissible Legislative Process**

A.    **The Board's Redistricting Process**

94.

The District admits that Chairman Scamihorn informed all Board members during a July 15, 2021 work session that the Board's voting districts would need to be redistricted as a result of anticipated population changes reflected in the forthcoming release of 2020 census data, and denies the remaining allegations pled in paragraph 94 of the Amended Complaint. Further responding, in response to a question from Board Member Charisse Davis, the Board's attorney briefly explained the map-drawing process and indicated that the Board in all likelihood would work with a demographer and retain an outside entity to assist with the map-drawing process.

95.

The District denies the allegations pled in paragraph 95 of the Amended Complaint. During the July 15, 2021 work session, Board Member Charisse Davis asked the Board's attorney whether the Board would be working with a demographer it already had or whether it would need to find one using a request for proposal process. The Board's attorney responded that this was up to the Board: if the Board

had pre-existing relationships with the needed professionals from the previous redistricting cycle, the Board could utilize those pre-existing relationships; if not, the Board may use a more expansive, wide-ranging process to find the professional services needed. The Superintendent noted correctly that a contract for professional services did not require a bid or request for proposal process.

96.

The District admits that Chairman Scamihorn did not contact any other Board members regarding redistricting until the next Board meeting on August 19, 2021, and denies the remaining allegations pled in the first sentence of paragraph 96 of the Amended Complaint. The District admits that Chairman Scamihorn recommended Taylor English Duma LLP ("Taylor English"), specifically Bryan Tyson of that firm, after vetting and research to determine they were highly qualified. Chairman Scamihorn believed that Mr. Tyson and Taylor English would be well-suited to redraw the Board's map because of their extensive map-drawing experience nationally and in Georgia, and because Mr. Tyson and Taylor English had represented both Republican and Democrat clients. The District also notes that the Board Chairman had the exclusive and unilateral authority to decide which law firm to retain to draw the redistricting map for the District.

The District further admits that Chairman Scamihorn did not discuss his decision to recommend Taylor English to draw the redistricting map for the Board with any Board member before the 8/19/21 Board meeting, that the content of Board member Dr. Jaha Howard's December 2021 Facebook video post speaks for itself, and denies the remaining allegations pled in paragraph 96 of the Amended Complaint.

97.

The District admits that Democrat Board member Leroy Tre' Hutchins made the statements attributed to him in paragraph 97 of the Amended Complaint, and denies the remaining allegations pled in paragraph 97 of the Amended Complaint.

98.

The District admits that Republican Board member David Banks was on the Board during the previous redistricting cycle. The District also admits that Chairman Scamihorn stated during the August 19, 2021 work session that there was no need to delve into other law firms. This was Chairman Scamihorn's position because, as previously stated, the District's staff had already undertaken extensive vetting and research into other law firms, and Chairman Scamihorn believed that Taylor English would be fair during the map drawing process. Furthermore, Chairman Scamihorn believed it was prudent and necessary to retain a law firm to begin the process of

drawing redistricting maps without further delay because the deadline for the Board to adopt a redistricting map was looming within the next few months because the General Assembly (which would need to approve any redistricting map recommended by the Board) was opening a special legislative session in the fall of 2021.

Further responding, contrary to the allegations pled in paragraph 98 of the Amended Complaint, Mr. Banks did not suggest during the 8/19/21 work session that the Board had considered multiple bids from law firms or other vendors as part of the previous redistricting cycle. Nor did Mr. Banks suggest that any outside vendor or law firm was considered during the previous redistricting cycle. Instead, Mr. Banks explained that, during the previous redistricting cycle he drew a proposed redistricting map with the assistance of the Legislative and Congressional Reapportionment Office, that the then Board Chairman at the time also drew a proposed redistricting map with the assistance of the Legislative and Congressional Reapportionment Office, and that other elected officials also drew proposed redistricting maps.

99.

The District admits that the Board adopted a resolution on August 19, 2021 approving the retention of Taylor English to draw the redistricting maps by a vote

of 4-3, with the 4 Republican Board members voting in favor of the resolution and the 3 Democrat Board members voting against the resolution. The District denies the remaining allegations pled in paragraph 99 of the Amended Complaint.

100.

