## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KAREN FINN, DR. JILLIAN FORD, HYLAH DALY, JENNE DULCIO, GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC., NEW GEORGIA PROJECT ACTION FUND, LEAGUE OF WOMEN VOTERS OF MARIETTA-COBB, and GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.,**<br><br>    **Plaintiffs,**<br><br>**-v-**<br><br>**COBB COUNTY SCHOOL DISTRICT, COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION, and JANINE EVELER, in her official capacity as Director of the Cobb County Board of Elections and Registration,**<br><br>    **Defendants.** | **Case No. 1:22-cv-2300-ELR** |

## COBB COUNTY SCHOOL DISTRICT'S MOTION FOR SANCTIONS UNDER RULE 11 AND MEMORANDUM OF LAW IN SUPPORT

Defendant Cobb County School District ("District"), a defendant herein, moves for sanctions under Rule 11 due to the wholesale absence of legal grounds to support Plaintiffs' claims in this case.

## FACTS

This case arises from a purely political dispute between the three Democratic and four Republican members of the Cobb County Board of Education ("the Board") and the redistricting of the seven Board districts following the 2020 census.[1] Redistricting is a quintessential political process. Plaintiffs, who consist of alleged "non-partisan" organizations that in reality promote partisan Democratic causes, and individuals they recruited who are also partisan Democrats, are upset that the effect of the redistricting process did not align with their preferred partisan outcome: a Democratic takeover of the Board. Lacking the political power to effect the change they wanted, Plaintiffs have improperly resorted to the federal courts without any factual or legal basis for the relief they seek.[2]

In both their initial and amended complaints, Plaintiffs describe the actions of the District and the General Assembly in the redistricting process, attributing

---

[1] The Board is the governing body of the District. *See* O.C.G.A. § 20-2-50.

[2] This lawsuit is representative of the very thing that Justice Alito warned about, "that the federal courts will be transformed into weapons of political warfare. Unless courts 'exercise extraordinary caution' in distinguishing race-based redistricting from politics-based redistricting . . . they will invite the losers in the redistricting process to seek to obtain in court what they could not achieve in the political arena. . . . Even if the minority party loses in court, it can exact a heavy price by using the judicial process to engage in political trench warfare for years on end." Cooper v. Harris, 581 U.S. 285, 334–35, 137 S. Ct. 1455, 1490, 197 L. Ed. 2d 837 (2017)(Alito, J. concurring)).

racial motivations to the decisions made. Yet, quizzically, Plaintiffs did not sue the District whose members they accuse of racism, nor the General Assembly (through the State of Georgia) whose members ultimately voted on the recommendations provided by the District. Instead, Plaintiffs sued the Cobb County Board of Elections and Registration ("BOE") as well as its director Janine Eveler, who were not involved in the redistricting process and whose only role is to oversee elections. See O.C.G.A. § 21-2-70. Plaintiffs' decision to sue the BOE when the targets of their claims are the District and the State, is nothing less than a naked attempt to seek redress from this federal court while at the same time strategically preventing the District and the State from responding to the spurious accusations.

Immediately, the BOE responded to Plaintiffs' tactics by moving to be dismissed, pointing out very clearly that "[t]he only interest the Election Defendants have in this matter is the legal obligation to conduct elections using the maps adopted by the State. They do not have any interest in either defending or challenging the constitutionality of adopted maps." (Doc. 30-1, p. 12.) The BOE further noted that "if this action moves forward without joining the School Board and the State, Plaintiffs would be asserting claims about the new school board maps without giving the parties who had an actual interest in creating and adopting the maps a chance to defend them." (Id.)

