**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

---

KAREN FINN, DR.  JILLIAN FORD,
HYLAH DALY, JENNE DULCIO,
GALEO LATINO COMMUNITY
DEVELOPMENT FUND, INC.,
NEW GEORGIA PROJECT ACTION
FUND, LEAGUE OF WOMEN VOTERS
OF MARIETTA-COBB, and
GEORGIA COALITION FOR THE
PEOPLE'S AGENDA, INC.

        Plaintiffs

        -v-

COBB COUNTY BOARD OF
ELECTIONS AND REGISTRATION
and JANINE EVELER, in her official
capacity as Director of the Cobb County
Board of Elections and Registration, and
COBB COUNTY SCHOOL DISTRICT,

        Defendants.

Case No.  1:22-cv-2300-ELR

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE**
**DISTRICT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# Table of Contents

Page

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF THE CASE ............................................................... 4

PROCEDURAL HISTORY ................................................................... 7

LEGAL STANDARD .......................................................................... 8

ARGUMENT ..................................................................................... 9

I.    THE DISTRICT RELIES ON CASE LAW INAPPLICABLE TO RACIAL GERRYMANDERING ................................................... 9

      A.    The District Improperly Conflates the Standard for Intentional Discrimination and Racial Gerrymandering .......................................... 9

      B.    "Cat's Paw" Liability and *Brnovich* Are Irrelevant to Plaintiffs' Claim ........................................................................... 13

II.   THE MOTION DOES NOT CHALLENGE PLAINTIFFS' ALLEGATIONS SHOWING RACIAL PREDOMINANCE ................. 15

      A.    Plaintiffs Adequately Allege Evidence of Race Predominance .......... 17

      B.    The District Argues Competing Factual Inferences ........................... 22

III.  THE ACTION WAS BROUGHT AGAINST THE PROPER DEFENDANTS ............................................................................ 23

IV.   CONCLUSION ........................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*Abbott v. Perez*,
  138 S. Ct. 2305 (2018)......................................................................12

*Auto. Assurance Grp. v. Giddens*,
  2022 WL 18460629 (N.D. Ga. Sept. 20, 2022)....................................7

*Baxter v. Roberts*,
  54 F.4th 1241 (11th Cir. 2022) .........................................................11

*Bethune-Hill v. Va. State Bd. of Elections*,
  580 U.S. 178 (2017)..........................................................10, 12, 15

*Brnovich v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021).......................................................................13

*Chabad Chayil, Inc. v Sch. Bd. Of Miami-Dade Cnty.*,
  48 F.4th 1222 (11th Cir. 2022) .........................................................11

*Cooper v. Harris*,
  581 U.S. 285 (2017).....................................................................*passim*

*Crisp v. Georgia*,
  2022 WL 3589673 (11th Cir. Aug. 23, 2022), *cert. denied*,  2023
  WL 2959398 (Apr. 17, 2023) .............................................................24

*Davis v. Chiles*,
  139 F.3d 1414 (11th Cir. 1998) ...................................................14, 16

*DeJulio v. Georgia*,
  127 F. Supp. 2d 1274 (N.D. Ga. 2001)...............................................24

*Fair Fight Action, Inc. v. Raffensperger*,
  413 F. Supp. 3d 1251 (N.D. Ga. 2019)........................................23, 24

*First-Citizens Bank & Tr. Co. v. SJ Pharms., LLC*,
  2016 WL 9383313 (N.D. Ga. Dec. 21, 2016) (Ross, J.) ......................8

*Ga. Advoc. Off. v. Georgia*,
447 F. Supp. 3d 1311 (N.D. Ga. 2020)...............................................20

*Grizzle v. Kemp*,
634 F.3d 1314 (11th Cir. 2011) .........................................................23

*Hunt v. Cromartie*,
526 U.S. 541 (1999)...........................................................................15

*Ingram v. Buford City Sch. Dist.*,
2018 WL 7079179 (N.D. Ga. Dec. 17, 2018) .............................8, 21

*Jacksonville Branch of NAACP v. City of Jacksonville*,
2022 WL 16754389 (11th Cir. Nov. 7, 2022) ....................................19

*Jacobson v. Fla. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) .........................................................23

*Kimel v. Fla. Bd. of Regents*,
528 U.S. 62 (2000)..............................................................................23

*League of United Latin Am. Citizens v. Abbott*,
2022 WL 174525 (W.D. Tex. Jan. 18, 2022) ...........................15, 17

*League of United Latin Am. Citizens   v. Abbott*,
604 F. Supp. 3d 463 (W.D. Tex. May 23, 2022).......................16, 22

*Lowery v. Amguard Ins. Co.*,
2021 WL 6752234 (N.D. Ga. July 30, 2021) .....................................9

*Miller v. Johnson*,
515 U.S. 900 (1995)......................................................................10, 15

*Monell v. Dep't of Soc. Servs. Of N.Y.*,
436 U.S. 658 (1978)......................................................................11, 14

*Perez v. Wells Fargo N.A.*,
774 F.3d 1329 (11th Cir. 2014) .........................................................16

*Petteway v. Galveston Cnty*,
2023 WL 2782705 (S.D. Tex. Mar. 30, 2023) ...........................16, 22

