# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

KAREN FINN, DR. JILLIAN FORD,
HYLAH DALY, JENNE DULCIO,
GALEO LATINO COMMUNITY
DEVELOPMENT FUND, INC.,
NEW GEORGIA PROJECT ACTION
FUND, LEAGUE OF WOMEN VOTERS
OF MARIETTA-COBB, and
GEORGIA COALITION FOR THE
PEOPLE'S AGENDA, INC.

       Plaintiffs

       -v-

COBB COUNTY BOARD OF
ELECTIONS AND REGISTRATION
and JANINE EVELER, in her official
capacity as Director of the Cobb County
Board of Elections and Registration, and
COBB COUNTY SCHOOL DISTRICT,

       Defendants.

Case No. 1:22-cv-2300-ELR

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT COBB COUNTY SCHOOL DISTRICT'S
<u>MOTION FOR SANCTIONS UNDER RULE 11</u>**

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................1

PROCEDURAL HISTORY..................................................................4

LEGAL STANDARD............................................................................6

ARGUMENT ........................................................................................8

     I.     THE DISTRICT DOES NOT MEET RULE 11'S STANDARDS ......9

     II.    CONTRARY TO THE DISTRICT'S REHASHED  MOTION,
           PLAINTIFFS HAVE STRONG, GOOD FAITH LEGAL AND
           FACTUAL BASES FOR THEIR CLAIMS ......................................13

           A.     The Motion Improperly Repeats Arguments on the Merits
                  That Are Still Pending Before the Court ..................................14

           B.     There Is a Strong Legal Basis for the Claims in the
                  Complaint..................................................................................16

                1.     The District Relies Upon Inapplicable  Case Law and
                        Legal Theories ............................................................17

                2.     Plaintiffs Named the Proper Defendants ......................19

           C.     There Is a Strong Factual Basis for the Claims in the
                    Complaint..................................................................................24

CONCLUSION....................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Anderson v. Smithfield Foods, Inc.*,
   353 F.3d 912 (11th Cir. 2003) .........................................................7, 8

*Baxter v. Roberts*,
   54 F.4th 1241 (11th Cir. 2022) ..........................................................18

*Black Voters Matter Fund v. Raffensperger*,
   478 F. Supp. 3d 1278 (N.D. Ga. 2020),
   *aff'd* 11 F.4th 1227 (11th Cir. 2021)..................................................22

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*,
   48 F.4th 1222 (11th Cir. 2022) ..........................................................18

*CompuCredit Holdings Corp. v. Akanthos Cap. Mgmt., LLC*,
   2012 WL 13008322 (N.D. Ga. Feb. 24, 2012) .....................................7

*Cooper v. Harris*,
   581 U.S. 285 (2017) (Alito, J. concurring)..............................9, 10, 11

*Donaldson v. Clark*,
   819 F.2d 1551 (11th Cir. 1987) ...................................................14, 15

*Ga. Assoc.of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of
   Registration & Elections*,
   36 F.4th 1100 (11th Cir. 2022) ..........................................................22

*Ga. Republican Party, Inc. v. Sec'y of State for Ga.*,
   2020 WL 7488181 (11th Cir. Dec. 21, 2020).....................................22

*United States ex rel. Heller v. Guardian Pharmacy, LLC*,
   521 F. Supp. 3d 1254 (N.D. Ga. 2021)...............................................25

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236 (11th Cir. 2020) ...................................................20, 21

*Jelencovich v. Dodge Enters., Inc.*,
   2010 WL 289300 (S.D. Fla. Jan. 12, 2010)..................................13, 15

*Jones v. Int'l Riding Helmets, Ltd.*
  145 F.R.D. 120 (N.D. Ga. 1992),
  *aff'd.*, 49 F.3d 692 (11th Cir. 1995) ..................................................................24

*Kemper v. Equity Ins. Co.*,
  2021 WL 3667023 (N.D. Ga. Aug. 18, 2021) .....................................................6

*In re Kunstler*,
  914 F.2d 505 (4th Cir. 1990) ............................................................................11

*Lechter v. Aprio, LLP*,
  2022 WL 3453349 (N.D. Ga. Aug. 17, 2022) ......................................................7

*McMahan Sec. Co. L.P. v. FB Foods, Inc.*,
  2006 WL 2092643 (M.D. Fla. July 27, 2006) ..................................................7, 8

*Mike Outlay Prods., Inc. v. WJBF-TV*
  952 F.2d 380 (11th Cir. 1992) ...........................................................................24

*Miller v. RelationServe, Inc.*,
  2006 WL 5849318 (S.D. Fla. Dec. 1, 2006).........................................................7

*Modtruss, Inc. v. Battlefrog, LLC*,
  2017 WL 4865458 (N.D. Ga. Mar. 27, 2017) (Ross, J.) ....................................16

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
  436 U.S. 658 (1978)......................................................................................18, 19

*Mouzin Bros. Farms, LLC v. Dowdy*,
  2022 WL 16841583 (M.D. Ga. Nov. 9, 2022) ........................................14, 15, 16

*Nesmith v. Martin Marietta Aerospace*,
  833 F.2d 1489 (11th Cir. 1987) .................................................................9, 12, 13

*Peer v. Lewis*,
  606 F.3d 1306 (11th Cir. 2010),
  *aff'd* 571 F. App'x 840 (11th Cir. 2014) ..............................................................3

*Pelletier v. Zweifel*,
  921 F.2d 1465 (11th Cir. 1991) .........................................................................12

*Perkins-Carrillo v. Systemax, Inc.*,
  2005 WL 8154374 (N.D. Ga. Nov. 2, 2005) ................................................14, 15

