# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

KAREN FINN, DR. JILLIAN FORD,
HYLAH DALY, JENNE DULCIO,
GALEO LATINO COMMUNITY
DEVELOPMENT FUND, INC.,
NEW GEORGIA PROJECT ACTION
FUND, LEAGUE OF WOMEN VOTERS
OF MARIETTA-COBB, and
GEORGIA COALITION FOR THE
PEOPLE'S AGENDA, INC.,

        Plaintiffs

        -v-

COBB COUNTY BOARD OF
ELECTIONS AND REGISTRATION, *et
al*.,

        Defendants.

Case No.  1:22-cv-2300-ELR

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DISTRICT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERTS

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................1

BACKGROUND .....................................................................................3

LEGAL STANDARD..............................................................................8

ARGUMENT ........................................................................................10

I.    THE TIMING OF PLAINTIFFS' EXPERT DISCLOSURE IS
      SUBSTANTIALLY JUSTIFIED.........................................10

      A.    Plaintiffs Provided Expert Reports Within the Discovery
            Period. ..................................................................10

      B.    Plaintiffs' Experts Are Not a Surprise. ....................12

      C.    Plaintiffs Could Not Prepare and Disclose Expert Reports
            Until After Mr. Tyson's Deposition. ........................13

            1.    Dr. Oskooii's Report Responded to Mr. Tyson's
                  Testimony. ..................................................16

            2.    Mr. Fairfax's Report Responded to Mr. Tyson's
                  Testimony. ..................................................18

      D.    Trial Has Not Been Set and Plaintiffs Attempted to
            Negotiate an Extension of the Discovery Period......................21

CONCLUSION .....................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Ala. Legis. Black Caucus v. Alabama*,
    575 U.S. 254 (2015)..........................................................................................15

*Bethune-Hill v. Va. State Bd. of Elections*,
    580 U.S. 178 (2017)..........................................................................................15

*Bosire v. Kroger Co.*,
    2016 WL 7510233 (N.D. Ga. Mar. 17, 2016) ..................................................10

*Bourke v. Man Engines & Components, Inc.*,
    2016 WL 730696 (D. Conn. Feb. 23, 2016) .......................................................9

*Brown v. Nexus Bus. Sols., LLC*,
    2020 WL 10460499 (N.D. Ga. Mar. 18, 2020) ................................................21

*Cable Broadband & Telecomms., LLC v. Depositors Ins. Co.*,
    2018 WL 10647207 (N.D. Ga. Feb. 28, 2018) ..................................................12

*Cooper v. Harris*,
    581 U.S. 285 (2017)..........................................................................................15

*Coward v. Forestar Realty, Inc.*,
    2019 WL 12536138 (N.D. Ga. June 28, 2019)....................................................9

*Downs v. Dollar Tree Stores, Inc.*,
    2021 WL 4311494 (N.D. Ga. Sept. 21, 2021)..................................................2, 9

*Durkin v. Platz*,
    920 F. Supp. 2d 1316 (N.D. Ga. 2013)..............................................................10

*Mann v. Taser Int'l, Inc.*,
    588 F.3d 1291 (11th Cir. 2009) ........................................................................10

*McMillan v. Arrow Truck Sales, Inc.*,
    2019 WL 2137466 (N.D. Ga. Mar. 12, 2019) .........................................9, 10, 13

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
549 F.3d 1344 (11th Cir. 2008) ....................................................................*passim*

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ............................................................10, 12, 22

*Reid v. McDaniel*,
2019 WL 13227588 (N.D. Ga. Nov. 5, 2019) ....................................................21

*Rinehart v. GFI Mgmt. Servs., Inc.*,
2015 WL 13546492 (N.D. Ga. Nov. 6, 2015) ....................................................22

*Vaughan v. City of Sandy Springs*,
2011 WL 13176741 (N.D. Ga. June 29, 2011).............................................2, 11

**Rules**

Fed. R. Civ. P. 26(a)..........................................................................................8

Fed. R. Civ. P. 26(a)(2)................................................................................14, 21

Fed. R. Civ. P. 26(a)(2)(D)(i) ...........................................................................9

Local Rule 26.2(c)...................................................................................8, 21, 22

Plaintiffs respectfully submit this memorandum of law in opposition to the Cobb County School District's (the "District") Motion to Exclude Plaintiffs' Experts ("Motion" or "Mot."). (ECF No. 155.)

