# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KAREN FINN, DR. JILLIAN FORD, HYLAH DALY, JENNE DULCIO, GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC., NEW GEORGIA PROJECT ACTION FUND, LEAGUE OF WOMEN VOTERS OF MARIETTA-COBB, and GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., <br><br> Plaintiffs <br><br> -v- <br><br> COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION, *et al.*, <br><br> Defendants. | Case No.  1:22-cv-2300-ELR |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ELECTION DEFENDANTS' MOTION FOR RECONSIDERATION AND <u>THE DISTRICT'S SUPPLEMENTAL MOTION</u>

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .............................................................................1

PROCEDURAL HISTORY.................................................................................5

ARGUMENT .....................................................................................................9

  I.  RECONSIDERATION IS INAPPROPRIATE..............................................9

        A.    The Motions Present No Valid Grounds for
Reconsideration.........................................................................10

        B.    The Motions Misapply the Law Regarding the Scope
of the Election Defendants' Authority......................................11

        C.    The Motions Misapply *Monel*....................................................12

        D.    The District Repeats Its Misplaced Argument That
Plaintiffs Must Show Intentional Discrimination ....................19

  II.  THE DISTRICT'S MOTION IS PROCEDURALLY DEFICIENT ............21

        A.    The District Is Not a Party and Lacks Standing. ......................21

        B.    The District's Motion Is Untimely.............................................22

        C.    The District's Motion Is Barred by the Federal and
Local Rules ...............................................................................23

  CONCLUSION.................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Abbott v. Perez*,
  138 S. Ct. 2305 (2018)........................................................................21

*Auto. Assurance Grp. v. Giddens*,
  2022 WL 18460629 (N.D. Ga. Sept. 20, 2022)....................................25

*Baez v. LTD Fin. Servs., L.P.*,
  757 F. App'x 842 (11th Cir. 2018) ......................................................30

*Black Voters Matter Fund v. Raffensperger*,
  478 F. Supp. 3d 1278 (N.D. Ga. 2020),
  *aff'd sub nom. Black Voters Matter Fund v. Sec'y of State for Ga.*,
  11 F.4th 1227 (11th Cir. 2021) ........................................................2, 19

*Casey v. Clayton County*,
  2007 WL 788943 (N.D. Ga. Mar. 14, 2007) ...................................15, 16

*CGHH, LLC v. Cesta Punta Deportes, S.A. de C.V.*,
  2006 WL 8430970 (N.D. Ga. Mar. 31, 2006) ..................................27, 28

*Cooper v. Harris*,
  581 U.S. 285 (2017)............................................................................20

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*,
  2018 WL 2016273 (N.D. Iowa Mar. 30, 2018)....................................28

*Crumly v. Cobb Cnty. Bd. of Elections & Voter Registration*,
  892 F. Supp. 2d 1333 (N.D. Ga. 2012)................................................19

*Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of
  Registration & Elections*,
  36 F.4th 1100 (11th Cir. 2022) ...........................................................19

*Fisher v. Dallas County*,
  2014 WL 4797006 (N.D. Tex. Sept. 26, 2014) ....................................27

*Ga. Republican Party, Inc. v. Sec'y of State for Ga.*,
  2020 WL 7488181 (11th Cir. Dec. 21, 2020)....................................................19

*Ga. State Conf. of NAACP v. DeKalb Cnty. Bd. of Registration &
  Elections*,
  484 F. Supp. 3d 1308 (N.D. Ga. 2020)................................................................18

*Hastert v. Ill. State Bd. of Election Comm'rs*,
  28 F.3d 1430 (7th Cir. 1993) .............................................................................19

*Hockaday v. Athens Orthopedic Clinic PA*,
  3:15-cv-00122 (M.D. Ga.), ECF No. 452...........................................................23

*IOU Cent., Inc. v. Schmitz*,
  2020 WL 6876296 (N.D. Ga. Aug. 4, 2020).................................................4, 23

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ....................................................................11, 12

*Krage v. Macon Bibb County*,
  2022 WL 16707109 (11th Cir. Nov. 4, 2022) ....................................................17

*Manders v. Lee*,
  338 F.3d 1304 (11th Cir. 2003) ..................................................................*passim*

*Manns v. City of Atlanta*,
  2006 WL 2466836 (N.D. Ga. Aug. 23, 2006).............................................27, 28

*Miller v. Johnson*,
  515 U.S. 900 (1995)....................................................................................20, 21

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)..................................................................................*passim*

*Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*,
  2023 WL 5523617 (N.D. Ga. Aug. 4, 2023)......................................................22

*Pediatric Med. Devices, Inc. v. Ind. Mills & Mfg., Inc.*,
  961 F. Supp. 2d 1241 (N.D. Ga. 2013).........................................................10, 12

*Peeples v. Carolina Container, LLC*,
2022 WL 4000350 (N.D. Ga. Sept. 1, 2022)...................................................4, 23

*Pellitteri v. Prine*,
776 F.3d 777 (11th Cir. 2015) ...........................................................................17

*Reid v. Hasty*,
2008 WL 11464855 (N.D. Ga. Mar. 13, 2008),
*report and recommendation adopted as modified on other grounds*,
2008 WL 11466079 (N.D. Ga. July 16, 2008) ...................................................30

*Scott v. DeKalb Cnty. Bd. of Elections & Voter Registration*,
2005 WL 8155742 (N.D. Ga. Aug. 5, 2005) ...................................................8, 19

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)...............................................................................................17

*Shaw v. Reno*,
509 U.S. 630 (1993).......................................................................................20, 21

*Sidney v. Equifax Info. Servs., LLC*,
2021 WL 7708525 (N.D. Ga. Apr. 9, 2021)........................................................25

*Starstone Nat'l Ins. Co. v. Hudson*,
2020 WL 4979207 (N.D. Ga. July 22, 2020) .....................................................25

*Tyson v. Town of Homer*,
2021 WL 8893039 (N.D. Ga. July 2, 2021) ..........................................................8

*Uzomba v. Wilmore*,
2020 WL 13588705 (N.D. Ga. July 22, 2020) ...............................................9, 10

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)........................................................................................20, 21

*WESI, LLC v. Compass Env't, Inc.*,
509 F. Supp. 2d 1353 (N.D. Ga. 2007).............................................................3, 22