The District admits that it hired Taylor English, that the CEO of Taylor English Decisions LLC (a separate affiliate consulting company which provided no legal services or other services related to redistricting), former State House Representative Earl Ehrhart, is married to State Hour Representative Ginny Ehrhart, and that Democrat Board Member Dr. Jaha Howard opposed retaining Taylor English. The District denies the remaining allegations pled in paragraph 100 of the Amended Complaint. In particular, District denies that there was any potential conflict of interest in retaining Taylor English to draw redistricting maps, as alleged in paragraph 100 of the Amended Complaint. The District also denies that Chairman Scamihorn "scolded" Dr. Howard for raising the bogus conflict of interest issue by telling him to "be careful," as alleged in paragraph 100 of the Amended Complaint. Instead, as reflected in the videotaped recording of the 8/19/21 Board meeting, Chairman Scamihorn warned Dr. Howard (without raising his voice) to "be careful" because he thought that Dr. Howard was about to make an insulting or defamatory comment.

101.

The District admits that it hired Taylor English and denies the remaining allegations pled in paragraph 101 of the Amended Complaint. There was no potential conflict of interest with Taylor English being retained to draw the redistricting maps. Nor was it the Board's "normal practice" to seek bids from other companies in connection with redistricting. Furthermore, pursuant to Board policies, the Board Chairman was not required to solicit bids from vendors for the provision of professional services to the Board. The District shows that the selection process was consistent with selection of firms for professional services and entirely proper and lawful.

102.

The District denies the allegations pled in paragraph 102 of the Amended Complaint. To the contrary, Mr. Tyson individually contacted every Board member, including the three Democrat Board members, to initiate a discussion regarding the map-drawing process, and every Democrat Board member consulted with Taylor English extensively during the map drawing process. In fact, Mr. Tyson assisted Democrat Board members Leroy Tre' Hutchins, Charisse Davis and Dr. Jaha Howard with drawing multiple proposed alternative redistricting maps based on whatever parameters that they provided to Mr. Tyson. In this regard, Mr. Tyson met

with Mr. Hutchins on at least one occasion for approximately two hours to discuss potential alternative maps and exchanged numerous emails with him. Mr. Tyson also met with Dr. Howard on at least one occasion for approximately two hours to discuss potential alternative maps and exchanged numerous emails with him. In addition, Mr. Tyson met with Ms. Davis on at least one occasion for approximately 30-45 minutes to discuss potential alternative maps and exchanged numerous emails with her. Mr. Hutchins and Ms. Davis each selected a proposed map to be submitted to the Board for its consideration (see Exhibits 2-3, attached), and their maps were included (along with a map proposed by Chairman Scamihorn referred to as "the Chair's map") on the agenda for the 12/9/21 Board work session at their request. (See Exhibit 4, attached).

103.

The District admits the allegations pled in the first sentence of paragraph 103 of the Amended Complaint.

The District admits that the three proposed redistricting maps (the Chair's map, Board member Charisse Davis' map and Board member Leroy Tre' Hutchins' map) were released to the public at approximately 8:00pm on the evening of December 8, 2021, and denies the remaining allegations pled in the second sentence of paragraph 103 of the Amended Complaint. It is the Board's customary practice

not to release documents and other materials relating to agenda items to the public until the Board meeting and/or work session at which the agenda item is considered. In this instance, however, Chairman Scamihorn intended that the three proposed maps be released to the public on Tuesday, December 7, 2021. However, because of last-minute visual enhancements to the three maps requested by Board members, the three maps were not released to the public until approximately 8:00pm on Wednesday, December 8, 2021, as stated above.

Further responding to the allegations in the second sentence of paragraph 103 of the Amended Complaint, the District denies that the Chair's map was not provided to the three Democrat Board members until the night before the 12/9/21 work session and Board meeting. To the contrary, Mr. Tyson circulated the Chair's map and the maps proposed by Board members Leroy Tre' Hutchins and Charisse Davis to all Board members at approximately 11:28am on Monday, December 6, 2021. This was no surprise to any of the Board members because Chairman Scamihorn had sent an email to Mr. Tyson on Friday, December 3, 2021 (copying all Board members) instructing him to circulate all maps submitted for the Board's consideration to all Board members by noon on Monday, December 6, 2021.

Further responding to the allegations in the second sentence of paragraph 103 of the Amended Complaint, the District shows that, on the evening of December 8,

2021, after the three proposed redistricting maps were released to the public, both Ms. Davis and Mr. Hutchins contacted Chairman Scamihorn and asked him to remove their proposed maps from the agenda for the 12/9/21 Board meeting and work session. Chairman Scamihorn explained to Ms. Davis and Mr. Hutchins that he could not remove their proposed alternative map from the agenda based on their private requests because the agenda had already been published and distributed. Nevertheless, Chairman Scamihorn informed Ms. Davis and Mr. Hutchins that, if they wanted to withdraw their proposed redistricting maps from consideration during the 12/9/21 Board meeting, they could make motions during the 12/9/21 Board meeting to withdraw those proposed redistricting maps from consideration, which they did.