Instead of responding to the BOE's motion, or seeking to include the District or the State as defendants, Plaintiffs amended their Complaint to double-down on their baseless assertions that racism infected the redistricting decision. (Doc. 37.) Once again, they castigate the District (referred to as "the Board") of racism in their actions. (Id.)  The BOE again moved to dismiss the amended allegations, noting that "[w]hile the Amended Complaint identifies numerous government officials and individual actors whose actions are responsible for the creation of the allegedly injurious maps, Plaintiffs seem determined to avoid litigating directly with those parties. Instead, they ask the Court to grant injunctive relief and attorney's fees against election officials who had no control or input regarding the creation of the challenged districts, nor even a sufficient connection to the process to have knowledge of the facts alleged in the Amended Complaint." (Doc. 43-1, p. 2.) And once again, the BOE advised that if Plaintiffs are allowed to maintain their claims then "the School Board, the State of Georgia (or its election officials) should be joined to defend their interests in the maps." (Doc. 43-1, p. 18.)

Despite the clarity of the BOE's arguments and the plain invitation to join the parties whose conduct was at issue in this action, Plaintiffs declined to act appropriately. Instead, they opposed joinder of the District (or the State) by asserting that neither had "claimed a legally-protected interest in this matter."

(Doc. 44, p. 16.) In support, Plaintiffs stated that they had provided the Attorney General with "actual notice of Plaintiffs' filing of the complaint and amended complaint in this action" (id.), yet conspicuously absent is any mention of providing notice to the District whose Board members were spared no vitriol by Plaintiffs in their pleadings.

Plaintiffs' calculated effort to accuse the District's Board members of abject racism while intentionally excluding the District as a party resulted in the District moving to intervene as a party defendant. In support, the District showed that intervention was needed to allow the District "to protect its interest in defending the redistricted map that was properly approved through the political process." (Doc. 52-1, p. 5.) In a single paragraph, Plaintiffs responded by *consenting* to the District's involvement in the case (Doc. 54), something they should have done from the outset as their allegations in the amended complaint were nothing more or less than attacks against the District and the State.

Having then finally been given a seat at the table, the District has answered the allegations and participated in discovery. Likewise, the District has been able to educate the Court as to the actual political processes involved. In moving for judgment on the pleadings, the District showed that it made a *recommendation* with respect to redistricting that was then considered independently by the General

Assembly. As explained by the Eleventh Circuit,

> Objections to local legislation typically are not pursued; nonetheless, this does not render plenary authority to the local delegations with respect to the enactment of local legislation, as Voters argue. The local delegations only make recommendations to the House and Senate standing committees, which then propose local legislation to the entire body. Local legislation is not officially enacted until it is voted on by a majority of the full House and Senate and signed by the Governor. Thus, the General Assembly, which has undisputedly been apportioned in accordance with the "one person, one vote" requirement, engages in the governmental function of lawmaking, not the local delegations.

DeJulio v. Georgia, 290 F.3d 1291, 1296 (11th Cir. 2002). Indeed, the General Assembly has the **sole** authority under Georgia's Constitution to enact new district voting maps in preempting "[a]ction affecting the composition, form, procedure for election or appointment, compensation, and expenses and allowances in the nature of compensation of the county governing authority." Ga. Const., Art. IX, § 2, ¶ I (c)(2).

Critically, Plaintiffs seek relief under Section 1983 pursuant to which they must show that the governmental entity's actions were the "moving force" behind the violations alleged. See generally City of Canton v. Harris, 489 U.S. 378, 379 (1989). "A defendant's actions cannot be the moving force behind a violation where the actions of another, independent decisionmaker breaks the chain of causation." Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., 48 F.4th 1222,

1235–36 (11th Cir. 2022). Because the District did not enact the redrawn districts, the only proper defendant for purposes of the relief sought would be the State whose General Assembly had that sole and exclusive power.