*Reid v. Hasty*,
2008 WL 11464855 (N.D. Ga. Mar. 13, 2008), *report and recommendation adopted as modified on other grounds*, 2008 WL 11466079 (N.D. Ga. July 16, 2008) ...................................................................8

*Shaw v. Reno*,
509 U.S. 630 (1993) ........................................................................11

*Shelby Cnty. v. Holder*,
570 U.S. 529 (2013) ........................................................................18

*Solis v. Botes*,
2011 WL 13269083 (N.D. Ga. Sept. 21, 2011) ...............................8

*S.C. State Conf. of the NAACP v. Alexander*,
2022 WL 453533 (D.S.C. Feb. 14, 2022) ...............................20, 21

*Trump v. Kemp*,
511 F. Supp. 3d 1325 (N.D. Ga. 2021) ..........................................25

*Tyson v. Town of Homer*,
2021 WL 8893039 (N.D. Ga. July 2, 2021) ..............................23, 24

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ...............................................................11, 13

**Statutes**

42 U.S.C. § 1983 ...............................................................................9

O.C.G.A. § 21-2-70 .........................................................................23

**Rules**

Fed. R. Civ. P. 5.1 ...........................................................................23

N.D. Ga. Local Rule 7.1(A)(2) .....................................................1, 7

## PRELIMINARY STATEMENT

This racial gerrymandering action challenges the newly redistricted voting districts for the Cobb County Board of Education ("Board of Education" or "Board") that are intended to be used in the 2024 elections.  Plaintiffs' Amended Complaint ("Complaint") adequately alleges a claim of racial gerrymandering against the government body responsible for implementing the challenged districts:  the Cobb County Board of Elections and Registration ("BOER") and Cobb County's Elections Director, Janine Eveler (with the BOER, the "BOER Defendants").  Intervenor-Defendant Cobb County School District ("District") brings this motion for judgment on the pleadings ("Motion" or "Mot.") and asserts several reasons why it believes the case should be dismissed.  As established below, each of those reasons fail and demonstrate that the District fundamentally misunderstands both Plaintiffs' claim and the applicable legal standard for racial gerrymandering.

*At the outset*, the District waited six months after it was made aware of this suit to move to intervene both "as of right" and "permissively," arguing it was a "proper defendant."  Now, after an additional four months, the District is changing course, arguing that only the State or the General Assembly—and not the District nor the BOER Defendants—are the proper defendants in this case.  (*See* Mot. at 11, 14, 15, 19.)  Moreover, the District violated Local Rule 7.1(A)(2) by filing the

Motion well past 30 days from the start of discovery without leave of Court.  The District's unconventional procedural maneuverings should not be allowed to further delay Plaintiffs' prosecution of this action, especially in light of the fast-approaching 2024 elections.[1]  Quite apart from this fundamental defect, the Motion is wrong on the law and the facts.

*First*, the Motion posits that Plaintiffs must show "racial intent" or "racial motive" or "discriminatory intent" by the government officials that passed the challenged legislation.   The Motion argues that the District's actions should therefore be disregarded because the District merely "recommended" the electoral map to the Georgia General Assembly and Governor, both of whom could have rejected it.  The District is wrong on both counts.  Because Plaintiffs' claim is for racial gerrymandering and not intentional discrimination, there is no requirement to plead discriminatory intent.   Rather, Plaintiffs only need to show racial predominance, which turns on whether the map-drawer constructed a district where

---

[1] On January 13, 2023 (shortly after the District moved to intervene, but before the Court granted intervention), Plaintiffs served the District with a document subpoena. The District moved to quash the subpoena on the grounds that they were not yet a part of the case, despite Plaintiffs' and the BOER Defendants' consent to such intervention.  (ECF No. 58.)  The Court granted the intervention motion on January 30, 2023.  (ECF No. 60.)  That same day, Plaintiffs promptly served discovery requests on the District, which, at the District's insistence, restarted the discovery clock with respect to the material sought in the subpoena.

race overrode other considerations.  Therefore, it is the actions of the District—the actual and undisputed map-drawer—which are relevant to the legal analysis. Plaintiffs have pled that race was the predominant consideration when Cobb County's districts were redrawn, and that is all that is required to establish a racial gerrymandering claim.  *See infra* Section I(A).

Stemming from the District's confusion over the proper legal standard, the Motion posits a confusing argument concerning a supposed "cat's paw" theory of liability.  To be clear, the Complaint does not rely on that theory of liability, which is an obscure concept normally limited to employment discrimination cases.  Indeed, for the District's "cat's paw" argument to make any sense, Plaintiffs would need to attribute one entity's discriminatory intent to another entity.  The Complaint does not include any such allegations.  Moreover, as established herein, racial gerrymandering claims have no discriminatory intent requirement.  The District's repeated "cat's paw" argument is therefore a red herring.  *See infra* Section I(B).

*Second*, in the face of Plaintiffs' well-pled allegations that establish their racial gerrymandering claim, the District offers only improper alternative explanations for Plaintiffs' allegations, ignoring that the Court must accept plausible allegations as true and afford Plaintiffs all favorable inferences at this stage in the litigation.  *See infra* Section II.