*Rose v. Raffensperger*,
  511 F. Supp. 3d 1340 (N.D. Ga. 2021)..............................................................22

*SavaSeniorCare, LLC v. Starr Indem. & Liab. Co*.,
  2021 WL 4429088 (N.D. Ga. Sept. 27, 2021)......................................................7

*Scott v. Dekalb Cnty. Bd. of Elections & Voter Registration*,
  2005 WL 8155742 (N.D. Ga. Aug. 5, 2005),
  *aff'd* 470 F.3d 1014 (11th Cir. 2006)..................................................................23

*Shaw v. Reno*,
  509 U.S. 630 (1993)..................................................................13, 17, 18

*Souran v. Travelers Ins. Co.*,
  982 F.2d 1497 (11th Cir. 1993) ..........................................................................25

*Sussman v. Bank of Israel*,
  56 F.3d 450 (2d Cir. 1995) ................................................................................11

*Tantaros v. Fox News Network LLC*,
  2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018)....................................................10

*Thomas v. Evans*,
  880 F.2d 1235 (11th Cir. 1989) .........................................................................13

*Trident Holdings, LLC v. Great Wraps, Inc*.,
  2010 WL 11509144 (N.D. Ga. Sept. 22, 2010)....................................................6

*Trump v. Kemp*,
  511 F. Supp. 3d 1325 (N.D. Ga. 2021)..............................................................22

*Walker v. Hallmark Bank & Tr., LTD.*,
  2010 WL 3257993 (S.D. Fla. Aug. 17, 2010) ..............................................13, 18

*Whitest v. Crisp Cnty. Ga. Bd. of Educ.*,
  2021 WL 4483802 (M.D. Ga. Aug. 20, 2021) ....................................................20

*Wise v. Lipscomb*,
    437 U.S. 535 (1978)....................................................................................20

*Wright v. Sumter Cnty. Bd. of Elections & Registration*,
    301 F. Supp. 3d 1297 (M.D. Ga. 2018),
    *aff'd* 979 F.3d 1282 (11th Cir. 2020)...................................................23

## Rules & Statutes

Fed. R. Civ. P. 11 .........................................................................*passim*

Fed. R. Civ. P. 11(b)(1).................................................................9

Fed. R. Civ. P. 12(c)........................................................................*passim*

O.C.G.A. § 21-2-70 (2011) ...........................................................20

## PRELIMINARY STATEMENT

The Rule 11 motion brought by the Intervenor-Defendant Cobb County School District ("District") is misplaced and improper.  It is predicated on unsubstantiated theories about the motivations of Plaintiffs' counsel and legal arguments that completely disregard the allegations in the case and the path the District took to join it.  As demonstrated below, Plaintiffs have a good faith basis for their claim that race unconstitutionally predominated the redrawing of the Cobb County Board of Education voting districts.  The District's motion should be summarily denied.

As the Court is aware, the District *insisted on becoming* a defendant to the action by moving to intervene.  Now that it is a defendant, ironically, the District seeks Rule 11 sanctions against Plaintiffs based on the theory that the District should not in fact be a defendant.  Leaving aside the legal issue of who is a proper defendant in this action, Plaintiffs have repeatedly offered to let the District withdraw from the action so long as it continued to participate in discovery.  Under those circumstances, the Rule 11 motion ("Motion" or "Mot.") is puzzling because the District made itself a defendant, not as a result of any actions initiated by Plaintiffs.

Importantly, although much of the Motion is devoted to argument about who is a proper defendant in this case, that issue is presently pending before this Court

on two separate motions (*see* Dkt. 43 and Dkt. 83), and the District's attempt to argue the substance of those motions through yet another motion (this time for sanctions) is unnecessarily burdensome.  While Plaintiffs are confident that the law is settled as to the propriety of suing those charged with implementing a redistricting plan, even if Plaintiffs are wrong (which they are not), there is a legitimate dispute of law on the issue.  This is hardly the stuff that Rule 11 motions are made of.

The District also baselessly asserts that Plaintiffs should be sanctioned because the District wrongly claims that Plaintiffs' true purpose in bringing the action was to score partisan political points, as opposed to their stated purpose of combating the improper use of race in the redistricting process.  (*See* Mot. at 2, 12.) Nothing could be further from the truth.  The District cites to only one document to support its unfounded allegations:  a single, uncontroversial press release that simply announced the commencement of the action and which did not contain any hint of partisan endorsement.  The District also claims that certain factual allegations in the amended complaint ("Complaint" or "Compl.") are "scurrilous" attacks, but ignores that the source of Plaintiffs' allegations is public statements by members of the Board of Education and state legislators in the General Assembly.

Plaintiffs' counsel in this case are some of the most prominent and respected public interest organizations in the country, all of whom have substantial experience

and expertise challenging the legality of redistricting maps and have achieved significant success nationwide in challenging racially motivated redistricting schemes that disadvantage minority populations. They, together with their *pro bono* counsel, carefully investigated the facts of the case and the controlling case law before filing the Complaint. The Complaint is a product of that good faith investigation. Plaintiffs and their counsel had a good faith basis to include all of the factual allegations in the Complaint, including those relating to the mounting tensions among the Board members on issues pertaining to race, which serve to contextualize the racial issues in Cobb County and support the fundamental claim of the Complaint that race predominated the redistricting process. In any event, whether those facts support a claim of racial gerrymandering will be determined on the merits, not by way of a Rule 11 motion.

Rule 11 is meant "to deter baseless filings and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010), *aff'd* 571 F. App'x 840 (11th Cir. 2014).[1] The District's Motion corrupts that purpose, wastes this Court's time, and should be denied.

---

[1] Unless otherwise noted, internal quotations and citations have been omitted.