## PRELIMINARY STATEMENT

In its Motion, the District seeks to preclude Plaintiffs from presenting their experts at trial. As an initial matter the Motion fails because the District was dismissed from the case seven weeks ago.

Quite apart from that fundamental defect, all of the District's arguments in support of its Motion fail.

*First*, the District argues Plaintiffs' expert disclosures were untimely. That argument fails because Plaintiffs provided their expert reports before the close of discovery, after requesting—two weeks before the cut-off—that discovery be extended to account for experts, which Plaintiffs were in the process of negotiating with the Election Defendants (and, as a courtesy, the District) when the Motion was filed.

*Second*, the District argues Plaintiffs utilized their experts in drafting the "very detailed allegations' in the Complaint (Mot. at 12). Not so. The Complaint is based on public statements in support of the Map, from the District, its Map-drawer (Bryan Tyson), and the legislators sponsoring the Map. As the Map-drawer, Mr. Tyson's

testimony was integral to both of Plaintiffs' experts, but he was only made available for deposition on a single day, ***August 11***, a few weeks before the September 5 discovery cut-off—despite Plaintiffs asking for dates for his deposition ***as early as June 13***. The District's suggestion that Plaintiffs' experts could have drafted their reports based on Mr. Tyson's public statements and documents produced in the action is wrong. Before providing their reports, Plaintiffs' experts needed to understand, among several critical topics: the criteria utilized in drawing the Map and how each was defined, considered, and prioritized; the ways in which Mr. Tyson intended to ensure his Map complied with the Voting Rights Act ("VRA"); how he went about drawing the Map in order to so comply; and what analyses he undertook with respect to racially polarized voting.

*Third*, the District argues that the only remedy for Plaintiffs' purportedly untimely disclosure is the complete preclusion of the experts' testimony. However, the Motion completely ignores that preclusion of testimony is a "drastic remedy" which is inappropriate here. *Downs v. Dollar Tree Stores, Inc.*, 2021 WL 4311494, at *3 (N.D. Ga. Sept. 21, 2021); *see also Vaughan v. City of Sandy Springs*, 2011 WL 13176741, at *5 (N.D. Ga. June 29, 2011) (determining whether to exclude expert reports is a "more difficult task" than determining whether disclosures were

timely).  Here, Plaintiffs provided their expert reports before the close of discovery after seeking a good faith extension of the discovery cut-off.  Plaintiffs remain dedicated to working out a schedule with the actual parties to the action (however the Court decides that pending issue), and want that schedule to allow for sufficient opportunity for discovery and rebuttal of Plaintiffs' two expert witnesses.  Moreover, no trial date has been set such that a short extension of discovery would allow each of the parties to fully present their claims and defenses without any prejudice.

## BACKGROUND

On June 9, 2022, Plaintiffs filed the Complaint against the Election Defendants, well in advance of Cobb County's 2024 elections.  (ECF No. 1.) Plaintiffs asserted a single claim against the Election Defendants for racial gerrymandering in violation of the Equal Protection Clause of the Fourteenth Amendment (*id*. ¶¶ 169-173) and sought declaratory and injunctive relief.

In response to a motion to dismiss or to join necessary parties by Election Defendants (ECF No 30), Plaintiffs filed the Amended Complaint on August 19, 2022 (ECF No. 37).  The Election Defendants moved to dismiss the Amended Complaint on September 9, 2022 (the "Motion to Dismiss") for the same reasons as its first motion.  (ECF No. 43.)

3

On October 13, 2022, the Court issued a Scheduling Order which commenced discovery for an eight-month period.  (ECF No. 49.)  Despite that Scheduling Order, the Election Defendants maintained that no discovery could commence prior to a decision on the Motion to Dismiss.  Consequently, on December 19, 2022, Plaintiffs were forced move for an order commencing discovery so the case could move forward (ECF No. 51), which the Court granted on January 5, 2023 (ECF No. 56), issuing an amended Scheduling Order (ECF No. 57).

On December 19, 2022—six months after Plaintiffs commenced this lawsuit, and the same day Plaintiffs filed the motion to commence discovery—the District moved "to intervene and join the [action] as a defendant."  (ECF No. 52 at 1.)  Both Plaintiffs and the Election Defendants consented to the District joining as a defendant, (ECF Nos. 54, 55), and the Court ordered the District to be "added as a defendant" on January 30, 2023 (ECF No. 60 at 3).