*Witter v. Bank of Am.*,
2008 WL 11470984 (N.D. Ga. May 15, 2008)....................................................30

v

*Wright v. Sumter Cnty. Bd. of Elections & Registration*,
  301 F. Supp. 3d 1297 (M.D. Ga. 2018),
  *aff'd*, 979 F.3d 1282 (11th Cir. 2020).................................................................19

*Ex Parte Young*,
  209 U.S. 123 (1908)...............................................................3, 17, 18, 19

**Statutes**

O.C.G.A. § 21-2-40.................................................................13, 14

O.C.G.A. § 21-2-40(b)...........................................................14

O.C.G.A. § 21-2-71.................................................................16

O.C.G.A. § 21-2-71(5)...........................................................16

U.S. Const. amend. XI.........................................................14, 17, 18

**Rules**

Fed. R. Civ. P. 1.....................................................................28

Fed. R. Civ. P. 12.............................................................*passim*

Fed. R. Civ. P. 12(c).........................................................*passim*

Fed. R. Civ. P. 12(d)...........................................................30

Fed. R. Civ. P. 12(g)......................................................26, 27, 28

Fed. R. Civ. P. 12(g)(2)......................................................5, 26

Fed. R. Civ. P. 19................................................................6, 7

Fed. R. Civ. P. 56................................................................30

Fed. R. Civ. P. 56(c)(1)(A)...................................................29

Local Rule 7.1.................................................................24, 25

Local Rule 7.1(A)(2).........................................................4, 24

Local Rule 7.1(E) ................................................................23, 25

Local Rule 7.2(B) ....................................................................36

Local Rule 7.2(E) ..............................................................4, 9, 23

Local Rule 56(B)(1) ................................................................29

**Other Authorities**

*Judgment on the Pleadings—In General*, 5C Fed. Prac. & Proc. Civ.
§ 1367 (3d ed.) ....................................................................22

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants Cobb County Board of Elections and Registration (the "BOER") and Janine Eveler's (the "Election Defendants") Motion to Reconsider Court's Order of July 18, 2023 (ECF No. 148) ("BOER Motion" or "BOER Mot.") and the Cobb County School District's (the "District") Supplemental Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (ECF Nos. 149, 149-1) ("District's Motion" or "District Mot." and with the BOER Motion, the "Motions").

## PRELIMINARY STATEMENT

The Election Defendants are asking the Court to reconsider its July 18, 2023 order (the "Order") and the District is asking the Court for judgment on the pleadings based on facts and arguments that were already presented to the Court or easily could have been.  For that reason alone, as set forth below, both Motions should be denied.

In addition to those dispositive defects, the Election Defendants' and the District's arguments are also substantively meritless.

*First*, the Election Defendants argue that the Court should reconsider its denial of their motion to dismiss because the "primary duty to implement the Challenged Maps in this case runs through the Secretary of State." (BOER Mot. at 8.)  That is a simple repackaging of an argument already considered—and rejected—by the Court on the motion to dismiss.  Additionally, the BOER Motion ignores the Court's

1

finding that "Plaintiffs have sued the entities responsible for '***enforcing***' the Map at issue." (*See* Order at 14–17 (emphasis added).)  The Election Defendants' continued assertions that the Secretary of State also participates in local elections do not undercut the Court's finding that the Election Defendants are proper defendants to this action, as they will be *directly* responsible for running the School Board elections using the challenged Map. *See Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1306 n.18 (N.D. Ga. 2020) (local elections boards and their superintendents are proper defendants to a voting rights suit because election code delegates to them the "day-to-day operations of running elections"), *aff'd sub nom. Black Voters Matter Fund v. Sec'y of State for Ga.*, 11 F.4th 1227 (11th Cir. 2021).

*Second*, both Motions argue that the Election Defendants are entitled to judgment on the pleadings based on a misreading of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Neither the Election Defendants nor the District raised this argument below—and the Court should now reject it as an inappropriate ground for reconsideration.  Nor does *Monell* apply to Plaintiffs' claim against the Election Defendants.  Under controlling Eleventh Circuit precedent, the BOER is an "arm of the State" and thus not subject to the *Monell* doctrine.  *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003).  And as Plaintiffs only seek to enjoin the Election Defendants as the entity responsible for enforcing HB 1028, Plaintiffs' claim is

proper under *Ex Parte Young*, 209 U.S. 123, 159–60 (1908).

*Third*, the District argues that Plaintiffs must show intentional discrimination to prevail.  (District Mot. at 8–9.)  Here, the District again raises an argument on behalf of the Election Defendants that the Election Defendants failed to make in their underlying motion.  The Court should again reject this argument as a ground for reconsideration.  Additionally, and as established at length in Plaintiffs' prior submission to the Court (ECF No. 93), there is no requirement to plead discriminatory intent under a racial gerrymandering claim.  Rather, Plaintiffs only need to show racial predominance, which turns on whether the map-drawer constructed a district where race overrode other considerations.

While both Motions are defective because they are based on facts and arguments that were available to the Election Defendants and the District at the time they filed their original motions, the District's Motion also presents several other procedural infirmities.

*First*, the District lacks the right to make such a motion.  The Order granting the District's Rule 12(c) motion dismissed the District from this action.  *See* Order at 34–35; *see also WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1359 n.4 (N.D. Ga. 2007) ("A judgment on the pleadings is a judgment, with prejudice, on the merits.").

*Second*, the District waited until after the window to move for reconsideration had expired to make what is in essence a motion for reconsideration. The Local Rules gave the District twenty-eight days from the entry of the Order to file a motion for reconsideration. LR 7.2(E), NDGa. The deadline to file a motion for reconsideration was August 15, 2023. The District filed its Motion the day after, on August 16, 2023. That is sufficient grounds to deny the District's Motion. *See IOU Cent., Inc. v. Schmitz*, 2020 WL 6876296, at *2 (N.D. Ga. Aug. 4, 2020) (Ross, J.) (denying a motion for reconsideration filed two days late because, among other things, "the untimeliness of the filing is . . . sufficient grounds for the Court to deny the motion"); *see also Peeples v. Carolina Container, LLC*, 2022 WL 4000350, at *2 (N.D. Ga. Sept. 1, 2022) ("Defendant cannot circumvent the Local Rules by disguising its motion for reconsideration as something else.").