The District shows that the content of the referenced December 2021 Facebook post by Board member Dr. Jaha Howard speaks for itself, and Defendant The District denies the allegations pled in the third sentence of paragraph 103 of the Amended Complaint.

104.

The District admits that the Board voted 4-3 to approve the Chair's map during the 12/9/21 Board meeting, with the 4 Republican Board members voting in favor of the Chair's map and the 3 Democrat Board members voting against it. The

District denies the remaining allegations pled in paragraph 104 of the Amended Complaint. Further responding, Democrat Board member Charisse Davis made a motion during the 12/9/21 Board meeting to continue using the same Board maps that were then in use and to not redistrict at all. The Board rejected this motion by a vote of 4-3, with the 4 Republican Board members voting against the motion and with the 3 Democrat Board members voting in favor of this motion.

105.

The District admits that the Board-approved redistricting map was submitted to the General Assembly for final approval, and denies the remaining allegations pled in paragraph 105 of the Amended Complaint.

**B.      The General Assembly's Redistricting Process**

106.

The District shows that the allegations in paragraph 106 are gross generalizations without any reference to time, context, or circumstances, and the District denies the allegations pled in paragraph 106 of the Amended Complaint.

107.

The District admits that the majority of Cobb County's local delegation consists of Democrats (by one House seat and an evenly split Senate delegation), and that Democrat Rep. David Wilkerson (black) is the chair of the Cobb County

state legislative delegation. The District denies the remaining allegations pled in paragraph 107 of the Amended Complaint.

108.

Upon information and belief, the District admits that the Republican majority in the Georgia General Assembly decided that, in its 2022 legislative session, it would consider the Board's recommended redistricting map as general legislation. The District denies the remaining allegations pled in paragraph 108 of the Amended Complaint.

109.

The District denies the hyperbolic allegation that the Republican majority in the General Assembly engaged in a "power grab" from local delegations, as alleged in the first sentence of paragraph 109 of the Amended Complaint. The District admits that Rep. Wilkerson complained during a meeting of the House Government Affairs Committee on February 9, 2022 that the Cobb County legislative delegation was being ignored, and denies the remaining allegations pled in the second sentence of paragraph 109 of the Amended Complaint. Responding to the allegations pled in the third sentence of paragraph 109, the District admits that Republican Rep. Darlene Taylor, the Chairwoman of the House Government Affairs Committee (of which Rep. Wilkerson is not a member) told Rep. Wilkerson that he was out of order and

that the Committee was not hearing public comment that day, at which point Rep. Wilkerson's microphone was turned off. The District admits that Rep. Wilkerson kept talking, at which point Rep. Taylor instructed that security be called. The District is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in paragraph 109 of the Amended Complaint.

110.

The District shows that the content of the referenced recording of Rep. Ginny Ehrhart's (the sponsor of HB 1028) statements speaks for itself, and denies the allegations pled in paragraph 110 to the extent they are inconstant therewith. For example, Rep. Ehrhart did not concede during the House Governmental Affairs Committee hearing on HB1028 that she did not seek input from the Cobb County local delegation. Instead, Rep. Ehrhart testified that no one from the Cobb County local delegation reached out to her with concerns about the redistricting map. Rep. Ehrhart also did not testify that she did not seriously consider an alternative map drawn by Democrat Rep. Erick Allen, a black member of the Cobb County local delegation. Instead, Rep. Ehrhart testified that she had no feedback to offer with respect to Rep. Allen's proposed map.

111.

The District shows that the content of the referenced recording of Rep. Shea Roberts' statements speaks for itself, and denies the allegations pled in paragraph 111 of the Amended Complaint. As Rep. Ehrhart explained during the same committee hearing, "local bills" are a "fast-track" for bills that are not contested and non-controversial.

112.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 112 of the Amended Complaint.

V.     **Race Did Not Predominate the 2021-2022 Map-Drawing Process**

113.

The District denies the allegations pled in paragraph 113 of the Amended Complaint.

114.

The District denies the allegations pled in paragraph 114 of the Amended Complaint.

115.

The District denies the allegations pled in paragraph 115 of the Amended Complaint.

116.

The District denies the allegations pled in paragraph 116 of the Amended Complaint.