Rule 11 sanctions are warranted due to the Plaintiffs' improper use of the litigation process to pursue purely partisan goals while harassing the District and causing it to incur wholly unnecessary time and expense to respond to claims that are frivolous and unfounded under clearly established law.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Rule 11 Requires Reasonable Inquiry Into the Law and Facts

Rule 11 of the Federal Rules of Civil Procedure requires that an attorney or a party conduct a reasonable inquiry into the law and facts prior to signing and filing any pleading, motion, or other paper with the court.  Specifically, Rule 11 provides as follows:

> (b) Representations to Court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

Under the 1993 amendments to Rule 11, the Rule's obligations exist not only when papers are filed or submitted to the Court, but also when they are reaffirmed to the Court and when a party continues to advocate positions in them "after learning that they cease to have any merit." Jones v. Int'l Riding Helmets, Ltd., 49 F.3d 692, 694 n.3 (11th Cir. 1995) (citing Fed. R. Civ. P. Advisory Committee Notes). An attorney has a continuing obligation to make inquiries as to the merit of claims asserted. Battles v. City of Ft. Myers, 127 F.3d 1298, 1300 (11th Cir. 1997) (citing Fed. R. Civ. P. 11 Advisory Committee Notes).

The District Courts in this Circuit impose Rule 11 sanctions when a party files a pleading based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law. Jones, 49 F.3d at 694. See also Souran v. Travelers Ins. Co., 982 F.2d 1497, 1506 (11th

Cir. 1993).  Rule 11 sanctions are also appropriate when a party files a pleading in bad faith for an improper purpose.  See Jones, 49 F.3d at 694.  Further, a court considering Rule 11 sanctions should ask whether the party's claims are objectively frivolous and, if so, whether the one who signed the pleading should have known they were frivolous.  Id. at 695.

> Where, as here, we have no direct evidence of the party's and counsel's state of mind, we must examine the circumstantial evidence at hand and ask, objectively, whether an ordinary person standing in the party's or counsel's shoes would have prosecuted the claim.

Pelletier v. Zweifel, 921 F.2d 1465, 1515 (11th Cir. 1991).

In the Eleventh Circuit, Rule 11 requires sanctions even when only a few counts of a multiple count complaint violate the Rule.  See Patterson v. Akin, 841 F.2d 386, 387 (11th Cir. 1988); Dodd Ins. Servs. v. Royal Ins. Co. of America, 935 F.2d 1152, 1158-59 (10th Cir. 1991) ("to conclude otherwise would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions").  See also Jackson v. Hall County Gov't, 568 F. App'x 676, 679-680 (11th Cir. 2014); Cross Properties v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989) ("to adopt a standard that would deny sanctions for a significantly and obviously meritless claim simply because the rest of the pleading was sound strikes

us as contrary to this Court's established reading of Rule 11"); <u>Frantz v. United States Powerlifting Fed'n</u>, 836 F.2d 1063, 1067 (7th Cir. 1987)("Rule 11 applies to all statements and papers it covers.  Each claim must have sufficient support; each must be investigated and researched before filing").

The "mere belief" that one has a valid claim is insufficient to satisfy the requirements of Rule 11. <u>Brown v. Consol. Freightways</u>, 152 F.R.D. 656, 660 (N.D. Ga. 1993). <u>See also</u> <u>Attwood v. Singletary</u>, 105 F.3d 610, 613 (11th Cir. 1997) (plaintiff is to "advise the court of any changes" regarding the veracity of information before the court because "obligations under Rule 11 are not measured solely at the time of filing"); <u>Turner v. Sungard Bus. Sys., Inc.</u>, 91 F.3d 1418, 1422 (11th Cir. 1996) ("that the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the plaintiff's attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable"); <u>Brown</u>, 152 F.R.D. at 660 (citing <u>Flip Side Prods., Inc. v. Jam Prods. Ltd.</u>, 843 F.2d 1024 (7th Cir. 1988)); <u>Patterson v. Alaska Airlines, Inc.</u>, 756 F. Supp. 476 (W.D. Wash. 1990)).  <u>See</u> <u>also</u> Fed R. Civ. P. 11, 1993 Amendment Advisory Committee Notes, Subdivision (a), which state:

> [A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease

to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time. Similarly, if <u>after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court</u> (whether as claims, defenses, or in disputes regarding removal or remand), <u>it would be viewed as "presenting" –and hence certifying</u> to the district court under Rule 11-–those allegations.

Fed. R. Civ. P. 11, 1993 Amendment Advisory Committee Notes (emphasis added).