*Third*, the District argues the Complaint should be dismissed because Plaintiffs did not name the purported proper parties (*i.e.*, State of Georgia and the General Assembly).  The District is wrong.  In accordance with well-established case law (ignored by the District), Plaintiffs brought this action against those actually responsible for enforcing the redistricting map:  the BOER Defendants.  *See infra* Section III.

## STATEMENT OF THE CASE

The Complaint pleads, through both direct and circumstantial evidence, that race predominated in the design of the Cobb County Board of Education map ("Map").  Rather than address the sufficiency of Plaintiffs' allegations, which must be accepted as true at this stage of the case, the District glosses over the history of Cobb County, miscasts statements on race through the lens of "politics," and hides behind *post-hoc* explanations.  (Mot. at 2-5.)

The Motion ignores entirely the allegations in the Complaint that support the assertion that race was the predominant consideration in redrawing the district lines.  The Complaint alleges in detail that the white Board members and legislative sponsors of the Map repeatedly claimed that they considered race in order to comply with the Voting Rights Act ("VRA"), (Compl. ¶¶ 6, 114, 125), when in reality the VRA "was used as a pretext for the Board and state legislators to improperly separate

voters of color from white voters to maintain the white members' slim majority on the Board."  (*Id.* ¶ 9.)

The Complaint also alleges that race was the predominant factor in redistricting as evidenced by the Map resulting in "packing Black and Latinx voters in a manner not justified by the VRA." (*Id.* ¶ 147.)  Further, as alleged, consideration of race was not narrowly tailored in a manner to comply with the VRA or any other compelling governmental interest.  (*Id.* ¶¶ 150-61.)  Those allegations are sufficient on their own to support the racial gerrymander claim, but there is much more, all of which the District ignores in its Motion.

The Complaint also alleges circumstantial evidence to support the improper role of race in drawing the Map.  For instance, the processes by which the Map was designed and then enacted substantially deviated from past practices.  Specifically, the Board's white majority:  (i) abandoned the long-standing custom of seeking at least three bids from outside firms and retained Taylor English LLP ("Taylor English") without consulting their Black colleagues (Compl.  ¶¶ 95-98); (ii) prevented meaningful comment on the Map by waiting until the eve of the Board's vote to approve the Map to actually provide it to Cobb County residents and the Black Board members (*id.*  ¶¶ 103-105); and (iii) ignored other identified redistricting criteria (*id.*  ¶¶ 140-46.)  In response, the District argues that the

deviations in the Map selection process were based not on race, but politics.  Those are arguments the District can pursue through discovery, but they are improper at this stage of the litigation.

The deviation from past practices continued at the state legislative level, where HB 1028 was brought as a "general bill," unlike the 200-plus local redistricting bills from the prior redistricting cycle, all of which were brought as "local bills."  (*Id.* ⁋ 111.)  That tactic prevented the local delegation (comprised predominantly of minority-preferred candidates) from approving the bill before it went to the full General Assembly for a vote.  (*Id.*)

Finally, the Complaint alleges that the composition of Districts 2, 3, and 6 ("Challenged Districts") themselves reflect a map-design process that was predominated by race, and did not comply with traditional districting criteria.  As detailed in the Complaint, the Map packs the largely Black and Latinx community of South Cobb into Districts 2, 3, and 6 (*id.* ⁋ 157) and splits the municipalities of Smyrna and Kennesaw into different districts.  (*Id.* ⁋ 139.)  The Motion entirely ignores Plaintiffs' well-pled allegations regarding the contours of the Map itself.

The Motion does not meaningfully engage with any of those allegations.

-6-

## PROCEDURAL HISTORY

On June 9, 2022, Plaintiffs filed their Complaint against the BOER Defendants, well in advance of Cobb County's 2024 elections. BOER Defendants moved to dismiss and Plaintiffs filed the amended Complaint on August 19, 2022. (ECF No. 37.) The BOER Defendants filed a second motion to dismiss on September 9, 2022. (ECF No. 43.) That motion is *sub judice*.

Then, despite learning about this lawsuit on the day it was filed through a public press release, the District let six months pass before it moved to intervene in December 2022. (ECF No. 52-1.) The District moved to intervene on the basis that it was a "proper defendant." (*Id*. at 4-6.)

To mitigate the threat of delay in addressing the Challenged Districts before the 2024 elections, Plaintiffs consented to the District's motion to intervene. The Court granted the intervention motion on January 30, 2023. (ECF No. 60.)

On March 31, 2023, the District filed the instant Motion. (ECF No. 83.) The Motion was filed more than 30 days after the start of discovery, yet the District did not seek leave of the Court prior to its filing in accordance with NDGA Local Rule 7.1(A)(2). As such, the Motion is untimely. *See Auto. Assurance Grp. v. Giddens*, 2022 WL 18460629, at *3 (N.D. Ga. Sept. 20, 2022) (denying motion for judgment

on the pleadings when no leave given).[2]   Since the Motion was filed, Plaintiffs have offered on multiple occasions to allow the District to withdraw from the case without prejudice so long as they remain subject to their discovery obligations.   The District has refused those offers.