## **PROCEDURAL HISTORY**

Plaintiffs commenced this action on June 9, 2022 against the Cobb County Board of Elections and Registration ("BOER") and Cobb County's Elections Director, Janine Eveler (with the BOER, the "BOER Defendants"). Plaintiffs filed their Complaint on August 19, 2022. (Dkt. 37.) The BOER Defendants moved to dismiss the Complaint on September 9, 2022 ("Motion to Dismiss") (Dkt. 43) on the basis that the BOER Defendants were not proper parties. Plaintiffs filed their opposition to the Motion to Dismiss on September 23, 2022 (Dkt. 44), and the BOER Defendants filed a reply in support of their motion on October 7, 2022 (Dkt. 47.) That motion is *sub judice* and scheduled to be argued on June 22, 2023.

The District moved to intervene six months after the case commenced on the basis that it was a "proper defendant." (Dkt. 52-1 at 4.) The District's intervention motion made it clear that the District considered itself crucial to the resolution of Plaintiffs' case:

- "[T]he District [] and the State are the ***proper defendants*** who have the requisite interest in defending against Plaintiffs' factual allegations and legal claims." *Id.* at 4 (emphasis added).

- "The District seeks to intervene to protect its interests in ***defending the redistricted map***. . . ." *Id.* at 5 (emphasis added).

- "[T]he District satisfies the requirements for both intervention ***as of right*** and permissively. . . ." *Id.* at 6 (emphasis added).

-4-

Four months later, the District changed course and argued that it was not a proper defendant as a basis for moving for judgment on the pleadings ("Rule 12(c) Motion") (Dkt. 83.)  Specifically, the District asserted that "the Board of Education's actions are irrelevant," that there could be "no theory of liability against the District," and that Plaintiffs "should have sued the State" as it is the "only party from whom relief could be obtained."  (Id. at 14, 20, 24.)  Plaintiffs filed their opposition to the Rule 12(c) Motion on April 28, 2023 (Dkt. 93), and the District filed its reply in support of the Rule 12(c) Motion on May 12, 2023 ("Rule 12(c) Reply") (Dkt. 98.)

Soon after filing the Rule 12(c) Motion (but before waiting for Plaintiffs' opposition papers which make manifest the legal basis for Plaintiffs' claims), the District sent Plaintiffs a letter with a proposed Rule 11 sanctions motion which repeated several arguments from the 12(c) Motion.  Plaintiffs responded with a letter and offered to discuss the potential for the District to withdraw from the action while still participating in discovery ("Sanctions Response Letter," attached as Ex. A to the Declaration of Pichaya Poy Winichakul ("Winichakul Decl.")).  After multiple requests from Plaintiffs, the District agreed to meet and confer on April 27, 2023. Plaintiffs again offered to permit the District to withdraw from the case—despite the fact that the District had affirmatively inserted itself into this litigation by way of intervention—so long as the District would still be subject to discovery.  (Ex. B,

Winichakul Decl.).  The District declined that offer and filed the instant Motion on April 29, 2023, only a few hours before Plaintiffs filed their opposition to the District's Rule 12(c) Motion.  Plaintiffs maintain that they will consent to the District withdrawing from the case, so long as that withdrawal neither impedes nor delays Plaintiffs' discovery, especially in light of the fast-approaching 2024 elections. [2]

## **LEGAL STANDARD**

Sanctions are an "extraordinary remedy" and are "to be exercised with extreme caution."  *Kemper v. Equity Ins. Co.*, 2021 WL 3667023, at *8 n.2 (N.D. Ga. Aug. 18, 2021); *see also Trident Holdings, LLC v. Great Wraps, Inc*., 2010 WL 11509144, at *2 (N.D. Ga. Sept. 22, 2010) (courts should "exercise[] restraint and discretion in ruling on a motion for sanctions").

A Court may only impose sanctions under Rule 11 under the following circumstances:  (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change

---

[2] It is important to note that the District has served subpoenas on each of the legal organizations serving as Plaintiffs' litigation counsel (except for the *pro bono* law firm), seeking voluminous records—including the entire litigation files of each of the organizational counsel relating to this case.  After organizational counsel objected to the subpoenas, and in one instance, filed a motion to quash, the District withdrew the subpoenas.  The District has now reissued new subpoenas, one of which is already the subject of a motion to quash.

existing law; or (3) when a party files a pleading in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003).  Further, all doubts as to whether Rule 11 has been violated are to be resolved "in favor of the signer of the [challenged] paper," and the District carries the burden of proof in moving for sanctions.  *McMahan Sec. Co. L.P. v. FB Foods, Inc*., 2006 WL 2092643, at *2 (M.D. Fla. July 27, 2006); *see also Miller v. RelationServe, Inc.*, 2006 WL 5849318, at *9 (S.D. Fla. Dec. 1, 2006) (same).

There are two factors to consider in assessing sanctions motions:  "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous."  *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co*., 2021 WL 4429088, at *16 (N.D. Ga. Sept. 27, 2021); *see also Lechter v. Aprio, LLP*, 2022 WL 3453349, at *5 (N.D. Ga. Aug. 17, 2022) ("[r]easonableness under the circumstances" is the test).  "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law." *CompuCredit Holdings Corp. v. Akanthos Cap. Mgmt., LLC*, 2012 WL 13008322, at *1 (N.D. Ga. Feb. 24, 2012).  "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Id*.

## **ARGUMENT**

To prevail on this Motion, the District bears the burden of establishing either that Plaintiffs: (i) acted in bad faith for improper purposes; or (ii) failed to conduct a reasonable inquiry before filing the Complaint, and that their claims are "objectively frivolous," and they knew or should have known they were frivolous after a reasonable inquiry.  *See Anderson*, 353 F.3d at 915; *McMahan Sec. Co. L.P.*, 2006 WL 2092643, at *2.  The Motion fails on both fronts.