The same day the District joined the case as a defendant, Plaintiffs proceeded to diligently pursue discovery, serving the District with a first request for production of documents, followed by a first set of interrogatories on February 3, 2023. Plaintiffs also served the District the same set of initial disclosures Plaintiffs had already served on the Election Defendants in early January.

The District did not commence document productions until late April, with three additional productions made on May 5, May 12, and June 2, 2023.[1]

With document discovery underway, Plaintiffs' counsel emailed the District's counsel on June 7, 2023 to request deposition dates for the District's 30(b)(6) witness and a member of the School Board.  On June 13, 2023, Plaintiffs' counsel followed up to request dates for additional deponents, including Mr. Bryan Tyson, the District's Map-drawer.  The District did not respond to either email.  Plaintiffs followed up again on June 21, 2023, this time proposing deposition dates in July. Finally, on June 27, 2023, a full ***20 days*** after Plaintiffs first requested dates, the District's counsel responded to say that none of the proposed dates would work. With respect to Mr. Tyson, the District offered ***a single date***, seven weeks later, for August 11, 2023.  Plaintiffs responded that receiving dates in mid-August after asking for dates starting in June was unacceptable.  The District responded that it provided the first available dates for each of the requested deponents.  (**Ex. 1**, T. Lederer and S. Anderson email chain from June 7 to June 29, 2023.)

---

[1] The District continued to make document productions over the course of the summer, and then, on August 30, 2023—less than a week before the discovery cut-off—produced 3,125 documents containing over 27,000 pages.

As explained below in Part I(C), Mr. Tyson's testimony regarding the Map-drawing process was necessary for Plaintiffs to be able to prepare and disclose expert reports.    That is because Plaintiffs learned through document discovery and depositions that Mr. Tyson was the only source of information concerning, among several important topics, how the Map was drawn, the basis for public assertions concerning the Map's compliance with the VRA, what functional analysis, if any, was performed, and whether and to what extent the Map-drawer considered the existence of racially polarized voting in Cobb County.

In sharp contrast with the District's delay tactics, Plaintiffs timely complied with all of their discovery obligations, making six separate rolling productions of responsive documents, and sitting for each of the five depositions that the District sought of Plaintiffs in a timely fashion:  with one occurring as early as May, two in early June, one in late June, and one in mid-July.

Plaintiffs' deposed Mr. Tyson on August 11, 2023.[2]  After Plaintiffs were finally able to take that deposition, Plaintiffs were then able to proceed with

---

[2] At Mr. Tyson's deposition, Plaintiffs discovered that the District had not yet produced all responsive documents in its possession, including for example, text messages exchanged with Andy Steinhauser, a District employee with whom Mr. Tyson worked on the Map.  Plaintiffs issued a document subpoena to Taylor English and Taylor English produced documents which included drafts of the map and text

proffering testifying experts to opine on how the Map was drawn, its compliance with the VRA, and Mr. Tyson's functional analysis and consideration of racially polarized voting.

Because of the delays in discovery—which were primarily caused by the District—beginning on or around August 15, 2023, Plaintiffs started negotiating a discovery extension with the Election Defendants that would allow time to depose and rebut Plaintiffs' experts, while maintaining enough time for a judgment in advance of the 2024 elections.  Plaintiffs engaged the District in that negotiation process (with a reservation of rights), even though the District was no longer a party in this case.  Plaintiffs had no intention to exclude or limit the Election Defendants or the District from participating in expert discovery, and took care during the negotiation process to provide a sufficient amount of time and to confirm with both the Election Defendants and the District that they were comfortable with the proposed schedule.  Throughout that process, the District engaged in negotiations, proposed additional dates be included for rebuttal experts, and never raised any concerns to Plaintiffs about the timing of expert discovery.

---

messages between Mr. Tyson and Mr. Steinhauser that the District had not previously produced, despite the District previously representing that Mr. Tyson's entire file would be produced by the District.

On August 18, 2023—seven days after Mr. Tyson's deposition and one day after receiving Taylor English's production—Plaintiffs served Supplemental Disclosures, disclosing the name of their experts, Dr. Kassra Osookii and Mr. Anthony Fairfax.

On August 22, 2023, the District filed the instant Motion to Exclude. That same day, Plaintiffs filed a Motion to Revise the Scheduling Order ("Scheduling Motion"). (ECF No. 156.)