*Third*, even if the Court determines that it should consider the District's Motion as a Rule 12 motion and not a reconsideration motion (which we submit it should not for the reasons set forth above), the Motion is both untimely and an improper successive Rule 12 motion filed without the Court's permission. The Local Rules require that the District file a motion for judgment on the pleadings within thirty days after the beginning of discovery. LR 7.1(A)(2), NDGa. That deadline has long passed. Even if it were not, because the District has already moved

4

under Rule 12(c), it is prohibited from "mak[ing] another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g)(2).  The District's Motion does just that and should be denied.

*Fourth*, the District's alternative motion for summary judgment does not comply with the Federal or Local Rules and should be denied.  The District's alternative motion is also without merit.  Indeed, the District merely repackages its arguments in favor of its "supplemental" Rule 12(c) as one for summary judgment.  The District's alternative motion for summary judgment thus fails as a matter of law for the same reasons that its "supplemental" Rule 12(c) motion does.

*Finally*, either construed as a "supplemental" motion for judgment on the pleadings or summary judgment motion, the District improperly seeks relief on behalf of the Election Defendants.  Nor have the Election Defendants joined the District's Motion.   The District's Motion thus should be denied.

As such, the Motions should accordingly be denied.

## PROCEDURAL HISTORY

On June 9, 2022, Plaintiffs filed a complaint against the Election Defendants, well in advance of Cobb County's 2024 elections.  The Election Defendants moved to dismiss and Plaintiffs filed an amended complaint on August 19, 2022.  (ECF

No. 37.)   The Election Defendants then filed a second motion to dismiss on September 9, 2022 ("Motion to Dismiss") (ECF No. 43), asking the Court to dismiss the amended complaint for lack of standing and failure to join indispensable parties.

In the Motion to Dismiss, the Election Defendants argued that Plaintiffs lacked standing because the constitutional violation alleged was only traceable to the District, the Cobb County School Board members, and the Georgia General Assembly.  (ECF No. 43-1 at 8–12.)  The Election Defendants also argued that they were entitled to dismissal because Plaintiffs failed to join several purportedly indispensable parties pursuant to Rule 19, specifically:  the District, the Georgia General Assembly, the State of Georgia, the Georgia Secretary of State, and the Georgia State Election Board.  (*Id.* at 13–17.)

Six months after Plaintiffs commenced this lawsuit, the District moved "to intervene and join the [action] as a defendant."  (ECF No. 52 at 1.)  All parties consented to the District's motion, (ECF Nos. 54, 55), and the Court ordered the District to be "added as a defendant" on January 30, 2023 (ECF No. at 60 at 3).

On March 31, 2023, the District filed a motion for judgment on the pleadings ("Motion for Judgment on the Pleadings" or "MJOP"), which the Election Defendants did not join.  (ECF No. 83.)  In its Motion for Judgment on the Pleadings, the District largely repeated or recast the arguments made by the Election

Defendants in their Motion to Dismiss.  (ECF No. 83 at 15–24.)  The District additionally argued that it was not subject to liability pursuant to § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* at 11–15.)  Specifically, the District claimed that Plaintiffs failed to allege that it acted with discriminatory intent in violation of the Equal Protection Clause and that Plaintiffs did not allege a "custom or policy" necessary to meet the requirements of *Monell*.

On July 18, 2023, the Court granted the Motion for Judgment on the Pleadings (the "Order").  (ECF No. 136.)  The Court accepted the District's argument with respect to *Monell* and found that Plaintiffs failed "to allege a pattern of similar constitutional violations, as is ordinarily necessary to state a § 1983 claim against a municipality because a single alleged violation is not so pervasive as to amount to a custom."  (*Id.* at 34 (quotation marks omitted).)  The Order accordingly dismissed the sole claim against the District.

The Court also denied the Motion to Dismiss.  (*Id.* at 10–26.)  The Court rejected the Election Defendants' standing arguments and found that Plaintiffs alleged an injury fairly traceable to the Election Defendants because they are responsible for conducting elections using the challenged maps. (*Id.* at 13–15.)  The Court further rejected the Election Defendants' Rule 19 argument because they failed "to offer persuasive reasoning or relevant authority as to why" any of their

proposed parties should be joined.  (*Id.* at 22.)  In denying the Motion to Dismiss, the Court specifically noted, "[i]n numerous Georgia cases like this one involving disputed 'local legislation,' plaintiffs have permissibly sued the relevant boards of elections and registrations and individuals representing those entities, and *not* the General Assembly."  (*Id.* (quoting *Tyson v. Town of Homer*, 2021 WL 8893039, at *3 (N.D. Ga. July 2, 2021)).)

By granting the District's Motion for Judgment on the Pleadings and denying the Election Defendants' Motion to Dismiss, the Election Defendants were left as the only remaining defendants in the action.  The Court noted that the "Election Defendants are 'suited to defend the [claim]' in this case challenging the Map." (Order at 25 (quoting *Scott v. DeKalb Cnty. Bd. of Elections & Voter Registration*, 2005 WL 8155742, at *5 (N.D. Ga. Aug. 5, 2005)).)

On August 15, 2023, the Election Defendants filed the instant Motion.  The next day, the District filed its motion.  On September 5, 2023, the District filed its response to the BOER Motion, noting that the "District fully embraces the Election Defendants' contentions that Plaintiffs do not have standing to sue them and that the Election Defendants are entitled to judgment in their favor under *Monell v. Department of Social Servs. of New York*, 436 U.S. 658 (1978)."  (ECF No. 170 at 1

(alteration in original).)   In its response, the District did not raise any additional arguments with respect to Plaintiffs.

## **ARGUMENT**

### I.    RECONSIDERATION IS INAPPROPRIATE.

Whereas the Election Defendants brought a motion for reconsideration, the District filed its Motion as a "Supplemental Motion" and in essence is a motion for reconsideration.  As demonstrated below, both Motions do little more than recycle arguments that the Court has already considered and rejected in its Order and improperly advance arguments that could have been raised in the prior motions. Therefore, both Motions fall far short of the standard for reconsideration of the Court's Order.