A.   **Taylor English Attorney's Testimony to Board Regarding Considerations for Drawing Chair's Map**

117.

The District denies the allegations pled in paragraph 117 of the Amended Complaint. Further responding, during the Board's July 15, 2021 work session, Chairman Scamihorn provided general information and a general overview of the redistricting process to Board members. While providing this general overview, Chairman Scamihorn made the unremarkable statement that redistricting in general must comply with federal and state law, including the Voting Rights Act.

118.

The District admits the allegations pled in the first sentence of paragraph 118 of the Amended Complaint. The District shows that the content of the referenced recording of Mr. Tyson's statements during the December 9, 2021 Board meeting speaks for itself, and denies the allegations pled in paragraph 118 of the Amended Complaint.

119.

The District shows that the content of the referenced recording of Mr. Tyson's statements during the December 9, 2021 Board meeting speaks for itself, and denies the allegations pled in paragraph 119 of the Amended Complaint.

120.

The District shows that the content of the referenced recording of Mr. Tyson's statements during the December 9, 2021 Board meeting speaks for itself, and denies the allegations pled in paragraph 120 of the Amended Complaint.

121.

The District admits that Mr. Tyson did not expressly state the words "functional analysis" during his presentation to the Board during the Board's December, 2021 Board meeting, and denies the remaining allegations pled in paragraph 121 of the Amended Complaint.

122.

The District admits that Mr. Tyson did not retain an expert outside his firm, and denies the remaining allegations pled in paragraph 122 of the Amended Complaint.

123.

The District admits that Mr. Tyson identified during his presentation that keeping communities of interest together, incumbency protection, and making districts compact were among the factors he considered in drawing the Chairman's map. The District denies the remaining allegations pled in paragraph 123 of the Amended Complaint.

**B.      Legislative Sponsor Speaks in Support of the Redistricting Map**

124.

Upon information and belief, the District believes that Rep. Ginny Ehrhart (white) introduced HB 1028, which was the bill setting forth the Redistricting Plan recommended by the Board, and is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in paragraph 124 of the Amended Complaint.

125.

The District denies the allegations pled in paragraph 125 of the Amended Complaint.

126.

The District shows that the content of the referenced recording of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Redistricting

and Elections Subcommittee on February 7, 2022 speaks for itself, and denies the allegations pled in paragraph 126 of the Amended Complaint.

127.

The District shows that the contents of the referenced recordings of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Committee on February 14, 2022 and her statements on the Georgia House floor also on February 14, 2022 speak for themselves, and denies the allegations pled in paragraph 127 of the Amended Complaint.

128.

The District denies the allegations pled in paragraph 128 of the Amended Complaint.

129.

The District shows that the content of the referenced recording of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Redistricting and Elections Subcommittee on February 7, 2022 speaks for itself, and denies the allegations pled in paragraph 129 of the Amended Complaint.

130.

The District shows that the content of the referenced recording of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Redistricting

and Elections Subcommittee on February 7, 2022 speaks for itself, and denies the allegations pled in paragraph 130 of the Amended Complaint.

131.

The District shows that the contents of the referenced recordings of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Committee on February 14, 2022, her statements on the Georgia House floor also on February 14, 2022, and her testimony before the Senate Committee on State and Local Government Operations on February 16, 2022 speak for themselves, and denies the allegations pled in paragraph 131 of the Amended Complaint.

132.

The District shows that the content of the referenced recording of Rep. Ehrhart's testimony before the Senate Committee on State and Local Government Operations on February 16, 2022 speaks for itself, and denies the allegations pled in paragraph 132 of the Amended Complaint.

133.

The District denies the allegations pled in paragraph 133 of the Amended Complaint.

134.

The District shows that the content of the referenced recording of Rep. Ehrhart's testimony before the Georgia House Governmental Affairs Redistricting and Elections Subcommittee on February 7, 2022 speaks for itself, and denies the allegations pled in paragraph 134 of the Amended Complaint.

135.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 135 of the Amended Complaint.

**C.     There Was No Unlawful "Packing" Of Board Districts**

136.

The District admits that certain Democrat State House Representatives and Democrat Board members stated their opinions identified in paragraph 136 of the Amended Complaint and deny the remaining allegations pled in paragraph 136 of the Amended Complaint.

137.

The District shows that the content of the referenced recording of Democrat State House Representative Renitta Shannon's statements during the House Governmental Affairs Committee hearing on February 9, 2022 speaks for itself, and denies the allegations pled in paragraph 137 of the Amended Complaint.