## B.    Rule 11 Sanctions are Warranted in this Case

Plaintiffs had no basis for their claims and their conduct is violative of Rule 11. <u>See</u> <u>Jones v. Int'l Riding Helmets, Ltd.</u>, 145 F.R.D. 120, 125 (N.D. Ga. 1992) (Evans, J.), <u>aff'd</u>, 49 F.3d 692 (11th Cir. 1995) (plaintiff and attorneys can be ordered to pay Rule 11 sanctions including defense costs for frivolous litigation of issues). <u>See</u> <u>also</u> <u>Mike Outlay Productions, Inc. v. WJBF-TV</u>, 952 F.2d 380, 384 (11th Cir. 1992) (upholding Rule 11 sanctions for defense costs <u>and</u> fees and expenses of bringing a Rule 11 motion).

On April 4, 2023, the District's counsel sent a letter (Exhibit A) with an unfiled copy of this Motion to provided notice that the District would be seeking Rule 11 sanctions if the District was not dismissed with prejudice within twenty-one (21) days.

1.    **Rule 11 Sanctions Should Be Imposed On Plaintiffs And Their Counsel For Filing This Lawsuit With An Improper Purpose: To Score Political Points By Smearing The District And Its Republican Board Members With False And Inflammatory Allegations Of Racism Without Naming The District As A Party**

Rule 11 sanctions should be imposed on Plaintiffs (especially the organizational Plaintiffs) and their counsel for filing this lawsuit with an improper purpose: politically weaponizing the judiciary. The role of the judiciary in our constitutional order is to resolve disputes through impartial application of the law. It is manifestly not to serve as a conduit for political opposition.  American law abounds in doctrinal precedents, rules and norms that exist precisely to prevent the courts from being used as platforms for political advocacy. It is the courts' duty when confronted with attempts—such as this—to thrust the judiciary into the political fray to invoke these doctrines and turn away and sanction would-be judicial weaponizers. In furtherance of this improper purpose, Plaintiffs and their counsel (who are seasoned and experienced redistricting litigators) made a calculated and strategic decision to *exclude* the District as a defendant so that the District (as a non-party) could not respond to the false and inflammatory allegations of racism hurled against the Republican members of the Board in the Complaint and Amended Complaint. Also in furtherance of this improper purpose, Plaintiffs issued at least one press release to publicize their lawsuit in hopes of generating as much negative publicity

against the District and its Republican Board members as possible. (Exhibit B.)

Plaintiffs' ploy initially succeeded: Plaintiffs' false and inflammatory allegations of racism against the District and its Republican Board members–fanned by substantial negative publicity about the lawsuit–went unchallenged for approximately six months–from June 9, 2022, when Plaintiffs filed the Complaint (Doc. 1) until December 19, 2022, when the District filed its Motion to Intervene (Doc. 52).   Only then did the District have the opportunity to at least begin the process of refuting Plaintiffs' false and inflammatory allegations. (Docs. 52, 64).   As the District has shown, Plaintiffs' allegations that the Board took various actions because of race are in reality complaints about the outcome of political disagreements between Republican Board members and Democrat Board members on a variety of issues.   (*Id*.). For instance, the Plaintiffs contend that the redistricting maps were motivated by racism, in part, because the Board: (1) voted to dissolve a committee to rename a high school named after a confederate soldier (Doc. 37 at 23-24, ¶¶ 70-73); (2) voted to ban Critical Race Theory and the 1619 Project (Doc. 37 at 24-25, ¶¶ 74-74); and (3) refused to revisit additional COVID-19 protocols in August 2021, well after the initial concerns of the pandemic had subsided (Doc. 37 at 27-28, ¶¶ 80-85).

If the actual purpose of this lawsuit was to challenge the redistricting map with the voting districts identified in the Complaint and Amended Complaint, Plaintiffs

and their counsel would have named as Defendant the State of Georgia, which is the *only* legal entity with the legal authority under the Georgia Constitution and clearly established law to enact the redistricting map at issue.  Plaintiffs, however, *still* have not attempted to add the State as a Defendant in this lawsuit.