## LEGAL STANDARD

A motion for judgment on the pleadings is proper only when no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.   *First-Citizens Bank & Tr. Co. v. SJ Pharms., LLC*, 2016 WL 9383313, at *3 (N.D. Ga. Dec. 21, 2016) (Ross, J.).   "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."   *Solis v. Botes*, 2011 WL 13269083, at *2 (N.D. Ga. Sept. 21, 2011) (internal quotation and citation omitted). In deciding a motion for judgment on the pleadings, "the allegations contained in a complaint must be accepted as true and the facts and all inferences must be construed in the light most favorable to the nonmoving party."   *Ingram v. Buford City Sch.*

---

[2] In addition to being untimely, the Motion is also procedurally improper because the District purports to request relief on behalf of the BOER Defendants.   (Mot. at 24.)   *See Reid v. Hasty*, 2008 WL 11464855, at *9 n.7 (N.D. Ga. Mar. 13, 2008) (holding that a defendant could not move on behalf of its co-defendants who did "not indicat[] that they join[ed] in [the movant's] motion to dismiss), *report and recommendation adopted as modified on other grounds*, 2008 WL 11466079 (N.D. Ga. July 16, 2008).

*Dist.*, 2018 WL 7079179, at *4 (N.D. Ga. Dec. 17, 2018).  Failure to address well-pled allegations in the complaint is grounds for denial.  *See, e.g.*, *Lowery v. Amguard Ins. Co.*, 2021 WL 6752234, at *4 (N.D. Ga. July 30, 2021) (denying motion because it "fail[ed] to address" a central element of a sufficiently well-pled claim).

## **ARGUMENT**

## I.   **THE DISTRICT RELIES ON CASE LAW INAPPLICABLE TO RACIAL GERRYMANDERING**

Plaintiffs have brought a racial gerrymandering claim under 42 U.S.C. § 1983 in order to rectify violations of the Equal Protection Clause of the Fourteenth Amendment.  Yet, the Motion seeks dismissal of this claim relying on legal theories and standards that have not been alleged and do not otherwise apply to racial gerrymandering cases.  When utilizing the correct legal standards, the Complaint more than adequately alleges Plaintiffs' claim.

### A.   The District Improperly Conflates the Standard for Intentional Discrimination and Racial Gerrymandering

The Motion errs first by asserting that Plaintiffs must plead "discriminatory intent." (Mot. at 13.)  Pleading discriminatory intent is only required for intentional discrimination claims, not racial gerrymandering claims.  Racial gerrymandering claims involve a two-step analysis.

*First*, plaintiffs have the "burden [] to show . . . that race was the predominant factor motivating the [map-drawer's] decision to place a significant number of voters within or without a particular district." *Miller v. Johnson*, 515 U.S. 900, 916 (1995). Racial predominance is a fact-intensive issue and requires demonstrating that, with respect to the challenged districts, the map-drawer "subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." *Id.* Racial predominance may be proven with direct evidence or circumstantial evidence. While direct evidence can be strongly probative (if not dispositive), *see Cooper v. Harris*, 581 U.S. 285, 299–301 (2017), racial predominance can also be demonstrated through circumstantial evidence. *See Miller*, 515 U.S. at 916; *see also Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 188–89 (2017).

*Second*, if Plaintiffs establish that race predominated in designing the districts, the court applies strict scrutiny and the burden "shifts to the [Defendant] to prove its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper*, 581 U.S. at 292 (citing *Bethune-Hill*, 580 U.S. at 193). Compliance with the VRA is one such compelling state interest. *Id.* But if those defending a challenged voting district cannot demonstrate a "strong basis in

evidence" for concluding that VRA compliance required that particular voting district, it would not pass muster under strict scrutiny and would be unconstitutional. *Id.*

Racial gerrymandering claims are "analytically distinct" from intentional discrimination claims. *Shaw v. Reno*, 509 U.S. 630, 652 (1993).[3]  In an intentional discrimination case—which is *not* the claim at issue here—plaintiffs must show that discriminatory intent was a "motivating factor" for the challenged action or enactment. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).  This difference is important:  racial gerrymandering requires showing that racial considerations predominated in the construction of a specific district.  Missing from the racial gerrymandering analysis is the touchstone of an intentional discrimination claim:  a showing of *discriminatory intent*.  To be sure, evidence of discriminatory intent may be *relevant*, since racial gerrymanders are often motivated

---

[3] Rather than apply the well-established framework from *Shaw* and its progeny, the District also relies on the framework of *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978).  The District improperly attempts to transpose inapplicable language from recent *Monell* decisions stating that a government entity must be the "moving force" behind a constitutional violation.  (*See* Mot. at 12, 15 (citing *Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (citations omitted); *Chabad Chayil, Inc. v Sch. Bd. Of Miami-Dade Cnty.*, 48 F.4th 1222, 1235–36 (11th Cir. 2022)).)  This application of *Monell* to a racial gerrymandering claim is inappropriate and would create an entirely new body of law.

by discriminatory goals.  But discriminatory intent is not a *required* element of a racial gerrymandering claim; all Plaintiffs must satisfy is the two-step analysis laid out above.