*First*, the District completely fails to establish that Plaintiffs acted in bad faith for improper purposes.  In accusing Plaintiffs of attempting to use the courts to "score political points" instead of to litigate a genuine justiciable dispute, the District points to only two purported bases to support its improper purpose argument:  (i) a single press release about the commencement of the action; and (ii) the inclusion of certain allegations in the Complaint meant to contextualize the racial issues in Cobb County as well as the rising tensions among the Board members.  Neither of these bases, standing alone or together, could possibly support a finding of bad faith.

*Second*, the District rehashes the merits of the dispositive motions pending before the Court concerning the issue of proper parties.  Plaintiffs have demonstrated in prior briefing that they have sound legal and factual bases for the allegations and claims asserted in the Complaint.  (*See generally* Dkts. 44 and 93.)  For present

purposes, at most, the District argues a legal issue—still to be decided by this Court—and nowhere demonstrates that Plaintiffs' legal argument is frivolous so as to constitute a position assumed in bad faith.

## I.   THE DISTRICT DOES NOT MEET RULE 11'S STANDARDS

A party seeking Rule 11 sanctions under a theory that a claim was brought for an "improper purpose" must show that the claim was brought "in bad faith" "for any purpose other than to receive what [the plaintiff] thought [it] was entitled to under the law." *Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987); *see also* Fed. R. Civ. P. 11(b)(1) (an "improper purpose" is one intended to "harass, cause unnecessary delay, or needlessly increase the cost of litigation"). The District falls far short of that high burden.

Without any factual basis, the District accuses Plaintiffs of using this litigation for an improper purpose by purportedly "politically weaponizing the judiciary." (Mot. at 12.)  Similarly, although referring generally to "the role of the judiciary in our constitutional order" and the abundance of "doctrinal precedents, rules and norms [under] American law" (*id.*), the District fails to cite a single case supporting its theory that politics amount to an improper purpose for sanctions.[3]

_____

[3] At most, the District cites *dicta* from Justice Alito's concurring opinion in *Cooper v. Harris* concerning "losers in the redistricting process" misusing the judicial system.  (Mot. at 2 n.2 (citing *Cooper v. Harris*, 581 U.S. 285, 334–35 (2017) (Alito,

The District goes on to allege, also without factual support, that Plaintiffs "made a calculated and strategic decision" not to name the District as a defendant so that as a non-party, the District "could not respond to the false and inflammatory allegations of racism hurled against the Republican members of the Board."  (*Id.*)  Leaving aside the sound reasons, set forth below and in the Rule 12(c) opposition, why Plaintiffs sued whom they did, in essence, the District bases its Rule 11 Motion on the fact that Plaintiffs did ***not*** sue the District.

The District also highlights that "Plaintiffs issued at least one press release to publicize their lawsuit." (Mot. at 12.)  But nothing in the press release suggests any improper purpose in the bringing of this suit.  The press release simply summarizes the facts of the case as publicly alleged in the Complaint:  that the District used race to manipulate voting districts, and the District has a recent history of policy changes negatively impacting Cobb's communities of color.  (Dkt. 92-2 at 1-3.)

None of this comes close to showing an "improper purpose."  *See Tantaros v. Fox News Network LLC*, 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018)

---

J. concurring)).)  The District takes this statement out of context to extrapolate an improper purpose not at issue in *Cooper*.  In fact, the majority in *Cooper* upheld the finding that race—not politics—was the predominant factor in drawing the challenged districts.  *See generally, id.* at 299–317.  Like the plaintiffs in *Cooper*, Plaintiffs in this case have plausibly pled race-based redistricting based on direct and circumstantial evidence.  (*See infra*, at 24 n.8.)

("[F]iling and publicizing a lawsuit . . . does not, by itself, suggest that a case was brought for an improper purpose."). Even if the press release were somehow improper—which it is not—it could not be the basis for a Rule 11 motion. *See In re Kunstler*, 914 F.2d 505, 525 (4th Cir. 1990) (reversing an award of sanctions for publication of baseless claims because Rule 11 "does not reach conduct outside of the judicial process"). Indeed, "steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).

Finally, the District argues that "Plaintiffs' allegations that the Board took various actions because of race are in reality complaints about the outcome of political disagreements." (Mot. at 13.) In so arguing, the District spotlights Plaintiffs' allegations about the Board renaming Wheeler High School, banning Critical Race Theory and the 1619 Projection, and refusing to take additional steps in response to the COVID-19 pandemic. (*Id.*) Nowhere does the District question the veracity of the allegations. Rather, the District merely sets forth its own interpretation of their relevance. That is not a sound basis for a Rule 11 motion.

Additionally, and critically, those allegations—all of which concern the white majority Board members silencing the Black members—are circumstantial evidence of race predominance. *See Cooper v. Harris*, 581 U.S. 285, 291 (2017) (race

-11-

predominance can be shown through "circumstantial evidence"); *see also* Dkt. 93 at 18-21.  In any case, whether Plaintiffs' allegations "are in reality complaints about the outcome of political disagreements" is a question of fact to be settled in a motion for summary judgment or at trial.  As established below, *see infra* Part II(C), a Rule 11 motion is an inappropriate vehicle to resolve such factual disagreements.