The following day, on August 23, 2023, Plaintiffs filed an Emergency Motion to Enforce the Court's July 18, 2023 Order ("Emergency Motion"). (ECF No. 157.) The Election Defendants and the District filed oppositions to Plaintiffs' Scheduling Motion and Emergency Motion. (ECF Nos. 163-166.)

Plaintiffs served Dr. Osookii and Mr. Fairfax's reports on August 25, 2023 and August 30, 2023, respectively. (ECF Nos. 162, 168.)

On August 30, 2023, the Court denied Plaintiffs' Scheduling Motion and scheduled a telephone conference for September 12, 2023. (ECF No. 167.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a) and Local Rule 26.2(c) govern expert discovery. Absent a stipulation or court order, the expert disclosure generally must

be made at least 90 days before trial.  *See* Fed. R. Civ. P. 26(a)(2)(D)(i).

The following factors determine whether there is substantial justification for late expert disclosure:  "(1) whether there was a complete failure to provide information about an expert witness; (2) whether the violating party communicated with opposing counsel about the need for additional information; (3) whether the late disclosure came as a surprise to opposing counsel; (4) whether a trial date has been set; and (5) whether the violating party reasonably needed additional information to produce the report."  *McMillan v. Arrow Truck Sales, Inc.*, 2019 WL 2137466, at *3 (N.D. Ga. Mar. 12, 2019) (citing *OFS Fitel Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344 (11th Cir. 2008)).

The Court "has wide discretion to admit expert testimony, even where a party has failed to comply with the rules."  *Coward v. Forestar Realty, Inc.*, 2019 WL 12536138, at *2 (N.D. Ga. June 28, 2019).  Striking an expert report is a "drastic remedy."  *Downs*, 2021 WL 4311494, at *3; *see also Bourke v. Man Engines & Components, Inc.*, 2016 WL 730696, at *1-2 (D. Conn. Feb. 23, 2016) (motion to exclude denied; exclusion of experts is the "severest of sanctions").

# ARGUMENT

## I.    THE TIMING OF PLAINTIFFS' EXPERT DISCLOSURE IS SUBSTANTIALLY JUSTIFIED.

### A.    Plaintiffs Provided Expert Reports Within the Discovery Period.

The first factor courts in the Eleventh Circuit consider when determining whether the timing of expert disclosures are substantially justified is whether there was a "complete failure to provide information about an expert witness." *OFS Fitel*, 549 F.3d at 1363; *see also McMillan*, 2019 WL 2137466, at *3. In general, cases that preclude expert testimony involve circumstances where there has been no expert disclosure within the discovery period, including a complete failure to provide expert reports in the discovery period. (*See* Mot. at 7-9 (citing *Reese v. Herbert*, 527 F.3d 1253, 1264 (11th Cir. 2008) (expert report disclosed seven weeks after the close of discovery); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (second expert report submitted three months after the close of discovery and asserting two new theories of causation); *Durkin v. Platz*, 920 F. Supp. 2d 1316, 1326 (N.D. Ga. 2013) (expert report served two months after close of discovery); *Bosire v. Kroger Co.*, 2016 WL 7510233, *1-2 (N.D. Ga. Mar. 17, 2016) (Ross, J.) (expert report served seven months after close of discovery period and after parties filed motions for summary judgment)).)

That is not the case here.  On August 18, 2023—one week after Mr. Tyson's deposition and over two weeks **before** the close of discovery—Plaintiffs disclosed the names of their two experts.  The District filed the Motion while the parties were actively engaging in the discovery process and, purportedly, working together to address outstanding discovery issues.  Once it was apparent that the District had no intention of cooperating with Plaintiffs, Plaintiffs filed their Scheduling Order and proposed a schedule that allowed the Election Defendants and the District time to depose and rebut Plaintiffs' experts.  *See Vaughan v. City of Sandy Springs*, 2011 WL 13176741, at *4 (N.D. Ga. June 29, 2011) (denying motion to exclude despite late disclosure in part because plaintiffs had offered opposing counsel time to review the report and depose the expert, despite failing to seek a formal discovery extension from the Court).

Then, on August 25, 2023—11 days before the discovery cut-off—Plaintiffs served the expert report of Dr. Kassra A.R. Oskooii.  And on August 30, 2023—six days before the cut-off—Plaintiffs served the expert report of demographer Anthony Fairfax.  As such, in this case, there was not a "complete failure to provide information about an expert witness." *OFS Fitel*, 549 F.3d at 1363.