"Motions for reconsideration are to be filed only when 'absolutely necessary' where there is:  (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Uzomba v. Wilmore*, 2020 WL 13588705, at *1 (N.D. Ga. July 22, 2020) (Ross, J.) (citation omitted); *see* LR 7.2(E), NDGa ("Motions for reconsideration shall not be filed as a matter of routine practice.").

A motion for reconsideration is an inappropriate medium "to present the Court with arguments already heard and dismissed, to repackage familiar arguments, or to

show the Court how it 'could have done it better' the first time." *Uzomba*, 2020 WL 13588705, at *1 (citation omitted).   A party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Pediatric Med. Devices, Inc. v. Ind. Mills & Mfg., Inc.*, 961 F. Supp. 2d 1241, 1243 (N.D. Ga. 2013) (quotation omitted).

### A.    The Motions Present No Valid Grounds for Reconsideration.

As a threshold matter, the Motions present no newly discovered evidence, intervening developments, or changes in controlling law that might warrant reconsideration of the Court's Order.  *See Uzomba*, 2020 WL 13588705, at *1.

*First*, the Election Defendants complain that "the Amended Complaint, as relied upon the Court in its Order, misstates the legal duties of Election Defendants with regard to the implementation of the Challenged Maps at issue in this case, resulting in flawed findings regarding standing and joinder."  (BOER Mot. at 2.) That argument—which is meritless, as demonstrated below—is also  based on "arguments or evidence that should have been raised earlier." *Pediatric Med. Devices*, 961 F. Supp. at 1243.  For that reason alone, the Court should deny the BOER Motion.

**B.      The Motions Misapply the Law Regarding the Scope of the Election Defendants' Authority.**

Putting aside that the Election Defendants improperly rely on arguments it could have raised *before* the Court issued the Order, the argument is also without merit.  The Election Defendants attempt to create distance from their obligations to administer elections under Georgia law by claiming that "the primary duty" to implement the Map falls to the Secretary of State, who should replace or join the Election Defendants as a party to this case.  (BOER Mot. at 3–10.)  Not so.

None of the Georgia election statutes that Election Defendants assert the Court misinterpreted in its Order cast any doubt on the Court's conclusion that Plaintiffs have standing to sue the Election Defendants because the Election Defendants "have a legal obligation to conduct elections using the maps adopted by the State" regardless of whether Election Defendants "'played any role in creating, evaluating, accepting, rejecting or otherwise exercising any control over the [Map] or the redistricting process.'"  (Order at 17.)  In fact, the Election Defendants concede they are required under Georgia "to administer and supervise the conduct of elections and primaries and the registration of electors in the county."  (BOER Mot. at 4 n.3.)

Notably, the Election Defendants offer insufficient authority in support of their theories on standing and joinder.  The Election Defendants, as they did in support of their Motion to Dismiss, rely principally on *Jacobson v. Florida Secretary*

11

*of State*, a decision that the Court considered and found to support **_Plaintiffs'_** position on standing. (*See* BOER Mot. at 8–9; Order at 16–17.) In *Jacobson*, as the Court recognized in the Order, it was the county election supervisors—rather than the Secretary of State—who were responsible for enforcing a challenged election law, and thus were proper defendants. 974 F.3d 1236, 1241–42 (11th Cir. 2020). The Election Defendants fail to mention, much less distinguish, *any* other case discussed by the Court in its denial of the Election Defendants' Motion to Dismiss.

### C.   The Motions Misapply *Monell*.

*Next*, both Motions ask the Court to "reconsider" its Order and grant the Election Defendants judgment on the pleadings based on *Monell*. (*See* BOER Mot. at 10–14; District Mot. at 8–11.) This argument was not raised by the Election Defendants in their Motion to Dismiss and consequently was not considered by the Court in its Order. As noted above, courts recognize that a motion for reconsideration is an improper "vehicle to present new arguments or evidence that should have been raised earlier" or to "introduce novel legal theories" in the hopes that the Court will change its mind. *Pediatric Med. Devices*, 961 F. Supp. at 1243.

By now asking the Court to endorse an argument that the Election Defendants failed to raise in their Motion to Dismiss, the Motions present nothing for the Court to reconsider. The argument was plainly available to both parties below because the

12

District made virtually the same argument for itself—in a motion that the Election Defendants chose not to join.  The Motions' improper request for the Court to "reconsider" an entirely new argument that was previously available to them should be denied.

The Election Defendants' own motion, moreover, provides an independent ground for the Court to reject their *Monell* argument.  In the BOER Motion, the Election Defendants assert that "[n]owhere in the Answer does the District plead the affirmative defense of municipal immunity under *Monell*" and thus "the District waived the defense of municipal immunity."   (BOER Mot. at 14, 16.)   Yet "[n]owhere in the [Election Defendants'] Answer do[] the [they] plead the affirmative defense of municipal immunity under *Monell*."  (*Id.* at 14; *see also* ECF No. 142.)  So, under the Election Defendants' own argument, they have "waived the defense of municipal immunity."

Both Motions also fail on the merits as to the *Monell* argument.

### 1. Monell *Does Not Apply to the BOER As It Is An "Arm of the State."*

To start, both the Election Defendants and the District assume, without argument or analysis, that the BOER is in fact a municipality under *Monell*.  The Election Defendants assert that "the Elections Board is a local government unit, created by the Georgia General Assembly pursuant to O.C.G.A. § 21-2-40 and Ga.

L. 1985, p. 4653." (BOER Mot. at 12.) The District for its part, claims without support that "a governmental entity such as BOER" cannot be held liable under *Monell*. (District Mot. at 10.) Both assertions are wrong.

Under *Monell*, courts must distinguish between "municipalities" and "local government units" "considered part of the State." 436 U.S. 658, 690 n.54. The former are subject to the *Monell* doctrine; the latter are not. *Id.* Determining whether a local government unit is acting as a part of the State under the Eleventh Amendment is governed by the "arm of the State" test laid out in *Manders v. Lee*:

> In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

338 F.3d 1304, 1309 (11th Cir. 2003). The *Manders* factors clearly indicate that the BOER, for this case, acts as an "arm of the State," and thus *Monell* does not apply.