138.

The District shows that the content of the referenced recording of Democrat State House Representative Renitta Shannon's statements and Rep. Ehrhart's testimony during the House Governmental Affairs Committee hearing on February 9, 2022 speaks for itself, and denies the allegations pled in paragraph 138 of the Amended Complaint.

139.

The District shows that the content of the referenced recording of Democrat Board member Leroy Tre' Hutchins' testimony during the House Governmental Affairs Redistricting and Elections Subcommittee hearing on February 7, 2022 speaks for itself, and denies the allegations pled in paragraph 139 of the Amended Complaint.

**D.    The Board And General Assembly Apply Traditional Redistricting Principles, Including Legal Compliance**

140.

The District admits that the Board did not form any committees in connection with the redistricting process and that it did not formally adopt any specific guidelines with respect to redistricting. However, the District shows that Chairman Scamihorn provided Bryan Tyson with a list of redistricting principles for him to

follow, and this list of redistricting principles was provided to all Board members on December 6, 2021.

141.

The District denies the allegations pled in paragraph 141 of the Amended Complaint.

142.

The District denies the allegations pled in paragraph 142 of the Amended Complaint. Further responding, Chairman Scamihorn's principles for the redistricting map were set forth in a document attached to Bryan Tyson's December 6, 2021 email sent to all Board members along with the three proposed maps. The items listed in subparagraphs (a) through (e) of paragraph 142 are similar, but not the same, as Chairman Scamihorn's principles and do not include all of Chairman Scamihorn's principles.

143.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 143 of the Amended Complaint.

144.

The District is without knowledge or information sufficient to admit or deny the truth of the allegations pled in paragraph 144 of the Amended Complaint.

145.

The District denies the allegations pled in paragraph 145 of the Amended Complaint.

146.

The District denies the allegations pled in paragraph 146 of the Amended Complaint.

## VI. **The Board of Elections and Janine Eveler, Acting in Her Capacity as Director of the Cobb County Elections Department within the Board of Elections, Has Authority to Administer and Implement HB 128**

147.

The allegations pled in paragraph 147 of the Amended Complaint are not directed toward this Defendant and thus need no answer, and Georgia law as referenced speaks for itself, but to the extent an answer is required, the District, upon information and belief, admits the allegations pled in said paragraph to the extent not inconsistent with the referenced Georgia law.

148.

The allegations pled in paragraph 148 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District shows that the contents of the referenced statutes speak for

themselves, and the District admits the allegations pled in paragraph 148 of the Amended Complaint to the extent not inconsistent with the referenced statutes.

149.

The allegations pled in paragraph 149 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District shows that the contents of the referenced statutes speak for themselves, and admit the allegations pled in paragraph 149 of the Amended Complaint to the extent not inconsistent therewith.

150.

The allegations pled in paragraph 150 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District shows that the contents of the referenced statutes speak for themselves, and admit the allegations pled in paragraph 150 of the Amended Complaint to the extent not inconsistent therewith.

151.

The allegations pled in paragraph 151 of the Amended Complaint are not directed toward this Defendant and thus need no answer and Georgia laws speak for themselves, but to the extent an answer is required, the District, upon information

and belief, admits the allegations pled in said paragraph to the extent not inconsistent therewith.

152.

The allegations pled in paragraph 152 of the Amended Complaint are not directed toward this Defendant and thus need no answer and Georgia law regarding the authority of the Cobb County Board of Elections and its Election Superintendent and directors speak for itself, but to the extent an answer is required, the District, upon information and belief, admits the allegations pled in the first sentence of paragraph 152 of the Amended Complaint to the extent not inconsistent therewith. The District denies the remaining allegations pled in paragraph 152 of the Amended Complaint.

153.

The allegations pled in paragraph 153 of the Amended Complaint are not directed toward this Defendant and thus need no answer and Georgia law speaks for itself regarding the authority of the Cobb County Board of Elections, but to the extent an answer is required, the District, upon information and belief, admits the allegations pled in said paragraph to the extent not inconsistent therewith.

154.

The allegations pled in paragraph 154 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District shows that the content of the referenced declaration speaks for itself, and denies the allegations pled in paragraph 154 of the Amended Complaint to the extent inconsistent therewith.

155.

The allegations pled in paragraph 155 of the Amended Complaint are not directed toward this Defendant and thus need no answer, but to the extent an answer is required, the District admits that Plaintiffs seek to invoke standing and denies the remaining allegations pled in said paragraph.