> **2.    Rule 11 Sanctions Should Be Imposed On Plaintiffs And Their Counsel For Continuing To Pursue Their § 1983 Racial Gerrymandering Claim Against The District Even Though It Was Meritless Under Clearly Established Law**

Rule 11 sanctions also should be imposed on Plaintiffs (especially the organizational Plaintiffs) and their counsel for continuing to maintain their § 1983 racial gerrymandering claim against the District after the Court allowed the District to intervene as a Defendant in the lawsuit, and Plaintiffs were put on notice that the General Assembly was the ultimate decision maker.

> **a.    Plaintiffs Refused To Dismiss Frivolous And Unfounded Claim That District Could Be Held Liable Under § 1983 For the General Assembly's Adoption Of Redistricting Map**

Only the General Assembly may enact redistricting maps for county school board seats.  Ga. Const., Art. IX, § 2, ¶ I (c)(2).  Under clearly established law, a local government entity such as the District may *not* be held vicariously liable under 42 U.S.C. § 1983 for constitutional violations; the District may only be held liable if a policy or custom of the District was the "moving force" behind the

constitutional violation.  See, e.g., Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 379 (1989); Baxter v. Roberts, 54 F.4th 1241, 1270 (11th Cir. 2022).  The law is equally clear that "[a] defendant's actions cannot be the moving force behind a violation where the actions of another, independent decisionmaker breaks the chain of causation."  Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., 48 F.4th 1222, 1235–36 (11th Cir. 2022).

Here, the State was "another, independent decisionmaker" by virtue of the General Assembly deciding to enact HB 1028 adopting the challenged redistricting map and Governor Kemp decided to sign the bill into law.  Plaintiffs and their counsel knew or should have known about these facts and the clearly established law set forth above.  Yet Plaintiffs and their counsel continued to pursue their § 1983 racial gerrymandering claim against the District anyway.

**b.    Plaintiffs Refused To Dismiss Frivolous And Unfounded Claim That District Acted As "Cat's Paw" For General Assembly**

Recognizing that the District cannot be held liable under § 1983 for merely recommending a redistricting map, Plaintiffs here essentially assert a "cat's paw" theory of liability against the District, which is a "'dupe' who is 'used by another to accomplish his purposes.  A plaintiff in a *'cat's paw'* case typically seeks to hold the

plaintiff's employer liable for 'the animus of a supervisor who was not charged with making the ultimate [adverse] employment decision.'" <u>Brnovich v. Democratic Nat'l Comm.</u>, 141 S. Ct. 2321, 2350 (2021) (internal citations omitted).

Leaving aside the absence of any evidence of a racial motive by the Board, the United States Supreme Court has emphatically rejected the application of the "cat's paw": theory of liability to legislative bodies:

> The "cat's paw" theory has no application to legislative bodies. The theory rests on the agency relationship that exists between an employer and a supervisor, but the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents. Under our form of government, legislators have a duty to exercise their judgment and to represent their constituents. It is ***insulting*** to suggest that they are mere dupes or tools.

<u>Id</u>. (emphasis added).

Thus, Plaintiffs' suggestion that the Georgia legislature could be used as the Board's *"cat's paw"* in attempting to state a claim sufficient to impute liability to the District is, to use the Court's words, "insulting" to Georgia's democratic process. As the Supreme Court has reiterated, "[u]nder our form of government, legislators have a duty to exercise judgment and represent their constituents." <u>Brnovich</u>, 141 S. Ct. at 2350. And legislatures are presumed to act in good faith. <u>See</u> <u>Abbott v. Perez</u>, 138 S. Ct. 2305, 2325 (2018).

Plaintiffs and their counsel knew or should have known that <u>Brnovich</u>

foreclosed their attempt to attribute to the Georgia legislature the purported racial motives of the Board in adopting the redistricting map recommended by the Board. Yet Plaintiffs and their counsel continued to pursue their § 1983 claim against the District anyway.