Here, Plaintiffs' claim is for racial gerrymandering only, yet throughout its Motion, the District conflates the discriminatory intent standard and the racial predominance standard.  (*See, e.g.*, Mot. at 20 (referring to Plaintiffs' case as both concerning "race as the predominant factor" and "racial discrimination" in the Challenged Districts); *id.* at 13 ("[A] plaintiff alleging racial gerrymandering must plausibly allege that the relevant actor acted with discriminatory intent."); *id.* at 13-14 ("To plausibly state a claim of discriminatory intent . . . ").)

Tellingly, of the 19 cases cited in the Motion, *only two* had anything to do with racial gerrymandering claims.  Worse, those two cases—*Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178 (2017) and *Abbott v. Perez*, 138 S. Ct. 2305 (2018)—are miscited in the Motion and do not actually support the District's position.  The District miscites *Bethune*, without a pincite (*see* Mot. at 13-14), for a proposition concerning a "claim of discriminatory intent in violation of the Equal Protection Clause," despite the fact that the words "discriminatory intent" do not appear anywhere in *Bethune*.  With respect to *Abbott*, which concerned claims for both intentional discrimination and racial gerrymandering, the District avoids the

racial gerrymandering section of the opinion and cites only to the introductory section and the section concerning the intentional discrimination claim. (*See* Mot. at 13, 19, 23.)   Indeed, it is clear that the *Abbott* Court only considered "discriminatory intent" in connection with the intentional discrimination claim. *Abbott*, 138 S. Ct. at 2325–30.

B.   "Cat's Paw" Liability and *Brnovich* Are Irrelevant to Plaintiffs' Claim

The District's assertion that Plaintiffs "assert a 'cat's paw' theory of liability" is misplaced. (Mot. at 15.)   The District offers this theory to support its flawed argument that the District's actions with regard to the drawing of the map are irrelevant either because either (i) the District did not "enact" the Map, or (ii) the District's actions cannot be attributed to the State. (Mot. 11-19.)

"Cat's paw" liability originated in employment discrimination cases and gets its namesake from a parable about a **monkey** tricking a **cat** to use its paw to grab chestnuts from a fire. *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021).   In *Brnovich*, plaintiffs brought an intentional discrimination claim asserting that a ballot-collection statute ("HB 2023"), which criminalized the collection of mail-in ballots, was "enacted with discriminatory intent" under *Arlington Heights*. *Id*. at 2335.   The Ninth Circuit found that the District Court erred by dismissing the claim because the lower court failed to apply a "cat's paw" theory"

of liability.  *Id*. at 2350.  Under the Ninth Circuit's theory, proponents of HB 2023 (*i.e.*, the **monkey**) stated publicly that the intent of the bill was to curb election fraud, when in fact the true intent was to discriminate against minority voters.  *Id.* at 2349. The legislators (*i.e.*, the **cat**) who voted for HB 2023 based on election fraud concerns were used to carry out the proponents' discriminatory intent.  *Id*. at 2335.

In *Brnovich*, the Supreme Court rejected the application of the cat's paw theory and held it was improper to ascribe the discriminatory intent of the bill proponents to the legislators.  *Id*. at 2350 ("'cat's paw' theory has no application to legislative bodies.").  Here, the District latches on to *Brnovich* to argue that somehow Plaintiffs have asserted an improper cat's paw theory of liability.  (Mot. at 15-19, 22).  In doing so, the District ignores that the conceit of the "cat's paw" argument concerns how to impute intent from a subordinate to a supervisor, a factor that is clearly not at issue in this litigation.

As demonstrated above at Section I(A), no showing of discriminatory intent is required for Plaintiffs' racial gerrymandering claim.  All that is required is a showing of racial predominance.  That element turns on whether the actual map-drawer(s) responsible for a challenged plan constructed a district where race overrode other considerations, not why various legislators voted for a plan.  *See Cooper*, 581 U.S. at 300–01 (examining whether consideration of race predominated

in designing the map, without analyzing discriminatory intent); *Davis v. Chiles*, 139 F.3d 1414, 1424 (11th Cir. 1998) (considering "direct evidence of a district-drawer's purpose" to assess if race predominated).  Thus, the District's repeated "cat's paw" argument has no application to this case.  The law does not require any showing that the map-drawer's conduct be attributed to the body that ultimately passes the map.[4] The District's argument, if adopted, would enable legislative bodies to insulate themselves from constitutional challenges by simply outsourcing all map-drawing to another actor and then ratifying that body's work, without any consideration of the process and criteria utilized in the actual drawing.  That result would be absurd, and neuter this entire body of law.

## II.   THE MOTION DOES NOT CHALLENGE PLAINTIFFS' ALLEGATIONS SHOWING RACIAL PREDOMINANCE

To establish a racial gerrymandering claim, Plaintiffs must show that race was the "predominant factor" motivating the redistricting decision in question.  *Miller*, 515 U.S. at 916.  The racial predominance inquiry is fact-intensive, *see*, *e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 552–54 (1999) (map designer's "motivation is itself a factual question"), and in practice such cases are rarely decided pre-trial.  The

---

[4] For this same reason—*i.e.*, that Plaintiffs' case is not about vicarious liability or the unlawful intent or actions of one entity being ascribed to another—the District's reliance on *Monell* is completely off base.  (Mot. 11-12.)