The District cites only one case that actually addresses the "improper purpose" prong of sanctions analysis, and that case is inapposite.  In *Pelletier v. Zweifel*, the Eleventh Circuit affirmed sanctions where "the only reason" the plaintiff had for raising "absolutely baseless" allegations—including allegations that the defendant had conspired to engage in racketeering activities—was "to bring about a quick settlement."  921 F.2d 1465, 1515 (11th Cir. 1991).  *Pelletier* does not apply to these facts.  The District does not argue that the allegations of the Complaint lack any basis in fact.  Moreover, Plaintiffs had a sound legal basis to sue the BOER Defendants, as explained in response to the Rule 12(c) Motion.  (Dkt. 93 at 23-24.)

In short, the proper purpose of Plaintiffs' case is clear:  to challenge the Map as an unconstitutional racial gerrymander.  Plaintiffs support that claim with well-pled allegations that race was the predominant factor in drawing the Challenged Districts.  *See infra* Part II(C).  Therefore, applying *Nesmith*, Plaintiffs' true purpose is to obtain the relief requested—*i.e.*, to enjoin Districts 2, 3, and 6 as "racial

gerrymanders" and "[s]et a reasonable deadline for State authorities to adopt and enact a new constitutionally compliant redistricting plan" (Compl. ¶ 183)—and thus no sanctions are called for with respect to purpose. *Nesmith*, 833 F.2d at 1491; *see also Shaw v. Reno*, 509 U.S. 630, 652 (1993). Instead of litigating a meritless sanctions motion, the parties should carry on with discovery and proceed to litigating the underlying dispute. Plaintiffs look forward to proving their case on the merits.

## II.   CONTRARY TO THE DISTRICT'S REHASHED MOTION, PLAINTIFFS HAVE STRONG, GOOD FAITH LEGAL AND FACTUAL BASES FOR THEIR CLAIMS

Even if this Court were to rule against Plaintiffs on the District's Rule 12(c) Motion on the basis that Plaintiffs failed to include the General Assembly or the State (which we submit it should not), that would in no way mean Plaintiffs' case was frivolous, let alone serve as a basis for Rule 11 sanctions. *See Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 sanctions are not appropriate, however, merely because the pleader's view of the law is incorrect."); *Jelencovich v. Dodge Enters., Inc.*, 2010 WL 289300 (S.D. Fla. Jan. 12, 2010) ("While the Court ultimately disagreed with Plaintiff's legal theory, this alone cannot form a basis for sanctions under [] Rule 11."); *Walker v. Hallmark Bank & Tr., LTD.*, 2010 WL 3257993, at *5 (S.D. Fla. Aug. 17, 2010) (similar).

That in itself is sufficient to dispose of the District's Rule 11 motion. Unfortunately, because the District has repeated and rehashed the legal and factual arguments already raised in the District's Rule 12(c) Motion—which this Court is already scheduled to hear next month—Plaintiffs briefly summarize herein their arguments in response to the District's Rule 12(c) Motion.

A. The Motion Improperly Repeats Arguments on the Merits
That Are Still Pending Before the Court

At the outset, the Motion is improper on its face because it presents arguments already pending before the Court that will need to be decided before any sanctions motion could even be considered, let alone imposed. *Mouzin Bros. Farms, LLC v. Dowdy*, 2022 WL 16841583, at *1 (M.D. Ga. Nov. 9, 2022) (sanctions "premature" because motion was filed before resolution of dispositive motion); *see also Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (sanctions are typically determined at the end of the litigation); *Perkins-Carrillo v. Systemax, Inc.*, 2005 WL 8154374, at *2 (N.D. Ga. Nov. 2, 2005) (similar).

Allowing courts to decide dispositive motions *before* making any sanctions motions stemming therefrom makes procedural sense, as was recently made clear in *Mouzin Brothers*. In that case, the defendants filed a Rule 11 motion arguing that the plaintiff knew its claims were "false or frivolous" after the parties had fully briefed summary judgment motions but before the court decided those motions. 2022

-14-

WL 16841583, at *1 (M.D. Ga. Nov. 9, 2022).  The court denied the defendants' Rule 11 motion as "premature."  *Id.*

As did the defendants in *Mouzin Brothers*, the District here moved for sanctions with its Rule 12(c) Motion still pending, and worse, with an oral argument to address that motion already scheduled on the Court's docket.  Given that the instant Motion is based on the District's assertion that the entire action is frivolous, sanctions could only be granted—if at all—if the District is first successful on its Rule 12(c) Motion (which it will not be).  *See supra* at 14 (citing *Mouzin Brothers*, *Donaldson*, *Perkins-Carrillo*).  Indeed, while the granting of the District's 12(c) Motion is clearly a prerequisite for the imposition of sanctions, that outcome alone is not sufficient to rise to the level of sanctionable conduct.  *See Jelencovich*, 2010 WL 289300, at *1 (denying sanctions after dismissing the action, noting "[w]hile the Court ultimately disagreed with Plaintiff's legal theory, this alone cannot form a basis for sanctions under [] Rule 11").

Under these circumstances, being forced to respond to the Motion is wasting Plaintiffs' and the Court's resources, multiplying these proceedings, and distracting the parties and the Court from reaching the merits of the claims asserted here. Plaintiffs submit that the parties should be focused on discovery and the merits of

this litigation instead of dealing with the District's improperly duplicative Motion, which is a direct result of the District's volitional act of intervening in this litigation.

Quite apart from the fundamental failure of the Motion being premature, the instant Motion is basically a cut and paste of the District's Rule 12(c) Motion. As this Court has recognized, Rule 11 motions "should not be used as a substitute for a dispositive motion," let alone a duplicative one. *Modtruss, Inc. v. Battlefrog, LLC*, 2017 WL 4865458, at *7 (N.D. Ga. Mar. 27, 2017) (Ross, J.) (denying sanctions where parties "largely re-argu[ed] the merits of [the] motion to dismiss"); *see also Mouzin Bros. Farms*, 2022 WL 16841583, at *1 (denying the sanctions because party based its Rule 11 motion on the "same general basis" for the pending summary judgment motion). As set forth herein in Part II(B)(1) and (2), the District repeats many of the legal arguments already before the Court in connection with the Rule 12(c) Motion. Plaintiffs refer the Court to their arguments in response to the District's Rule 12(c) Motion (Dkt. 93), which are briefly summarized herein.