**B.    Plaintiffs' Experts Are Not a Surprise.**

Another factor Eleventh Circuit courts consider in determining whether to preclude experts based on untimely disclosures is the extent to which the late disclosure came as a surprise to opposing counsel.  *See OFS Fitel*, 549 F.3d at 1363. Plaintiffs' expert disclosure was no surprise to the District or the Election Defendants.  In a number of the cases cited in the District's Motion, the non-moving party's initial disclosures stated there were no known experts at the time.  (*See* Mot. at 8-9 (citing *Reese*, 527 F.3d at 1264; *Cable Broadband & Telecomms., LLC v. Depositors Ins. Co.*, 2018 WL 10647207, at *8 (N.D. Ga. Feb. 28, 2018) (Ross, J.) (parties' motion to extend discovery did not include expert discovery)).)

Here, in contrast, Plaintiffs were up front from the beginning that their case would include experts, having selected "[m]ultiple use of experts" as the basis for designating the case as complex in the parties' Joint Preliminary Report and Discovery Plan filed on October 11, 2022.  (ECF No. 48 at 4.)  Additionally, in March 2023, Plaintiffs objected to certain written discovery requests from the District on the basis they called for premature expert discovery.[3]  The District took

---

[3] *See, e.g.*, **Ex. 2**, Pl. Jillian Ford responses & objections ("R&O") to first discovery requests, dated March 13, 2023, Response Nos. 14-18, 24; **Ex. 3**, Pl.

issue with Plaintiffs' objection in its April 19, 2023 deficiency letter, but did not press the issue after the parties' met and conferred on April 24, 2023. Plaintiffs referenced experts in other discovery objections as well.[4]

At the same time, Plaintiffs were pressing the District to take Mr. Tyson's deposition, and in July, sent a deficiency letter demanding production of additional data and information related to Mr. Tyson's analysis, all of which was a prerequisite to disclosing experts and preparing expert reports.[5]

Finally, during the discussions among counsel in the days leading up to the Motion, the District's counsel did not express any surprise as to Plaintiffs' use of experts, and indeed began to negotiate as to the timing for affirmative and rebuttal experts. As such, in this case, the factor of "whether the late disclosure came as a surprise to opposing counsel" favors Plaintiffs. *McMillan.*, 2019 WL 2137466, at *3 (citing *OFS Fitel*, 549 F.3d at 1363–64).

### C.    Plaintiffs Could Not Prepare and Disclose Expert Reports Until After Mr. Tyson's Deposition.

---

League of Women Voters of Marietta-Cobb ("LWVMC") R&O to first set of discovery requests, dated March 13, 2023, Response Nos. 14-18, 24, 29.

[4] *See, e.g.*, **Ex. 4**, Pl. Karen Finn Supplemental R&O to first discovery requests, dated May 10, 2023, Response Nos. 13-18, 24, 27.

[5] *See* **Ex. 11**, Plaintiffs' Deficiency Letter, dated July 17, 2023.

Eleventh Circuit courts also consider whether the experts needed additional information before producing their report and whether that need was communicated to opposing counsel in determining whether the timing of disclosures were substantially justified. *See OFS Fitel*, 549 F.3d at 1363–64. While Plaintiffs had retained experts in this matter prior to their disclosure, Plaintiffs did not know what arguments the experts would need to address such that they could be disclosed as testifying experts with expert reports under Rule 26(a)(2) until after Mr. Tyson's deposition on August 11, which Plaintiffs were forced to wait to take for nearly two months, having asked for dates on June 13. It was the District's decision to not only delay Mr. Tyson's deposition, but also to provide only one date for that deposition, approximately four weeks before the close of discovery. Plaintiffs diligently sought the deposition of Mr. Tyson, and disclosed both expert reports only a few weeks afterward.

While Plaintiffs were aware of several public statements regarding the Map and how it was created, none of those statements—nor any documents produced by Mr. Tyson before his deposition—included enough detail to allow Plaintiffs' experts to understand what they would need to refute with respect to Mr. Tyson's line-drawing decisions. It is well established in voting rights law that it is insufficient

14

for a map-drawer to justify his line-drawing as necessary to comply with the VRA without undertaking particular, jurisdiction-specific analyses.