The first *Manders* factor—how state law defines the BOER—weighs clearly in favor of "arm of the State" status and against municipal status for the BOER. *See* 338 F.3d at 1309. The BOER, as Election Defendants concede, owes its creation to state law. (*See* BOER Mot. at 12 ("[T]he Elections Board is a local government unit, created by the Georgia General Assembly pursuant to O.C.G.A. § 21-2-40 and Ga. L. 1985, p. 4653.").) Indeed, as noted by the Court, O.C.G.A. § 21-2-40(b)

14

"empower[s] the [BOER] with the powers and duties of the election superintendent relating to the conduct of primaries and elections[.]" (Order at 14.) This power is both defined by state law and flows from state law authority. *See Casey v. Clayton County*, 2007 WL 788943, at *8 (N.D. Ga. Mar. 14, 2007) ("The Board of Election was created by the Georgia General Assembly pursuant to its statutory authority, and vested with broad powers to manage the conduct of elections ***on behalf of the state***." (emphasis added)).

The Election Defendants have also repeatedly argued, correctly, that state law, in the form of HB 1028, lays out precise requirements that the Election Defendants must follow when implementing the redistricting plan. (*See, e.g.*, ECF. No. 43-1 at 4–5 (arguing that the Election Defendants have "a statutory duty to conduct elections using the school district maps adopted by the State Legislature in HB 1028").) Implementing a redistricting plan, enacted under state law, is axiomatically a state law function.

The second *Manders* factor—what degree of control the State maintains over the entity—also weighs overwhelmingly in favor of "arm of the State" status and against municipal status for the BOER. *See* 338 F.3d at 1309. As stated above, state law clearly controls the precise contours of the redistricting plan embodied in HB 1028; the Election Defendants have no discretion whatsoever concerning what

15

redistricting plan to use.  With respect to the function at issue in the present case, the BOER is indisputably and completely controlled by state law.

The third *Manders* factor—where the entity derives its funds—also favors "arm of the State" status under Eleventh Circuit precedents.  *See* 338 F.3d at 1309. While Cobb County is responsible for funding the BOER, *see* O.C.G.A. § 21-2-71, those funding obligations are linked to the BOER's performance of its duties as set forth in **Georgia law**.  *Id.*  In *Manders* itself, the Eleventh Circuit held that even where a county "bears the major burden" of funding an entity's activities "because the State so mandates," "[t]his state involvement is sufficient to tilt the third factor" toward "arm of the State" status.  338 F.3d at 1323–24; *see also Casey*, 2007 WL 788943, at *8 ("[T]he Court questions the true extent of the County's budgetary authority in light of the county's apparent obligations under state law regarding the conduct of elections, and the relationship between those obligations and citizens' ability to exercise their fundamental right to vote.").

The fourth and final *Manders* factor—who is responsible for judgments over the entity—weighs in favor of municipal status for the BOER.  *See* 338 F.3d at 1309. Cobb County is responsible for expenses arising out of the performance of BOER's duties, *see* O.C.G.A. § 21-2-71(5), and thus would likely pay any judgment. Standing alone, however, this fact does not preclude a finding that the Cobb BOER

16

is an "arm of the State." *See Pellitteri v. Prine*, 776 F.3d 777, 783 & n.2 (11th Cir. 2015) (Eleventh Circuit "precedent suggests that the presence of a state treasury drain is likely sufficient but not necessary for a finding of immunity"); *see also Krage v. Macon Bibb County*, 2022 WL 16707109, at *3 (11th Cir. Nov. 4, 2022) (rejecting party's attempt to "treat this fourth factor as outcome determinative").  To that end, with three of the four *Manders* factors favoring "arm of the State" status, the BOER is clearly a state actor with respect to implementing HB 1028.

### 2.      *Plaintiffs Seek Prospective Injunctive Relief Against the BOER Under* Ex Parte Young

The Motions also misapply controlling law about sovereign immunity and its exceptions.  As a general matter, private citizens may not bring suit against any state. U.S. Const. amend. XI.; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).  The Supreme Court, however, has recognized several exceptions to this general rule.  Two are relevant here:  the *Monell* doctrine and the *Ex Parte Young* doctrine.

In *Monell*, the Supreme Court held that the Eleventh Amendment is not "a bar to municipal liability." 436 U.S. 658, 690 n.54 (1978).  But, as this Court recognized in its July 18 Order, a plaintiff can only seek "municipal liability" for "actions taken pursuant to official municipal policy of some nature that cause a constitutional tort." (Order at 30 (citations omitted).).  In *Ex Parte Young*, by contrast, "the Supreme

Court held that the Eleventh Amendment did not bar suits against state officials, sued in their official capacities, for prospective injunctive relief." *Ga. State Conf. of NAACP v. DeKalb Cnty. Bd. of Registration & Elections*, 484 F. Supp. 3d 1308, 1320 (N.D. Ga. 2020) (Ross, J).

That is the case here. From the start of this case, Plaintiffs have sought prospective injunctive relief as to HB 1028 and against Election Defendants in their official capacities. As the Court recognized, "Georgia's election code delegates authority to county boards of elections the Election Defendants," (Order at 14), and thus Plaintiffs, in the Election Defendants, "have sued the entities responsible for 'enforcing' the Map at issue," (*id.* at 17). Put differently, Plaintiffs are not seeking to hold the Elections Defendants liable as a part of a municipal entity (and as explained above, the BOER is not one); they are seeking to enjoin the entity entrusted under state law with enforcing HB 1028. That the relevant state entity happens to be a local board of elections does not change the analysis. *Monell* thus has no application here, and Plaintiffs' suit can proceed under *Ex Parte Young*.

Indeed, it is well established that, under *Ex Parte Young*, voting rights Plaintiffs may name local boards of elections as defendants because such entities are entrusted with enforcing election law. *See, e.g.*, *Ga. State Conf. of NAACP*, 484 F. Supp. 3d at 1302 (Ross, J) ("Thus, the Court finds that even if the [BOER] were

entitled to sovereign immunity, this case would nonetheless proceed against the Individual Defendants pursuant to *Ex Parte Young*.").[1]

Adopting the Election Defendants and the District's *Monell* argument would dismantle decades of established law and cast a cloud over the viability of voting rights actions generally.  The Court should reject such a radical step.

### D. The District Repeats Its Misplaced Argument That Plaintiffs Must Show Intentional Discrimination.

*Finally*, the District's Motion repeats the same mistaken argument it made before that Plaintiffs must show intentional discrimination.  (District Mot. at 8–9.)