**VII.   Voting Districts 2, 3 and 6 Do Not Violate the Constitution**

156.

The District denies the allegations pled in paragraph 156 of the Complaint. Further responding, the two maps submitted by Democrat Board members Leroy Tre' Hutchins and Charisse Davis also included a majority-minority district (District 3). Indeed, the proposed redistricting map submitted by Ms. Davis had a slightly higher percentage BVAP in District 3 than the Chair's map. The proposed

redistricting map submitted by Mr. Hutchins had a slightly <u>higher</u> percentage LVAP in Districts 3 and 6 than the Chair's map.

157.

The District shows that the content of the referenced map speaks for itself and denies the allegations pled in paragraph 157 of the Amended Complaint.

158.

The District shows that the contents of the referenced maps speak for themselves and denies the allegations pled in paragraph 158 of the Amended Complaint.

**<u>District 2</u>**

159.

The District denies the allegations pled in paragraph 159 of the Amended Complaint.

160.

The District denies the allegations pled in paragraph 160 of the Amended Complaint.

161.

The District denies the allegations pled in paragraph 161 of the Amended Complaint.

162.

The District denies the allegations pled in paragraph 162 of the Amended Complaint.

**District 3**

163.

The District denies the allegations pled in paragraph 163 of the Amended Complaint.

164.

The District denies the allegations pled in paragraph 164 of the Amended Complaint.

165.

The District denies the allegations pled in paragraph 165 of the Amended Complaint.

166.

The District denies the allegations pled in paragraph 166 of the Amended Complaint.

**District 6**

167.

The District denies the allegations pled in paragraph 167 of the Amended Complaint.

168.

The District denies the allegations pled in paragraph 168 of the Amended Complaint.

169.

The District denies the allegations pled in paragraph 169 of the Amended Complaint.

170.

The District denies the allegations pled in paragraph 170 of the Amended Complaint.

## VIII. The Redistricting Plan Does Not Disparately Impact Black Or Hispanic Voters

171

The District denies the allegations pled in paragraph 171 of the Amended Complaint.

172.

The District shows that the content of the referenced recording of Mr. Tyson's presentation to the Board during its December 9, 2021 work session speaks for itself, and denies the allegations pled in paragraph 172 of the Amended Complaint.

173.

The District denies the allegations pled in paragraph 173 of the Amended Complaint.

174.

The District denies the allegations pled in paragraph 174 of the Amended Complaint.

175.

The District denies the allegations pled in paragraph 175 of the Amended Complaint.

176.

The District denies the allegations pled in paragraph 176 of the Amended Complaint.

177.

The District denies the allegations pled in paragraph 177 of the Amended Complaint.

## CLAIM FOR RELIEF

**Count One; Racial Gerrymandering**
**HB 1028's alleged violations of the Fourteenth Amendment to the U.S.**
**Constitution, U.S. Const. amend. XIV, 42 U.S. § 1983**

178.

The District incorporates by reference its responses to paragraphs 1 through 177 of the Amended Complaint as though set forth specifically herein.

179.

The content of the referenced provision of the U.S. Constitution speaks for itself, and the District denies the allegations pled in paragraph 179 of the Amended Complaint to the extent they are inconsistent therewith.

180.

The District denies the allegations pled in paragraph 180 of the Amended Complaint.

181.

The District denies the allegations pled in paragraph 181 of the Amended Complaint.

182.

The District denies the allegations pled in paragraph 182 of the Amended Complaint.

## **PRAYER FOR RELIEF**

183.

The District denies that Plaintiffs are entitled to any of the relief set forth in their Prayer for Relief set forth in subparagraphs (a) – (g) of paragraph 183.

184.

Any allegations in the Amended Complaint not heretofore answered, qualified, or denied are here and now denied as though set forth specifically and denied.

**WHEREFORE,** the School District respectfully requests that this Court:

1.      Dismiss with prejudice Plaintiff's Amended Complaint;

2.      Award the School District its reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 or otherwise; and

3.      Award any and all other relief to the School District that this Court may deem necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

The School District demands trial by jury as to all issues alleged in this civil action.

This 6th day of February, 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com

*Attorneys for Cobb County School District*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANT COBB COUNTY SCHOOL DISTRICT'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** to the Clerk of Court using the Court's E-file system, which will automatically send electronic mail notification of such filing to counsel of record

This 6th day of February, 2023.

/s/ Philip W. Savrin
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

*Attorney for Cobb County School District*

Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)