> ### c.    Plaintiffs Refused To Dismiss Frivolous And Unfounded Claim That General Assembly Adopted HB 1028 Because Of Race Based Solely On Statements By Bill's Sponsor

Because Plaintiffs have not named the State as a Defendant, their allegations that the General Assembly adopted HB 1028 because of race are irrelevant. Indeed, allegations that *the State* adopted HB 1028 because of race provide no basis for pursuing a § 1983 racial gerrymandering claim against *the District*. Moreover, for the reasons stated in the District's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, the statements attributed to the sponsor of HB 1028, Representative Ginny Ehrhart, do not even remotely suggest a racial motive.  (Doc. 83, pp. 21-23.)

Even if they did, however, by focusing upon Representative Ehrhart's comments, Plaintiffs simply offer another variation of the *cat's paw* argument that Brnovich rejected.  Plaintiffs in essence allege that the Board, allegedly acting with racially invidious intent, used Representative Ehrhart as its *cat's paw* to promote its allegedly unconstitutional redistricting map and to shepherd HB 1028 through

the legislature.  But "the legislators who vote to adopt a bill are not the agents of the bill's sponsors or proponents." <u>Brnovich</u>, 141 S. Ct. at 2350. It also follows that the Georgia legislators who voted to pass HB 1028 were not agents of the Board, Rep. Ehrhart or anyone else. Instead, each legislator exercised his or her duty to represent their constituents. And Plaintiffs fail to allege any fact showing that a legislator failed to act in good faith or used race as a predominant factor for their decision to vote in favor of HB 1028. See <u>Abbott</u>, 138 S. Ct. at 2325.

Plaintiffs and their counsel knew or should have known that *Brnovich* foreclosed their attempt to attribute to the Georgia legislature the purported racial motives of Representative Ginny Ehrhart in enacting the redistricting map. Yet Plaintiffs and their counsel continued to pursue their § 1983 claim against the District anyway.

## <u>CONCLUSION</u>

WHEREFORE**,** the District respectfully requests that this Court enter an Order imposing the following sanctions upon Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11:

1. Payment from Plaintiffs and their counsel of the District's attorneys' fees and costs associated with bringing this Rule 11 Motion for Sanctions;

2. Payment from Plaintiffs and their counsel of the District's attorney's fees and costs incurred due to the filing of the Amended Complaint;

and

3.    Payment from Plaintiffs and their counsel to the Court for a fine, in an amount to be determined by this Court, to deter such frivolous actions in the future.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com
Scott Eric Anderson
Georgia Bar No. 105077
Scott.Anderson@fmglaw.com

*Counsel for Cobb County School District*

## LOCAL RULE 7.1 CERTIFICATION

The undersigned does hereby certify that this memorandum of law has been

prepared with Times New Roman 14-point font in compliance with Local Rule 5.1.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing to the Clerk of Court by electronic mail and by certified mail return receipt requested addressed to counsel of record as follows:

Bradley E. Heard
Pichaya Poy Winichakul
Michael Tafelski
SOUTHERN POVERTY
LAW CENTER
150 E. Ponce de Leon Ave. Suite 340
Decatur, Georgia 30030

Jeff Loperfido
Christopher Shenton
SOUTHERN COALITION FOR
SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707

Rahul Garabadu
Cory Isaacson,
Caitlin May
ACLU FOUNDATION
OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357

Daniel W. White
HAYNIE, LITCHFIELD
& WHITE, PC
222 Washington Avenue
Marietta, GA 30060

Jon Greenbaum
Ezra D. Rosenberg
Julie M. Houk
Sofia Fernandez Gold
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street Suite 900
Washington, DC 20005

Douglas I. Koff
Thomas L. Mott
Paul Schochet
Savannah Price
Matthew J. Sunday
SCHULTE ROTH &
ZABEL LLP
919 Third Avenue
New York, New York 10022

Caren E. Short
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW
Suite 500
Washington, DC 20036

This 28th day of April, 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

*Counsel for Cobb County School District*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)