-15-

Complaint is sufficiently and plausibly alleges that race predominated in the drawing of the Map and therefore satisfies the requisite pleading standard. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 2022 WL 174525, at *3 (W.D. Tex. Jan. 18, 2022) ("*LULAC I*") ("Plaintiffs are not required to produce a 'smoking gun' . . . to make a plausible allegation.")

Plaintiffs can establish racial predominance through direct or circumstantial evidence. *Cooper*, 581 U.S. at 299–301; *Miller*, 515 U.S. at 916; *see also Bethune-Hill*, 580 U.S. at 188–89. As demonstrated below, the Complaint presents both types of evidence in excess of what is necessary to defeat the Motion. At this stage, it is sufficient for Plaintiffs to "nudge[] their claims across the line [of] plausibility." *League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 509 (W.D. Tex. May 23, 2022) ("*LULAC III*"). No discussion of whether the Map was narrowly tailored to serve a compelling state interest is required at the pleading stage. *See, e.g.*, *Petteway v. Galveston Cnty*, 2023 WL 2782705, at *24–*27 (S.D. Tex. Mar. 30, 2023) (motion to dismiss racial gerrymandering claim denied without discussing strict scrutiny). The District offers competing factual inferences, none of which are compelling, and which in any event should be rejected by the Court on a motion for judgment on the pleadings. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (reversing grant of motion for judgment on the pleadings, holding

"judgement on the pleadings must be denied" where there is a "material dispute of fact").

A.    Plaintiffs Adequately Allege Evidence of Race Predominance

Plaintiffs may establish that race was the predominant consideration in the redistricting with direct evidence of the "district-drawer's purpose." *Davis*, 139 F.3d at 1424; *Cooper*, 581 U.S. at 292 (finding legislators' statements were relevant, direct evidence).

As alleged in the Complaint, the majority white members of the Board of Education, as well as the map-drawer hired by the Board, and the sponsor of HB 1028, each stated that they used race to comply with the VRA, which was a key consideration in drawing the Map.  (*See, e.g.*, Compl. ¶¶ 11, 125.)  But, the Complaint further alleges that such purported compliance is nothing more than a pretext to pack the Challenged Districts with Black and Latinx voters in a manner "not justified by the VRA," so as to maintain the white majority on the Board.  (*Id*. ¶¶ 9, 147.)  These allegations are buttressed by specific allegations regarding the lack of analyses to support the purported attempt to comply with the VRA.  (*See, e.g.*, *id*. ¶¶ 121, 122).  *See Cooper*, 581 U.S. at 306 ("Although States enjoy leeway to take race-based actions reasonably judged necessary under a proper interpretation

of the VRA, . . . we [will not] approve a racial gerrymander whose necessity is supported by no evidence and whose *raison d'etre* is a legal mistake.").

Additionally, the Complaint alleges a great deal of circumstantial evidence supporting the inference that race was the predominant consideration in drawing the Map. *See id.* at 292 (to prove that race was the predominant factor in a redistricting decision, the plaintiff may rely on "circumstantial evidence of a district's shape and demographics"); *see also*, *LULAC I*, 2022 WL 174525, at *3 (considering circumstantial evidence including "recent history, departures from normal procedures, and legislative history").

*First*, the Complaint lays out that Cobb County's demographics changed significantly between the 2010 and 2020 census, with an increase in Black and Latinx populations and a decrease in the white population. (Compl. ¶¶ 52-53.) Cobb County's growing communities of color quickly impacted election outcomes in 2012, 2016, 2018, and 2020. (*Id.* ¶¶ 54-55.) In the 2020 election, the majority of white Board members slipped from 6-1 to 4-3. (*Id.* ¶ 56.) The white majority narrowly held on to District 7, and it was obvious that District 7 would be highly contested in the next election. (*Id.* ¶¶ 172-176.)

*Second*, the Complaint details the departure from historical practice in connection with the redistricting process, which was the very first redistricting cycle

in decades not overseen by the U.S. Department of Justice because of the Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013).  For example, the Board of Education considered a single bid by Taylor English instead of three, as was the past precedent (*id.* ¶¶ 97-98); the General Assembly evaluated redistricting decisions on a statewide basis instead of deferring to the local legislative delegation (*id.* ¶¶ 106-108, 111); and neither the Board nor the General Assembly sought input from the Black and Latinx constituents or legislators (*id.* ¶¶ 105, 112.)  Moreover, concerns raised during legislative debate about the packing of minority voters in the Challenged Districts beyond what the VRA required, the splitting of municipalities, and the disregard for communities of interest were completely ignored.  (*Id.* ¶¶ 136-39).  That type of evidence supports a racial gerrymandering claim.  Indeed, in *Jacksonville Branch of NAACP v. City of Jacksonville*, the Eleventh Circuit held that significant weight could be afforded to the fact that the map-drawing body "did not attempt to respond to public concerns about racial gerrymandering."  2022 WL 16754389, at *4 (11th Cir. Nov. 7, 2022) (citing *Cooper*,  581 U.S. at 291–92).