B. <u>There Is a Strong Legal Basis for the Claims in the Complaint</u>

The District claims that there is a "wholesale absence of legal grounds to support Plaintiffs' claim in this case." (Mot. at 1.) For all the reasons set forth in Plaintiffs' Rule 12(c) opposition, the District is wrong. In fact, it is the District— not Plaintiffs—who ignore well-established, controlling case law, despite the fact

that Plaintiffs have cited that case law throughout these proceedings.

1.    *The District Relies Upon Inapplicable
Case Law and Legal Theories*

As Plaintiffs' Rule 12(c) opposition established, the District repeatedly conflates the discriminatory intent standard that governs intentional discrimination claims and the racial predominance standard that governs the racial gerrymandering claim at issue in this action. (*See* Dkt. 93 at 9-15; Dkt. 83 at 13-14, 20.) Because the District chose to rush into court with this Motion without bothering to wait for Plaintiffs' responsive 12(c) briefing, the District's Motion repeats that same mistake here. The District's Rule 12(c) Reply actually triples down on that mistake and argues for the third time that Plaintiffs' claim "[r]equires [p]roof of [d]iscriminatory [i]ntent." (Dkt. 98 at 2.) No matter how many times the District makes that same argument, the District is still wrong.

The Rule 12(c) Reply cites to a few racial gerrymandering cases that refer to the "intent," "purpose," or "motivation" behind the voting maps at issue in those cases (*id.* at 3, 4, 6) but fails to recognize that none of those cases require a showing of the intent *to discriminate* in order to make out a racial gerrymandering claim. Additionally, as established in Plaintiffs' Rule 12(c) opposition, while intent is a relevant factor in racial gerrymandering cases, the focus remains on the two-step analysis set forth in the *Shaw* line of cases. (Dkt. 93 at 10). Either way, differing

-17-

interpretations of controlling case law cannot constitute grounds for Rule 11 sanctions. *See Walker*, 2010 WL 3257993, at *5 ("disagreement with Plaintiff's legal theory alone" insufficient for sanctions).

The Motion also repeats the District's 12(c) argument that the District is not a proper defendant because it was not the "moving force" behind the Map, citing to *Monell*, *City of Canton*, and *Chabad Chayil*. (*Compare* Dkt. 83 at 12, *with* Dkt. 92 at 15.) Those cases are inapposite as they concern § 1983 claims brought against a municipality where the municipality's "policy or custom" caused the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 661 (1978) (challenging a municipality's maternity leave policy); *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1222 (11th Cir. 2022) (challenging a municipality's policy barring plaintiff organization from using public school facilities for its programming); *see also Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (challenging a municipality's "deliberate[] indifferen[ce]" to a "pattern of unlawful traffic stops"). Critically, *Monell* and its progeny are not meant to encompass "the full contours of municipal liability under § 1983." *Monell*, 436 U.S. at 695. For claims brought specifically challenging racial gerrymandering, for instance, the *Shaw* line of cases governs, as those cases more directly apply to the specific facts at issue in that legal context. Plaintiffs are aware of no case—nor have

Defendant's cited to one—applying *Monell* to racial gerrymandering claims. Indeed, the District abandoned its reliance on *Monell* in its Rule 12(c) Reply.

The District also repeats its Rule 12(c) argument that the Complaint improperly asserts a "cat's paw" theory of liability.  (*Compare* Dkt. 83 at 16, *with* Dkt. 92 at 18; *compare* Dkt. 83 at 17-18, *with* Dkt. 92 at 22-23.)  As Plaintiffs established in response to the Rule 12(c) Motion (Dkt. 93 at 13-15), the District's argument is misplaced.  Briefly, "cat's paw" turns on imputing intent from a subordinate to a supervisor.  In this case, there is no inferior-superior relationship between the Board and the General Assembly for the "cat's paw" theory to apply. Nonetheless, the District insists that any inquiry into the motivations of the Board— the actual and undisputed drawer of the Challenged Districts—would turn the General Assembly into an unwitting "cat's paw."  As Plaintiffs set out in their Rule 12(c) opposition, to accept the District's argument would allow legislatures to completely insulate themselves from racial gerrymandering claims by outsourcing all map-drawing, and produce absurd results.  (Dkt. 93 at 15.)

## 2.  *Plaintiffs Named the Proper Defendants*

The District also repeats its Rule 12(c) argument that Plaintiffs erred by suing the BOER Defendants and the District when they should have sued the State of Georgia or the General Assembly.  (*Compare* Dkt. 92 at 14-15, *with* Dkt. 83 at 14-

-19-

15, 20.)  As before, the District ignores controlling case law that demonstrates that (i) electoral supervisors like the BOER Defendants are proper defendants in voting rights cases, and (ii) neither the State of Georgia nor the General Assembly would be proper defendants here.