"When a State invokes the VRA to justify race-based districting, it must show . . . that it had a 'strong basis in evidence' for concluding that the statute required its action." *Cooper v. Harris*, 581 U.S. 285, 292-93 (2017) (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)). That strong basis in evidence requires first that Defendants have investigated the three *Gingles* preconditions required to prove vote dilution under Section 2 of the VRA. *Id.* at 302. "If a State has good reason to think that all the '*Gingles* preconditions' are met, then so too it has good reason to believe that § 2 requires drawing a majority-minority district. But if not, then not." *Id.* (citation omitted). Then, the actual drawing of the district for the purpose of VRA compliance requires a "functional analysis of the electoral behavior within the particular . . . electoral district" to determine how many minority voters are needed in a district to allow those voters to elect their preferred candidates. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 194 (2017) (alteration in original) (quotation marks omitted).

The District's primary defense of the Map is that it was drawn to comply with the VRA. All of the witnesses from the District have either claimed they did not

participate in drawing the Map, did not talk to Mr. Tyson about drawing the Map, did not know what compliance with the VRA entails, did not know what a functional analysis was or how Mr. Tyson conducted a functional analysis, had never heard of RPV or racially polarized voting, and/or generally relied on Mr. Tyson as the expert to draw a "fair" Map.[6]  Therefore, Mr. Tyson is the only witness with knowledge of the specific basis for his line-drawing decisions with respect to the Map, its alleged compliance with the VRA, and what steps were taken, if any, to justify the Map's use of race.  He was also the only witness who could speak to the other criteria that purportedly informed the drawing of the Map.  All of these factors were fundamental to framing the analyses in both Dr. Oskooii and Mr. Fairfax's reports, and none could have been completed until Plaintiffs were able to depose Mr. Tyson—the timing of which was controlled by the District.

### 1.    Dr. Oskooii's Report Responded to Mr. Tyson's Testimony.

As Plaintiffs' RPV expert, Dr. Oskooii required deposition testimony from Mr. Tyson to understand:  (1) how Mr. Tyson executed his racially polarized voting

---

[6] *See* **Ex. 5**, Floresta Tr. 64:2-65:6, 108:1-10, 110:1-111:17, 156:12-25, 180:2-181:7; **Ex. 6**, Scamihorn Tr. 108:6-22, 120:3-9, 146:7-15, 153:4-6; **Ex. 7**, Banks Tr. 122:2-6; **Ex. 8**, Chastain Tr. 68:13-24, 73:12-74:7, 106:19-107:12; **Ex. 9**, Wheeler Tr. 72:4-24, 98:16-25, 107:24-109:5.

analysis; (2) how he completed his functional analysis; and (3) what he meant when he said that certain districts were drawn for VRA compliance.

*First*, in his public statements, Mr. Tyson claimed that he based some of his line-drawing on the fact that "there was 'racially polarized voting' in Georgia" and "that Cobb County has 'a lot of non-white individuals.'" (ECF No. 37, ¶ 120.) But it remained unclear until Mr. Tyson's deposition whether and how he had conducted a racially polarized voting analysis under *Gingles* specific to the Cobb County Board of Education. In his deposition, Mr. Tyson clarified that he could not confirm whether there was racially polarized voting in Cobb County. (**Ex. 10**, Tyson Tr. 93:13-19.) Mr. Tyson further noted that he could not confirm whether the presence of racially polarized voting standing alone can establish the presence of certain *Gingles* factors. (*Id*. 92:15-18.) These claims directly affected what Dr. Oskooii had to address in his report. (*E.g.*, Oskooii Rep. ¶¶ 9, 16.) Had Mr. Tyson testified to analyzing the *Gingles* factors specifically, or testified as to the results of a functional analysis demonstrating racially polarized voting, Dr. Oskooii would have had to tailor his report to rebutting that analysis.

*Second*, Mr. Tyson's deposition was the only point during discovery that Mr. Tyson explained the sort of "functional analysis" he purported to undertake in

17

connection with drawing the Map.  Accordingly, Dr. Oskooii provided a functional analysis in response in his report.  (Oskooii Rep. ¶¶ 13-15.)  Had Mr. Tyson testified that he used different methods in his functional analysis, Dr. Oskooii would have had to tailor his report in response to the methods that Mr. Tyson had in fact utilized.