---

[1]  *See also Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1116 (11th Cir. 2022) (recognizing that a board of registration and elections was the proper defendant); *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1306 n.18 (N.D. Ga. 2020) (finding that the DeKalb County Board of Registration & Elections and its employee were properly named as defendants because they "are in charge of the day-to-day operations of running elections in DeKalb County"), *aff'd sub nom. Black Voters Matter Fund v. Sec'y of State for Ga.*, 11 F.4th 1227 (11th Cir. 2021); *Scott v. Dekalb*, 2005 WL 8155742, at *1 (N.D. Ga. Aug. 5, 2005) ("[P]rospective relief enjoining the enforcement of the challenged voting districts is properly sought against [a] Board of Elections"), *aff'd sub nom. Scott v. Taylor*, 470 F.3d 1014 (11th Cir. 2006); *Ga. Republican Party, Inc. v. Sec'y of State for Ga.*, 2020 WL 7488181, at *2 (11th Cir. Dec. 21, 2020) (agreeing with the district court's reasoning that the plaintiffs lacked Article III standing because they did not name "local supervisors" as defendants); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297 (M.D. Ga. 2018) (entering judgment against local board of elections), *aff'd*, 979 F.3d 1282 (11th Cir. 2020); *Crumly v. Cobb Cnty. Bd. of Elections & Voter Registration*, 892 F. Supp. 2d 1333, 1344–45 (N.D. Ga. 2012) (relief granted against local board of elections); *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1444 (7th Cir. 1993) (same).

That argument, as with several others, was neither raised nor joined by the Election Defendants in their Motion to Dismiss and should now be rejected as a ground for reconsideration.

As Plaintiffs described at length in their prior submission, this argument is also substantively wrong.  (ECF No. 93 at 9–17.)  An intentional discrimination claim and a racial gerrymandering claim are "analytically distinct."  *See Miller v. Johnson*, 515 U.S. 900, 911 (1995).  Although intent is a relevant factor in racial gerrymandering cases, the focus remains on the two-step analysis set forth in the *Shaw* line of cases.  (ECF No. 93 at 10.)  This test asks (i) whether "race was the predominant factor motivating" the map drawer, *Miller*, 515 U.S. at 916, and, if so, (ii) whether the defendant can sustain its burden of "prov[ing] its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end," *Cooper v. Harris*, 581 U.S. 285, 292 (2017).  Intentional discrimination claims, on the other hand, are analyzed under the multifactor test from *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).  (ECF No. 93.)  No matter how many times the District says it, these two tests are not the same.

The District's cases are not to the contrary.  (District Mot. at 9.)  The District spotlights the words "purposefully" and "intentionally" from *Shaw v. Reno*, 509 U.S. 630 (1993), and *Abbott v. Perez*, 138 S. Ct. 2305 (2018) to argue that case law

requires a plaintiff to show intentional discrimination to establish a racial gerrymandering claim. It follows the same strategy with its citation to *Miller v. Johnson*, 515 U.S. 900 (1995), highlighting the Court's explanation that a plaintiff must show that race was the defendants' "dominant and controlling rationale." Yet that all reinforces that predominance—and not intent—is the key consideration for racial gerrymandering claims. None of these cases require a plaintiff asserting a racial gerrymandering claim to show discriminatory intent.[2]

## II.   THE DISTRICT'S MOTION IS PROCEDURALLY DEFICIENT

### A.   The District Is Not a Party and Lacks Standing.

Beyond failing to meet the standard for a motion to reconsider, the District runs into several procedural bars to its motion. As a non-party, the District lacks standing to make such a motion. As detailed in Plaintiffs' prior submissions, the District (i) sought intervention as a defendant, (ii) was granted that status by the Court, (iii) then moved for dismissal under Rule 12(c) of Plaintiffs' claims against the District, and (iv) prevailed on that Rule 12(c) motion. (ECF. No. 157.) Other courts within this District have recognized that a judgment on the pleadings—like the Order—acts as a "judgment, with prejudice, on the merits." *WESI, LLC*, 509 F.

---

[2] The District also strangely cites *Arlington Heights*, 429 U.S. at 252. As discussed, that case controls for intentional discrimination claims, not *Shaw* claims.

Supp. 2d at 1359 n.4 (N.D. Ga. 2007); *accord Judgment on the Pleadings—In General*, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.) ("The motion for judgment on the pleadings under Federal Rule 12(c) has its historical roots in common law practice, which permitted either party, at any point in the proceeding, to demur to his opponent's pleading and secure a dismissal or final judgment on the basis of the pleadings.").  In fact, in prior submissions to the Court, the Elections Defendants have represented that they are the only remaining defendants to this action.  (*See* ECF No. 140 at 6 (***BOER's Position***: . . . Cobb BOER's position as the only remaining defendant after the entry of the Order. . . .").)

The Order therefore dismissed the District from this action, stripping the District of any remaining rights.

### B.    The District's Motion Is Untimely.

The District's Motion—which asks this Court to reconsider its Order—is a reconsideration motion.  That is clear.  Courts have repeatedly put substance over form and rejected attempts to disguise motions for reconsideration.  *Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*, 2023 WL 5523617, at *6 (N.D. Ga. Aug. 4, 2023) (Ross, J.) (rejecting plaintiffs' "notice of supplemental authority" not filed with their motion for reconsideration as "untimely" under Local Rule 7.2(E) because the notice was an "apparent request . . . that the Court reverse its previous decision");

22

*Peeples v. Carolina Container, LLC*, No. 2022 WL 4000350, at *2 (N.D. Ga. Sept. 1, 2022) ("Defendant cannot circumvent the Local Rules by disguising its motion for reconsideration as something else."); Order at 4, *Hockaday v. Athens Orthopedic Clinic PA*, 3:15-cv-00122 (M.D. Ga. Aug. 15, 2022), ECF No. 452 ("This is a motion for reconsideration disguised as a motion for clarification, and the answer is no.").