*Third*, the Complaint alleges how HB 1028 packs Cobb County's Black and Latinx voters into the three southern districts, while cracking Black and Latinx voters among the four northern districts, effectively diluting their overall voting power.  (*Id.* ¶¶ 156-170.)

The Complaint also alleges how the alterations in the Map shore up the Board's white majority, namely by preserving their hold on District 7.  (*Id*. ¶¶ 171-73.)  Specifically, the Map eliminates the eastward skew of District 6 and the western and southwestern areas of District 7.   In effect, the Challenged Districts track the north/south divide of Cobb County's white and Black/Latinx populations.   (*Id*.) Plaintiffs allege this was accomplished by rotating each of the districts clockwise around the hub of Marietta to concentrate the Black and Latinx population in the southern districts in the county, without any northward expansions along the spokes of the wheel to the east or west.  (*Id*. ¶¶ 174-77.)  The Complaint further alleges how the packing of District 3 can be observed in the splitting of Kennesaw between Districts 1 and 7 which effectively prevents Black voters from attaining a majority or near-majority in District 7.  (*Id*.).

Plaintiffs also allege that HB 1028 splits the municipalities of Smyrna and Kennesaw into different districts (*id.* ¶ 139) and otherwise divides communities of interest.  (*Id.* ¶¶ 137-39.)  The Complaint further alleges that the Plan "did not adhere to the Board's or Rep. Ehrhart's purported redistricting criteria and conflicted with the guidelines articulated by the LCRO."  (*Id.* ¶¶ 140-46.)  These changes were made despite the fact that the existing map, the 2012-enacted redistricting plan, met the

redistricting criteria available to the Board members without any dilutive effect on Black and Latinx voters. (*Id.* ¶ 4.)

The District's Motion does not refute or even address any of those allegations. The District's failure, on its own, is grounds to deny the District's Motion. *See Ga. Advoc. Off. v. Georgia*, 447 F. Supp. 3d 1311, 1317 n.2 (N.D. Ga. 2020) (finding "Defendants fail[ure] to address" certain allegations in their motion to dismiss, "provide[] another basis for denying Defendant's motion").

*South Carolina State Conference of the NAACP v. Alexander*, 2022 WL 453533, at *4 (D.S.C. Feb. 14, 2022) ("*Alexander*") is also instructive. There, plaintiffs brought a racial gerrymandering claim challenging redrawn South Carolina congressional districts. Plaintiffs alleged "district-by-district, circumstantial evidence" suggesting cracking and packing districts as well as procedural irregularities, much like the case here. *Id.* at *4. The South Carolina District Court denied defendants' motion to dismiss and found plaintiffs' allegations sufficient to "plausibly allege that race predominated the redistricting process in the challenged districts." *Id.* Here, the direct statements that compliance with the VRA was a primary goal, the failure to ever functionally analyze VRA compliance, the many procedural contortions, the rapidly-changing demographics of Cobb County, and the

clear cracking and packing of minority voters, all strongly support an inference that race predominated in designing the Map.

B.     The District Argues Competing Factual Inferences

The Court must accept the Complaint's allegations as true and construe all inferences in "the light most favorable" to Plaintiffs. *Ingram*, 2018 WL 7079179, at *4. Yet, the District asks the Court to accept its characterization of the events at issue as political "disputes," "disagreements," and "issues." (Mot. at 4, 5, 12, 16-17.) This effort should be rejected.

Defendants in *Alexander* argued the plaintiffs' racial gerrymandering case was a "veiled effort to raise non-justiciable allegations of partisan gerrymandering." *Alexander*, 2022 WL 453533 at *4. The court rejected that argument, holding defendants could defend the maps as a "race-neutral partisan gerrymander" at trial, but noting they cited "no authority for the proposition that the court can forcibly recharacterize the allegations of a plaintiff's complaint in ruling on a motion to dismiss." *Id.*; *see also Petteway*, 2023 WL 2782705, at *12 (motion to dismiss denied and rejecting defendants' assertion that at the pleading stage, plaintiffs needed to "rebut" the argument that "partisanship better explains voting behavior . . . than race.").

The District also offers a competing interpretation of Rep. Ehrhart's testimony about "minority opportunity voting districts" and VRA compliance.  (Mot. at 21-22.)  Defendant ignores that Plaintiffs' allegations must be accepted as true at this stage and the fact that "VRA compliance is a . . . not-always-successful defense to racial-gerrymandering claims."  *LULAC II*, 604 F. Supp. 3d at 510.

## III.   THE ACTION WAS BROUGHT AGAINST THE PROPER DEFENDANTS

The District spends the bulk of its Motion arguing that instead of suing the BOER Defendants, Plaintiffs should have named the State of Georgia the General Assembly, and/or the Governor as defendants.  (Mot. at 12-13, 15, 19-20, 24.)[5]  The District's position is contrary to controlling Eleventh Circuit precedent.