Under *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020), Plaintiffs named the enforcement entity against whom relief can be granted: here, that is the BOER Defendants.  Pursuant to O.C.G.A. § 21-2-70, the BOER Defendants are responsible for implementing and enforcing the Map.  (*See* Dkt. 44 at 4, 5, 6 n.1; *see also* Dkt. 92 at 23-25.)  The relief Plaintiffs seek is declaratory and injunctive relief against enforcing the Map.  (Compl. ¶ 183.)  Neither the State of Georgia nor the General Assembly are charged with enforcing the Map.  Thus, if Plaintiffs were to sue the State and the legislature, but not the BOER Defendants, they would risk ultimately being unable to obtain the relief sought.[4]

---

[4] Contrary to the District's argument in its Rule 12(c) Reply (*see* Dkt. 98 at 13), it is common practice in election cases for the plaintiff to ask the Court to invalidate the existing map and "afford a reasonable opportunity for the legislature to . . . adopt [] a substitute measure."  *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978).  Plaintiffs' Prayer for Relief does just that, asking the Court to declare the Map an unconstitutional racial gerrymander (Compl. ¶ 183(a)), and then to "[s]et a reasonable deadline for State authorities to adopt and enact" a new map.  (*Id*. at ¶ 183(c).)  Once the Map is declared invalid, defendants and the General Assembly are able to participate in designing a substitute map.  *See, e.g.*, *Whitest v. Crisp Cnty. Ga. Bd. of Educ.*, 2021 WL 4483802, at *6 (M.D. Ga. Aug. 20, 2021) (ordering defendants school board and county election officials to confer with nonparty

In *Jacobson v. Florida Secretary of State*, plaintiffs sued the Secretary of State to challenge a statute regarding the order in which candidates should appear on the ballot.  974 F.3d 1236, 1241 (11th Cir. 2020).  Following a bench trial, the District Court enjoined the Secretary of State from implementing the statute.  *Id*. at 1244. On appeal, the Eleventh Circuit vacated the judgment and held that plaintiffs did not have standing against the Secretary of State because it was not responsible for "determining the order in which candidates appear on ballots" and therefore did not cause plaintiffs' injury.  *Id*. at 1253.  Rather, the county election supervisors were the proper defendants because they were "tasked [by Florida law] with printing the names of candidates on ballots in the order prescribed by the ballot statute."  *Id*.[5]

*Jacobson* is just one example of the common practice for voting rights actions in this jurisdiction to be brought against the governmental entities or officials who are actually tasked with enforcing the voting laws at issue.  When the alleged

_____

"legislative delegation to determine whether the General Assembly" could resolve issues with the map before the election so the Court could then determine "whether and, if so, how long, to give the General Assembly to devise a lawful remedy subject to pre-implementation review by the Court.").

[5] In its Rule 12(c) Reply, the District flips *Jacobson* on its head, asserting that the case precludes Plaintiffs from seeking redress from the election officials specifically authorized to enforce the Map, when in fact the case stands for the opposite.  (*See* Dkt. 98 at 12-13.)  And again, differing interpretations of controlling case law is not a recognized ground for Rule 11 sanctions.  *See supra* at 17.

unlawful redistricting is to be administered at the county level, county-level administrators are the proper defendants; when the case concerns violations at the state level, state-level officials will be. *See Ga. Republican Party, Inc. v. Sec'y of State for Ga.*, 2020 WL 7488181, at *2 (11th Cir. Dec. 21, 2020) ("local supervisors" of election were proper defendants); *Ga. Assoc. of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1116 (11th Cir. 2022) (Board of Registration & Elections was proper defendant); *Trump v. Kemp*, 511 F. Supp. 3d 1325, 1331–33 (N.D. Ga. 2021) (county election officials were proper defendants); *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1305–06 (N.D. Ga. 2020) (Secretary of State was proper defendant responsible for transmission of ballots in *statewide* elections), *aff'd* 11 F.4th 1227 (11th Cir. 2021); *Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1356 (N.D. Ga. 2021) (same).[6]

In light of that controlling case law, it should come as no surprise that voting rights actions like this one are typically brought against "neutral" entities such as the BOER Defendants. (*See* Dkt. 44 at 11-1.) The fact that the Complaint includes

---

[6] The District's Rule 12(c) Reply cites several cases—and attaches as exhibits the corresponding complaints from those matters—where voting-rights plaintiffs named the Secretary of State as a defendant. (*See* Dkt. 98 at 8-11.) Yet all those cases involve the enforcement of state-wide voting laws and thus the Secretary of State— who is responsible for enforcing such state-wide laws—was properly named. Here, by contrast, a local redistricting law is at issue, which under Georgia law is to be enforced by the BOER Defendants. (*See* Compl. ¶¶ 147-55.)

allegations concerning the District's actions even though it was initially brought against only the BOER Defendants is also typical.  Based on the nature of such actions, voting rights plaintiffs often include allegations against the architects of redistricting, while only actually bringing suit against neutral enforcement entities. *See Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297 (M.D. Ga. 2018), *aff'd* 979 F.3d 1282 (11th Cir. 2020); *Scott v. Dekalb Cnty. Bd. of Elections & Voter Registration*, 2005 WL 8155742 (N.D. Ga. Aug. 5, 2005), *aff'd* 470 F.3d 1014 (11th Cir. 2006).[7]

The District does not offer any basis for how the decision to sue the BOER Defendants, as opposed to the General Assembly or the State (which the District admits was put on notice), amounts to sanctionable conduct.  Indeed, as Plaintiffs established in their prior briefing, neither the General Assembly nor the State are proper unless they consent to be part of the lawsuit, thus waiving sovereign immunity.  (*See* Dkt. 93 at 23.)

---

[7] *See* Ex. C to the Winichakul Decl. at ¶¶ 1, 5 (alleging that a county Board of Commissioners and the General Assembly violated the VRA by "packing" Black voters into two districts and "enacting a racially discriminatory [b]ill," but solely bringing suit against the county Board of Elections and Registrations); *see also* Ex. D to the Winichakul Decl. at ¶¶ 2, 3, 36 (alleging that certain county delegates to the General Assembly "intentionally and knowingly pursued a redistricting scheme" in violation the Equal Protection Clause, but bringing suit solely against "the entity responsible for implementing and enforcing [the challenged] Act," *i.e.*, the county Board of Elections and Registration).