*Finally*, Mr. Tyson confirmed in his deposition that the VRA was the reason for drawing District 3 the way he did.  He testified, "I believe that if we had failed to draw a majority black district on the Cobb School Board map, the district would face significant possible liability under section two of the Voting Rights Act." (**Ex. 10**, Tyson Tr. 95:13-17.)  Until Mr. Tyson testified in his deposition to drawing District 3 in order to comply with the VRA, Plaintiffs could not have been prepared to proffer Dr. Oskooii's expert opinion and report.

### 2.    *Mr. Fairfax's Report Responded to Mr. Tyson's Testimony.*

As Plaintiffs' demographer, Mr. Fairfax's report required deposition testimony from Mr. Tyson to:  (1) confirm that Mr. Tyson was the only map-drawer; (2) understand Mr. Tyson's interpretation and application of the protocols and criteria that Mr. Tyson received from the District, including if and how the criteria were prioritized in drawing the Map; (3) understand how Mr. Tyson utilized racial demographic data in Districts 2, 3, and 6 in order to evaluate whether race

predominated in drawing any of those districts; and (4) understand the definition of "communities of interest" Mr. Tyson used in constructing the Map. (ECF No. 37, ¶¶ 118-123.)

Prior to Mr. Tyson's testimony, it was unclear who was involved in the Map-drawing process. For example, documentary evidence indicated that Mr. Tyson had emailed with an individual named "Tyrone Bryan" throughout the map-drawing process. However, Mr. Tyson's testimony revealed that Tyrone Bryan was a pseudonym for Mr. Tyson's secondary email address. (**Ex. 10**, Tyson Tr. 65:4-10.) Plaintiffs' counsel had previously asked the District to identify Tyrone Bryan, but the District was unable to provide any explanation and instead told Plaintiffs to ask Mr. Tyson during his deposition. (*See* **Ex. 1**.)

Once Mr. Fairfax knew that Mr. Tyson was the only Map-drawer, Mr. Fairfax needed to understand how the "protocols" sent to Mr. Tyson were applied in order to compare the old map with the Map. Mr. Fairfax also needed to know whether Mr. Tyson prioritized any criteria in any particular order. (**Ex. 10**, Tyson Tr. 113:24-114:6.) Mr. Fairfax addressed those issues in his report. (Fairfax Rep. ¶¶ 75-90.)

A key focus of the Fairfax Report is analyzing whether racial demographics in Districts 2, 3, and 6 support that race was the predominant factor in drawing those

districts.  To complete this analysis, Mr. Fairfax first needed to understand whether Mr. Tyson intended to draw Districts 2, 3, and 6 as minority districts.  Mr. Tyson testified about drawing those districts.  (**Ex. 10**, Tyson Tr. 88:23-89:1, 94:3-8, 95:7-11.)  Mr. Fairfax addressed that issue in his report.  (Fairfax Rep. ¶¶ 4, 14.)

Mr. Fairfax's comparison of the performance of the old map with the Map also hinged on Mr. Tyson's testimony that the decision to redistrict was not undertaken as a matter of legal compliance.  (**Ex. 10**, Tyson Tr. 25:9-18.)  Once Mr. Tyson confirmed that the old map was not unconstitutionally malapportioned, Mr. Fairfax was able to conduct a direct comparison of the old map and the Map and how they adhered to the redistricting criteria utilized in the map-drawing process, since both would have been legally permissible to use.  (Fairfax Rep. ¶¶ 75-90.)

Finally, Mr. Fairfax needed to confirm how Mr. Tyson was defining the term of art "communities of interest" in connection with the Map-drawing process, particularly given the specificity of some of the criteria that was communicated to him from the District.  Mr. Tyson testified that that he did not discuss that definition with the District.  (**Ex. 10**, Tyson Tr. 110:19-111:22.)  Mr. Fairfax addressed that fact in his report.  (Fairfax Rep. ¶¶ 84-85.)

For all these reasons, until Mr. Tyson provided testimony at his deposition,

Plaintiffs could not have been prepared to submit Mr. Fairfax's opinion and report.

**D.    Trial Has Not Been Set and Plaintiffs Attempted to Negotiate an Extension of the Discovery Period.**

The final factor courts in the Eleventh Circuit consider in connection with motions to exclude experts is whether a "trial date for the case ha[s] been set." *OFS Fitel*, 549 F.3d at 1363-64; *Reid v. McDaniel*, 2019 WL 13227588, at *5 (N.D. Ga. Nov. 5, 2019) (whether trial date has been set is "most important factor" in determining whether to exclude expert report). This case has not yet been set for trial and there is ample time for the Election Defendants, and to the extent the Court determines it is still a party, the District, to depose Plaintiffs' experts and submit rebuttal experts.