As it is a reconsideration motion, the District's Motion is untimely.  Under Local Rule 7.1(E), the District had twenty-eight days from the Order to file a motion for reconsideration.   LR 7.1(E), NDGa.   The deadline to file a motion for reconsideration was August 15, 2023.  The District instead waited until August 16, 2023 to file its Motion.  That is sufficient grounds on its own to deny the District's Motion.  *See IOU Cent., Inc. v. Schmitz*, 2020 WL 6876296, at *2 (N.D. Ga. Aug. 4, 2020) (Ross, J.) (denying a motion for reconsideration filed two days late because, among other things, "the untimeliness of the filing is . . . sufficient grounds for the court to deny the motion").

### C.    The District's Motion Is Barred by the Federal and Local Rules.

Even if the Court were to accept the District's Motion at face value, the Court need not reach the merits of the District's "supplemental" Rule 12(c) motion because it is procedurally defective in several respects.  *First*, the District filed its Motion well outside the permissible time to file such a motion under Local Rule 7.1.  *Second*,

the District's Motion is an improper successive Rule 12(c) motion.  *Third*, the Court should reject any invitation to read the District's Motion as a motion for summary judgment because the Motion does not rely on evidence outside of the pleadings. Each of these procedural defects is an independent ground to deny the District's Motion.  *Finally*, the District impermissibly seeks relief on behalf of the Election Defendants.

### 1.     *The District's Supplemental Rule 12(c) Motion Is Barred by Local Rule 7.1(A)(2).*

As the District concedes in its Motion, (District Mot. at 2), the Local Rules of this Court require motions for judgment on the pleadings to "be filed within thirty (30) days after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later."  LR 7.1(A)(2), NDGa.  This thirty-day window has long closed and the District failed to request—much less obtain—the Court's leave to file its motion outside of the period permitted by the Local Rules.

The Court accepted the District's original motion for judgment on the pleadings as timely although it was filed outside the period permitted by the Local Rules "in light of the unusual timing of the District's intervention in this matter." (Order at 29.)  The District, which has now participated in this case for over six

months, has no similar excuse for the untimely filing of its Motion.[3]   Preventing

unwarranted delay is a core purpose of Local Rule 7.1.  *See Starstone Nat'l Ins. Co.*

*v. Hudson*, 2020 WL 4979207, at *4 (N.D. Ga. July 22, 2020) (holding that Local

Rule 7.1 barred defendant's Rule 12(c) motion because "the delay in moving for

judgment on the pleadings was substantial").

Accordingly, it is appropriate to deny the District's Motion as untimely when

the District "ignor[ed] motion filing limitations and deadlines that are set forth

clearly in the Federal Rules of Civil Procedure and this Court's Civil Local Rules."[4]

*Sidney v. Equifax Info. Servs., LLC*, 2021 WL 7708525, at *2 (N.D. Ga. Apr. 9,

2021), *report and recommendation adopted*, 2021 WL 7708527 (N.D. Ga. May 3,

2021) (denying a motion for judgment on the pleadings filed outside the thirty-day

deadline without permission from the Court); *see Auto. Assurance Grp. v. Giddens*,

2022 WL 18460629, at *3 (N.D. Ga. Sept. 20, 2022) (Ross, J.) (denying a motion

---

[3]  The District claims in passing that its Supplemental Motion "is timely as it is based on the Court's reasoning in its order of July 18, 2023."  (District Mot. at 1 n.1.)  Tellingly, the District does not provide any explanation of that contention and cites no law nor rule in support of it.

[4]  To the extent that the District intends its Supplemental Motion to be a motion to reconsider the Order, this too falls afoul of the Local Rules.  *See* LR 7.1(E), NDGa (setting a 28-day deadline to file a motion for reconsideration).  The deadline to file a motion for reconsideration was August 15, 2023.  The District instead waited until August 16, 2023 to file its untimely Supplemental Motion.

for judgment on the pleadings as untimely).

### 2.    *The District's Supplemental Rule 12(c) Motion Is Barred by the Federal Rules.*

The District styles its motion as a "supplemental" motion for judgment on the pleadings.   However, the District cites no authority that permits it to file a "supplemental" Rule 12 motion nearly a month after the Court granted the District's original motion for judgment on the pleadings.   That is for good reason: the Federal Rules generally prohibit successive Rule 12 motions.

Rule 12(g) of the Federal Rules of Civil Procedure bars the District's successive Rule 12 motion.   *See* Fed. R. Civ. P. 12(g)(2).   This rule prohibits a party who has already filed a Rule 12 motion from "mak[ing] another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."   *Id.*   Here, the District already moved for—and the Court granted—judgment on the pleadings in its favor under Rule 12.   (ECF Nos. 83, 136.)   The District now moves for judgment on the pleadings a second time—this time arguing that *the Election Defendants* are entitled to judgment on the pleadings due to alleged defects in Plaintiffs' amended complaint.   (*See generally* District Mot.).

To the extent that the District is permitted to make this argument on behalf of

another party who does not join in the motion,[5] the District now raises arguments that were plainly available to the District at the time it filed its first motion for judgment on the pleadings.  The District's Motion is thus barred by Rule 12(g) and should be denied on that basis alone.  *See CGHH, LLC v. Cesta Punta Deportes, S.A. de C.V.*, 2006 WL 8430970, at *3 n.8 (N.D. Ga. Mar. 31, 2006) ("[T]he overwhelming weight of authority, which holds that Rule 12(g) 'specifically prohibits' a party from the filing of successive Rule 12 motions on grounds that could have been presented in the first motion."); *Manns v. City of Atlanta*, 2006 WL 2466836, at *4 (N.D. Ga. Aug. 23, 2006) (similar).

*Fisher v. Dallas County* is instructive on this point.  2014 WL 4797006 (N.D. Tex. Sept. 26, 2014).  There, a defendant filed a second Rule 12(c) motion a few days after the court ruled on the defendant's first motion for judgment on the pleadings.  *Id.* at *7–8.  In defense of its successive motion, the defendant argued that "Rule 12's prohibition against successive motions does not apply to motions for judgment on the pleadings for failure to state a claim on which relief can be granted." *Id.* at *8.  The court disagreed, holding that Rule 12(g) barred the defendant's motion.  *Id.* at *9 ("The court holds that when a party files a Rule 12(c) motion, the

---

[5]  As noted below, the District should not be permitted to do so.  *See infra* Section II.C.4.

opposing party does not file an intervening pleading (*e.g.*, an amended complaint) that is subject to challenge for failure to state a claim on which relief can be granted, and the party files a second Rule 12(c) motion that is addressed to the same pleading that is the subject of the first Rule 12(c) motion, the second motion is successive and can be denied on that basis.")