The BOER Defendants are the proper defendants because they implement and enforce the Map pursuant to O.C.G.A. § 21-2-70.  *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) (in civil rights actions, plaintiff's injuries are traceable to the local official imbued with the authority to implement the law); *see also Tyson v. Town of Homer*, 2021 WL 8893039, at *3 (N.D. Ga. July 2, 2021) (a

---

[5] If any of the aforementioned government bodies wished to join this suit, they could have.  Contrary to the District's accusation that Plaintiffs concealed this lawsuit (Mot. at 1, 24), Plaintiffs timely served a copy of the Complaint on the Office of the Attorney General pursuant to Fed. R. Civ. P. 5.1 to put the State of Georgia on notice of the suit.  (ECF No. 36, 41.)  The State took no action to intervene.

plaintiff may sue the "relevant boards of elections and registration" but may "*not* [sue] the General Assembly."  (citations omitted)).[6]

The District claims the State of Georgia is a proper defendant, yet does not cite any case law supporting its position.  (Mot. at 20, 24.)  The District is wrong because "[p]ursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment."  *Grizzle v. Kemp*, 634 F.3d 1314, 1919 (11th Cir. 2011) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, (2000)).  Congress has not abrogated state sovereign immunity in § 1983 cases.  *See Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1276–77 (N.D. Ga. 2019).  Further, while a recent amendment to the Georgia Constitution waived sovereign immunity for declaratory and equitable relief, the Eleventh Circuit has interpreted that waiver to only apply to actions in state court.  *See Crisp v. Georgia*, 2022 WL 3589673, at *3 (11th Cir. Aug. 23, 2022) ("the amendment [to Ga. Const. Art. I, § II, ¶ V] does not waive sovereign immunity or Eleventh Amendment

---

[6] Plaintiffs refer the Court to Plaintiffs' opposition to the BOER Defendant's Motion to Dismiss for a full analysis of these issues, and provide a brief summary herein. (ECF No. 44.)

immunity" where plaintiff brought suit in federal court rather than "state superior court"), *cert. denied*, 2023 WL 2959398 (Apr. 17, 2023).

Similarly, the District claims the General Assembly is a proper defendant without citing any supporting case law.  (Mot. at 1, 13, 19, 24.)  Again, the District's position is contrary to binding Eleventh Circuit precedent.  *See DeJulio v. Georgia*, 127 F. Supp. 2d 1274, 1293 (N.D. Ga. 2001) (holding that under Georgia state law or Rule 17(b) the "Georgia House of Representatives, Georgia State Senate," and "county House and Senate delegations cannot be sued"); *see also Tyson*, 2021 WL 8893039.

The District mentions Governor Brian Kemp's decision to sign HB 1028 into law quite frequently.  *See, e.g.*, Mot. at 12, 22.  To the extent the District suggests the Governor is a proper defendant, the District is wrong because neither the Governor (nor the Secretary of State)  implements and enforces the new map. *See Trump v. Kemp*, 511 F. Supp. 3d 1325 (N.D. Ga. 2021) (Secretary of State and Governor were improper defendants).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs have adequately alleged their racial gerrymandering claim.  The Motion therefore should be denied.

Respectfully submitted,

*/s/ Pichaya Poy Winichakul*

Bradley E. Heard (Ga. Bar No. 342209)
Pichaya Poy Winichakul (Ga. Bar No. 246858)
Michael Tafelski (Ga. Bar No. 507007)
Sabrina S. Khan*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
michael.tafelski@splcenter.org

Jeff Loperfido*
Christopher Shenton*
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
jeffloperfido@scsj.org
chrisshenton@scsj.org

Caitlin May (Ga. Bar No. 602081)
Cory Isaacson (Ga. Bar No. 983797)
Rahul Garabadu (Ga. Bar No. 553777)
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cmay@acluga.org
cisaacson@acluga.org
rgarabadu@acluga.org

-26-

Jon Greenbaum*
Ezra D.  Rosenberg*
Julie M.  Houk*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
sfgold@lawyerscommittee.org

Douglas I.  Koff*
Thomas L.  Mott*
Tara Lederer*
Paul Schochet*
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000
Douglas.Koff@srz.com
Thomas.Mott@srz.com
Tara.Lederer@srz.com
Paul.Schochet@srz.com


*Admitted Pro Hac Vice*

*Counsel for Plaintiffs Karen Finn, Dr.  Jillian
Ford, Hylah Daly, Jenne Dulcio, GALEO Latino
Community Development Fund, Inc., New Georgia
Project Action Fund, League of Women Voters of
Marietta-Cobb, and Georgia Coalition For The
People's Agenda, Inc.*

-27-

*/s/ Caren E.  Short*                   

Caren E.  Short (Ga Bar No.  990443)
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW, Suite 500
Washington, DC 20036
202-921-2219
cshort@lwv.org

*Counsel for Plaintiff League of Women Voters
Marietta-Cobb*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 28th day of April 2023.

*/s/ Pichaya Poy Winichakul*

Pichaya Poy Winichakul (Ga. Bar No. 246858)
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 28th day of April 2023, I electronically filed the foregoing document with the Court, using its electronic filing system, which will then send a notification of such filing to the counsel of record in this case.

<u>*/s/ Pichaya Poy Winichakul*</u>

Pichaya Poy Winichakul (Ga. Bar No. 246858)
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

-30-