C. <u>There Is a Strong Factual Basis for the Claims in the Complaint</u>

The District claims "Plaintiffs had no basis for their claims."  (Mot. at 11.)

The District disregards that the Complaint contains ample direct and circumstantial

evidence that race was the predominant factor in drawing the Challenged Districts.[8]

Indeed, the District has ignored nearly all of the circumstantial evidence pled in the

Complaint in three submissions to the Court—its Rule 12(c) Motion, this Motion,

and the Rule 12(c) Reply.  (*See* Dkt. 93 at 15-22.)

The cases cited by the District to support its claim are inapposite.  For

instance, in *Jones v. International Riding Helmets, Ltd*.—a products liability case—

the plaintiff was found to have sued the defendant manufacturer despite being aware

that the manufacturer was not yet in operation on the date that plaintiff purchased

the allegedly defective product.  145 F.R.D. 120, 124 (N.D. Ga. 1992), *aff'd* 49 F.3d

692, 695 (11th Cir. 1995) (noting plaintiff knew product "could not have been made"

by defendant).  Likewise, in *Mike Outlay Productions, Inc. v. WJBF-TV*, the plaintiff

---

[8] *See, e.g.*, the demographics in Cobb County changed between the 2010 and 2020 census (Compl. ¶¶ 52-53), the majority of white Board members fell from 6-1 in 2018 to 4-3 in 2020 (*id*. ¶¶ 56), members of the Board and General Assembly referenced compliance with the Voting Rights Act in designing the map (*id*. ¶¶ 9, 117, 118, 125), the Board and the General Assembly departed from historical practice in connection with the redistricting process (*id*. ¶¶ 97-98, 015-108, 111-112), the Map resulted in cracking and packing Black and Latinx communities into the three southernmost districts (*id*. ¶¶ 156-170), and the Map split longstanding municipalities (*id*. ¶¶ 139.)

named a defendant based on "hearsay furnished by his client" where the client had "no personal knowledge" of the defendant's involvement in dispute.  952 F.2d 380, 384 (11th Cir. 1992).[9]

By contrast, the Complaint is detailed, contains direct quotes from key members of the Board and General Assembly, and is based on public information. (*See, e.g.*, Compl. ¶¶ 103, 117-23 (citing recordings of Board meetings); *id.* ¶¶ 110-11, 126-39 (citing recordings of Georgia General Assembly Committee, and Subcommittee hearings); *id.* ¶¶ 157-58 (analyzing differences between maps).)  The District will be able to challenge the "merits, reliability, truth, and evidentiary support" of Plaintiffs case at trial.  However, it may not do so on a Rule 11 motion. *See United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1281 (N.D. Ga. 2021) (factual allegations "will be borne out through discovery").

## CONCLUSION

For the foregoing reasons, the District's Motion fails to identify any sanctionable conduct by Plaintiffs or Plaintiffs' counsel and therefore should be denied.

---

[9] Indeed, the District cites to a case where sanctions were *reversed* because the lower court did not consider the "reasonableness of the signer's belief" as to the "factual and legal sufficiency."  (Mot. at 8-9) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1506 (11th Cir. 1993).)

Respectfully submitted,

Dated this 19th day of
May 2023.

*/s/ Pichaya Poy Winichakul*

Bradley E. Heard (Ga. Bar No. 342209)
Pichaya Poy Winichakul (Ga. Bar No. 246858)
Michael Tafelski (Ga. Bar No. 507007)
Sabrina S. Khan*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
michael.tafelski@splcenter.org
sabrina.khan@splcenter.org

Jeff Loperfido*
Christopher Shenton*
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
jeffloperfido@scsj.org
chrisshenton@scsj.org

Rahul Garabadu (Ga. Bar No. 553777)
Cory Isaacson (Ga. Bar No. 983797)
Caitlin May (Ga. Bar No. 602081)
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
rgarabadu@acluga.org
cisaacson@acluga.org
cmay@acluga.org

-26-

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
sfgold@lawyerscommittee.org

Douglas I. Koff*
Thomas L. Mott*
Tara Lederer*
Paul Schochet*
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000
Douglas.Koff@srz.com
Thomas.Mott@srz.com
Tara.Lederer@srz.com
Paul.Schochet@srz.com

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs Karen Finn, Dr. Jillian
Ford, Hylah Daly, Jenne Dulcio, GALEO Latino
Community Development Fund, Inc., New Georgia
Project Action Fund, League of Women Voters of
Marietta-Cobb, and Georgia Coalition For The
People's Agenda, Inc.*

-27-

*/s/ Caren E.* Short

Caren E. Short (Ga Bar No. 990443)
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW, Suite 500
Washington, DC 20036
202-921-2219
cshort@lwv.org

*Counsel for Plaintiff League of Women Voters*
*Marietta-Cobb*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this brief complies with L.R.

5.1B and 7.1 and that this brief is published in 14-point Times New Roman font.

Respectfully submitted,

<u>/s/ *Pichaya Poy Winichakul*        </u>
Pichaya Poy Winichakul
Ga. Bar No. 246858
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of May 2023, I electronically filed the

foregoing document with the Court, using its electronic filing system, which will

then send a notification of such filing to the counsel of record in this case

Respectfully submitted,

<u>/s/ *Pichaya Poy Winichakul*</u>
Pichaya Poy Winichakul
Ga. Bar No. 246858
Attorney for Plaintiffs