Even in cases where expert disclosures were arguably untimely under Local Rule 26.2(c), courts have frequently granted a brief extension in order to cure any potential prejudice to the opposing party, rather than exclude experts. In these cases, courts have looked to both compliance with Federal Rule of Civil Procedure 26(a)(2) and whether any actual prejudice will occur in allowing the disputed experts. *See, e.g.*, *Brown v. Nexus Bus. Sols., LLC*, 2020 WL 10460499, at *2 (N.D. Ga. Mar. 18, 2020) (Ross, J.) (holding that a technical breach of Local Rule 26.2(c) was substantially justified and extending discovery 60 days for limited purposes of

retaining a rebuttal expert and deposing defendant's expert); *see also Rinehart v. GFI Mgmt. Servs., Inc.*, 2015 WL 13546492, at \*1 (N.D. Ga. Nov. 6, 2015) (Ross, J.) (denying motion to exclude and re-opening discovery for 60 days). Where, as here, Plaintiffs' experts could not have completed their reports without a deposition that took place near the end of discovery (*see supra* Section C), it is clear that even if there was a technical breach of Local Rule 26.2(c), there is substantial justification for the timing of Plaintiffs' disclosures under the applicable Federal and Local Rules.

Additionally, unlike a number of the cases cited in the Motion, Plaintiffs have proactively proposed a brief extension of discovery to permit depositions and rebuttal experts and filed a motion to do so before the discovery deadline. *Reese*, 527 F.3d at 1266 ("Moreover, at a minimum, [Plaintiff] could have filed a motion to extend the discovery period so as to permit a proper disclosure. He offered no excuse for failing to do so."). Plaintiffs were engaged in what they thought were good faith negotiations with the Election Defendants (and, as a courtesy, the District) regarding a short extension of the discovery cut-off to account for experts when the District improperly filed its Motion. The District appeared to be fully engaged in those negotiations, including by asking for additional days for rebuttal experts, up until filing the Motion. The Election Defendants also indicated they were on board with

the proposed extension, including by identifying certain dates that would not work with counsel's schedule.

In any event, the Plaintiffs did propose to the Court a brief extension in discovery to allow for expert discovery. Given the nature of this case and the proposed timing of its resolution, there is ample time to allow for such discovery.

## **CONCLUSION**

For all the reasons discussed herein, the Motion should be denied.

Respectfully submitted this 5th day of September 2023.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
Bradley E. Heard (Ga. Bar No. 342209)
Michael Tafelski (Ga. Bar No. 507007)
Sabrina S. Khan*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
michael.tafelski@splcenter.org
sabrina.khan@splcenter.org

Jeff Loperfido*
Christopher Shenton*

23

SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
jeffloperfido@scsj.org
chrisshenton@scsj.org

Rahul Garabadu (Ga. Bar No. 553777)
Cory Isaacson (Ga. Bar No. 983797)
Caitlin May (Ga. Bar No. 602081)
ACLU FOUNDATION OF GEORGIA,
INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
rgarabadu@acluga.org
cisaacson@acluga.org
cmay@acluga.org

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
Sofia Fernandez Gold*
Heather Szilagyi*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
sfgold@lawyerscommittee.org
hszilagyi@lawyerscommittee.org

24

Douglas I. Koff*
Thomas L. Mott*
Tara Lederer*
Jacqueline Maero Blaskowski*
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000
Douglas.Koff@srz.com
Thomas.Mott@srz.com
Tara.Lederer@srz.com
Jacqueline.Maeroblaskowski@srz.com

*Admitted Pro Hac Vice

*Counsel for Plaintiffs Karen Finn, Dr. Jillian Ford, Hylah Daly, Jenne Dulcio, GALEO Latino Community Development Fund, Inc., New Georgia Project Action Fund, League of Women Voters of Marietta-Cobb, and Georgia Coalition for the People's Agenda, Inc.*

/s/ Caren E. Short
Caren E. Short (Ga Bar No. 990443)
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW, Suite 500
Washington, DC 20036
202-921-2219
cshort@lwv.org

*Counsel for Plaintiff League of Women Voters Marietta-Cobb*

25

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 5th day of September 2023.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Dated this 5th day of September 2023.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

27