In so holding, the court noted that "[t]he Rules are not intended to provide that a party can file *ad nauseam* successive Rule 12(c) motions addressed to the same pleading." *Id.* at *8; *accord CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2018 WL 2016273, at *4–5 (N.D. Iowa Mar. 30, 2018) (holding that a motion to dismiss for failure to state a claim was procedurally barred even if treated as a Rule 12(c) motion because "permitting a party to file piecemeal, successive Rule 12(c) motions would violate Rule 1 and invite abusive tactics designed to cause delay and increase the cost of litigation"); *CGHH, LLC*, 2006 WL 8430970, at *3 n.4 (explaining that the "express exemption [in Rule 12(g)] from the waiver rule does not contemplate or allow the filing of successive Rule 12 motions).

### 3.  *The District Improperly Seeks Summary Judgment Without Reference to Evidence Outside the Pleadings.*

The District "in an abundance of caution" states that its Motion is alternatively a motion for summary judgment.  (District Mot. at 1 n.1.)  As explained above, the

District's Motion should be construed as a motion for reconsideration, and denied as failing to meet the requirements for such a motion.

But even if viewed a motion for summary judgment, the Court should still deny the District's Motion as procedurally improper and on the merits.  To start, the District's alternative motion for summary judgment fails because it is not supported by citation to the record as required by the Federal and Local Rules.  Instead, the District primarily relies on citations to its own general statements about the case. This is not allowed under either the Federal or Local Rules.

Specifically, a party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  Local Rule 56.1(B) further states that "[t]he Court will not consider any fact . . . (b) supported by a citation to a pleading rather than to evidence."  LR 56(B)(1), NDGa.

A Rule 12(c) motion for judgment on the pleadings, moreover, is properly converted into a motion for summary judgment only when the motion "requires a district court to look outside the pleadings."  *Baez v. LTD Fin. Servs., L.P.*, 757 F. App'x 842, 845 (11th Cir. 2018); Fed. R. Civ. P. 12(d).

29

By the District's own admission, it has not submitted evidence outside the pleadings in support of its motion. (District Mot. at 1 n.1; *see* ECF No. 149-2.) The Court should accordingly reject the District's invitation to treat its Motion as a motion for summary judgment. *See Witter v. Bank of Am.*, 2008 WL 11470984, at *2 (N.D. Ga. May 15, 2008) (court holding that it could not consider certain paragraphs from "Defendant's Statement of Undisputed Facts" because the paragraphs solely "rel[y] on Plaintiff's Amended Complaint"), *report and recommendation adopted*, 2008 WL 11470997 (N.D. Ga. June 12, 2008).

Finally, for all the reasons stated *supra* in Part I, the District's Motion, even if construed as a motion for summary judgment, fails as a matter of law.

### 4.     *The District Improperly Seeks Relief On Behalf of the Election Defendants*

In its motion, the District moves for judgment on the pleadings, or alternatively for summary judgment, "on the constitutional claim asserted ***against the BOER***." (District Mot. at 3 (emphasis added).) The Election Defendants, however, did not join the District's Motion. Nor is the District permitted—either under Rule 12(c) or Rule 56—to seek relief on behalf of another party. *See Reid v. Hasty*, 2008 WL 11464855, at *9 n.7 (N.D. Ga. Mar. 13, 2008) (holding that a defendant could not move on behalf of its co-defendants who did "not indicat[e] that they join[ed] in [the movant's] motion to dismiss"), *report and recommendation*

*adopted as modified on other grounds*, 2008 WL 11466079 (N.D. Ga. July 16, 2008).

Indeed, in the Order, the Court clarified that the Election Defendants can litigate their own case.  (*See* Order at 25 ("Election Defendants are 'suited to defend the [claim]' in this case challenging the Map." (citation omitted)).)  As a result, the District moving on behalf of the Election Defendants is an independent ground to deny the District's Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Motions.

Respectfully submitted this 8th day of September 2023.

*/s/ Pichaya Poy Winichakul*
Bradley E. Heard (Ga. Bar No. 342209)
Pichaya Poy Winichakul (Ga. Bar No. 246858)
Michael Tafelski (Ga. Bar No. 507007)
Sabrina S. Khan*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
michael.tafelski@splcenter.org
sabrina.khan@splcenter.org

Jeff Loperfido*
Christopher Shenton*
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
jeffloperfido@scsj.org
chrisshenton@scsj.org

Rahul Garabadu (Ga. Bar No. 553777)
Cory Isaacson (Ga. Bar No. 983797)
Caitlin May (Ga. Bar No. 602081)
ACLU FOUNDATION OF GEORGIA,
INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
rgarabadu@acluga.org
cisaacson@acluga.org
cmay@acluga.org

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
Sofia Fernandez Gold*
Heather Szilagyi*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
sfgold@lawyerscommittee.org
hszilagyi@lawyerscommittee.org

Douglas I. Koff*
Thomas L. Mott*
Tara Lederer*
Paul Schochet*
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000
Douglas.Koff@srz.com
Thomas.Mott@srz.com
Tara.Lederer@srz.com
Paul.Schochet@srz.com

* Admitted Pro Hac Vice

*Counsel for Plaintiffs Karen Finn, Dr. Jillian Ford, Hylah Daly, Jenne Dulcio, GALEO Latino Community Development Fund, Inc., New Georgia Project Action Fund, League of Women Voters of Marietta-Cobb, and Georgia Coalition for the People's Agenda, Inc.*


/s/ *Caren E. Short*
Caren E. Short (Ga Bar No. 990443)
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW, Suite 500
Washington, DC 20036
202-921-2219
cshort@lwv.org

*Counsel for Plaintiff League of Women Voters Marietta-Cobb*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 8th day of September 2023.

> */s/ Pichaya Poy Winichakul*
> Pichaya Poy Winichakul (Ga. Bar No. 246858)
> SOUTHERN POVERTY LAW CENTER
> 150 E. Ponce de Leon Ave., Suite 340
> Decatur, Georgia 30030
> (404) 521-6700
> poy.winichakul@splcenter.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Dated this 8th day of September 2023.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org
