UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN FINN, et al.,

    Plaintiffs

-v-

COBB COUNTY BOARD OF
ELECTIONS AND REGISTRATION,
et al.,

    Defendants.

Case No. 1:22-cv-2300-ELR

**COBB COUNTY SCHOOL DISTRICT'S RENEWED MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Cobb County School District (the "District") files this Renewed Motion to Intervene and Memorandum of Law in Support Thereof. Under Fed. R. Civ. P. 24, the District requests that it be permitted to intervene and re-join the above-styled case to protect its interests in the subject matter of the case as it enters the remedial stage.

**I.      BACKGROUND**

Plaintiffs filed this lawsuit on June 9, 2022 asserting a racial gerrymandering claim arising out of the redistricting of the voting districts for the Cobb County

1

Board of Education (the "Board") in early 2022.[1] Plaintiffs named as nominal Defendants the Cobb County Board of Elections and Registration and its Director (collectively referred to as the "Election Defendants").

On December 19, 2022, the District moved to intervene to defend the constitutionality of the existing map (Doc. 52), which neither Plaintiffs nor the Election Defendants opposed. (Docs. 54, 55.) The Court granted the District's motion to intervene based on the consent of the parties on January 30, 2023. (Doc. 60).

The District moved for judgment on the pleadings, asking the Court to dismiss all claims against all defendants. (Docs. 83, p. 1; Doc. 98, p. 2; Doc. 137, pp. 5-7, 13-14, 43-45.) Primarily, the District argued that potential claim was against the State only, who held the exclusive power to enact the redistricted map. (Doc. 83, pp. 1-2, 4, 8-9, 12-19.) Secondarily, the District contended that Plaintiffs did not allege facts to support governmental entity liability ("*Monell*") under Section 1983 and urged that the case should be dismissed against all defendants. (*Id.,* pp. 11-15; Doc. 98, pp. 2, 7-14.) It also asserted that Plaintiffs lacked standing. (Doc. 98, pp. 11-13.)

---

[1] The Board is the governing body of the District. *See* § 20-2-50 ("Each county of this state, exclusive of any independent school system in existence in a county, shall compose one school district and shall be confined to the control and management of a county board of education.") For the purposes of this Motion, the two are the same. Nonetheless, "the Board" is used to refer to actions taken explicitly by the Board of Education.

2

Upon motion by Plaintiffs, during a September 12, 2023 telephone conference, the Court orally revoked the District's status as an intervenor and precluded it from participating any further in the case. (Doc. 182, pp. 4-6.)  It did so on the ground that the Court had granted the District's motion for judgment on the pleadings. (*Id.*).  On November 2, 2024, the District memorialized its September 12 verbal ruling and barred the District from participating in the case as an intervenor. (Doc. 199, pp. 9-14.)[2]

On October 13, 2023, the Election Defendants entered into a "settlement agreement" with Plaintiffs pursuant to which they agreed not to oppose Plaintiffs' anticipated motion for preliminary injunction or to take any other steps to oppose Plaintiffs' quest to replace the existing redistricting map with one of their own preference. (Doc. 190-1.)  On October 23, 2023, Plaintiffs filed their Motion for Preliminary Injunction (Doc. 194), which the Election Defendants did not oppose. The Court permitted the District to file an amicus brief in opposition to Plaintiffs' Motion for Preliminary Injunction. (Docs. 200, 201, 202).)

On December 14, 2023, the Court issued an Order granting Plaintiffs' Motion for Preliminary Injunction. (Doc. 212).  The 12/14/23 Order gave the legislature until January 10, 2024 to enact a remedial map. (*Id.*, p. 33.)   The Court imposed this

---

[2] The District has appealed these rulings to the Eleventh Circuit (Docs. 185, 203), which has scheduled oral argument for January 30, 2024.

deadline at the suggestion of Plaintiffs, even though the legislature's regular session would not begin until January 8, 2024. (*Id.*) (citing Doc. 180). Again at the suggestion of Plaintiffs, the Court imposed very short deadlines for filing objections to any remedial map enacted by the legislature. (*Id.*)

## II. ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Civil Procedure 24 provides two avenues for intervention:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
>> **(1)** is given an unconditional right to intervene by a federal statute; or
>>
>> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> **(b) Permissive Intervention.**
>
>> **(1)** *In General.* On timely motion, the court may permit anyone to intervene who:
>>
>>> **(A)** is given a conditional right to intervene by a federal statute; or
>>>
>>> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24. The District has a legitimate basis for moving to intervene on both bases.

Procedurally, the District's motion is timely given the posture of the case. No proceedings have yet to take place regarding a remedial map. Substantively, the District is entitled to intervention as of right because the outcome of this case, including the remedial map selected by the Court, will directly impact its operations, which would be impeded if this intervention is denied. Notably, the Election Board has entered a "settlement agreement" precluding it from filing any motion or brief opposing any position taken by Plaintiffs (Doc. 190-1), further demonstrating the need for the District to intervene during the remedial stage of this case. The District also meets the standard for permissive intervention. For these reasons, the District's motion should be granted.

### A.  The District is entitled to intervene as a matter of right

A movant seeking intervention as a matter of right under Rule 24(a)(2) must show the following:

> (1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (internal alterations omitted). "Once a party establishes all the

prerequisites to intervention, the district court has no discretion to deny the motion." *United States v. State of Ga.*, 19 F.3d 1388, 1393 (11th Cir. 1994).

For the reasons that follow, the District meets each of these elements.

>   1.   <u>The District has an interest in the configuration of the remedial map</u>

The primary focus in determining whether the District has a right to intervene under Rule 24(a)(2) is whether it "has a legally protectable interest in the litigation." *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989). That interest, however, need not "be of a legal nature identical to that of the claims asserted in the main action." *Id.* at 1214 (punctuation and citation omitted). Instead, the inquiry is flexible and "focuses on the particular facts and circumstances surrounding each motion for intervention." *Id.* (punctuation and citations omitted). Under Eleventh Circuit precedent, "all that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017); *see also Georgia v. U.S. Army Corps of Engineers*, 203 F.3d at 1251-52 (11th Cir. 2002) (citing the practical effect the relief sought by the plaintiff would have on the movant seeking intervention as a legally protectable interest warranting intervention as of right.).

The subject matter of this case plainly demonstrates the District's interest. *See Georgia v. U.S. Army Corps of Engineers*, 302 F.3d at 1251 (recognizing that "we

look to the subject matter of the litigation" to determine whether the movant seeking to intervene "possesses the requisite interest."). Here, assuming that the December 14 preliminary injunction is upheld on appeal, the District has a substantial interest in the configuration of any remedial map that the Court adopts to replace the existing map. The configuration of the remedial map likely will impact the balance of political power on the Board, which will have a substantial impact on the future administration and policies of the Board, which will have a substantial impact on the District's operations and priorities going forward.

Indeed, courts within this District have encouraged and allowed interested persons and entities to intervene in order to present arguments relating to the court's adoption of a remedial redistricting map. *See Adamson v. Clayton County Elections and Registration Bd.*, 876 F. Supp.2d 1347, 1354 (N.D. Ga. 2012) (court ordered publication of various notices of court's proposed remedial map and invited interested parties to file motion to intervene by specified date); *Smith v. Cobb County Board of Elections*, 314 F. Supp.2d 1274, 1288-89, 1310-11 (N.D. Ga. 2002) (allowing two citizens to intervene in county commission case to object to remedial map proposed by plaintiffs on the ground that it would impair minority voting power in one district, and to propose their own remedial map); *id*. at 1311-13 (denying motion to intervene by two citizens in school board case, but only because they failed

7

to show substantial interest that was not already being protected by one of the existing parties).

The District acknowledges that on November 2, 2023 the Court memorialized its ruling prohibiting the District "from filing, as a party, motions (or related briefs) and participating in depositions." (Doc. 199, p. 17.) However, that ruling was made during the phase of the case addressing the constitutionality of the existing map. Now that the Court has preliminarily enjoined the enforcement of the map, the District has a new and independent interest in addressing how the map should be redrawn. In this regard, the District notes that a remedial map was introduced in the Georgia Senate on the opening day of the legislature's regular session on January 8, 2024. (Exhibit 1, attached). Thus, the District anticipates that the legislature will enact a remedial map, albeit not by January 10, 2024.

As such, the District should be allowed to intervene so that it can argue why the Court should give the legislature additional time to enact a remedial map and/or consider the legislature's redrawn map to replace the enjoined map.[3] The Court also

---

[3] For example, the January 10, 2024 deadline is impossible because the state House and Senate are governed by rules affecting the calendaring of bills moving through the House and Senate, including public notice for such hearings. A bill for adoption of a remedial map would need to be introduced in one chamber, be voted out of the appropriate committee after notice and hearing, be approved by that full chamber after a floor debate and then go through a similar process in the other chamber before being presented to the Governor for signature. In this regard, a bill may not pass out of the Georgia House for a minimum of two days after it is introduced. (*See* Georgia House Rules, Rules 48.1 through 48.3, attached hereto as Exhibit 2.)

8

should allow the District to intervene to respond to any objections Plaintiffs may lodge against any remedial map enacted by the legislature and also to object to any remedial maps proposed by Plaintiffs.

> 2. Determining a remedial map in the District's absence would impair or impede its ability to protect its interests.

The factors establishing the District's interests in the remedial map adopted by the Court likewise show that the denial of intervention would impair or impede the District's ability to protect its interests. Although the requirements for intervention under Rule 24(a) are analyzed separately, "it is important to note that they often are very interrelated and the ultimate conclusion reached as to whether intervention is of right may reflect that relationship." § 1908 Intervention under the 1966 Amended Rule—In General, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed.). "This is particularly true when evaluating the nature of the applicant's interest and the effect that the disposition of the action may have on the applicant's ability to protect its interest because they are closely related issues." *Id.*; *see also Chiles*, 865 F.2d at 1214 ("The nature of the detainees' interest and the effect that the disposition of the lawsuit will have on their ability to protect that interest are closely related issues. 'The second cannot be answered without reference to the first.'")

The impairment of the District's ability to protect its interests in the absence of intervention is further amplified by the terms of the Election Defendants' "settlement agreement" that precludes them from filing anything or taking any

position regarding a remedial map that is contrary to Plaintiffs' position regarding a remedial map. (Doc. 190-1.)  Thus, there is currently no defendant before the Court that will protect the District's interests with respect to a redrawn map.

        3.    <u>The Board of Elections will not adequately protect the District's interests.</u>

A nonparty seeking intervention has the burden of showing that the existing parties cannot adequately represent their interests. *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017). The burden, however, is minimal. *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999). The Eleventh Circuit has traditionally applied a presumption of "adequate representation when an existing party seeks the same objectives as the would-be interveners." *Id.*  But that presumption is "weak" and merely requires the proposed intervenor to show "some evidence" to the contrary.  *Id.*  "Once the would-be interveners have carried their burden, the court returns to the general rule that adequate representation exists 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[e]r, and if the representative does not fail in fulfillment of his duty.'"  *Id.*  "Showing any of these factors is not difficult. The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be

treated as minimal." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017).

As stated above, the Election Defendants contractually agreed to refrain from filing anything or taking any position regarding remedial maps that is in opposition to Plaintiffs' position regarding remedial maps. (Doc. 190-1, ¶¶ 9-10). This fact alone is sufficient to meet the minimal standard of "some evidence" that the District's interests will not be adequately protected as the case is currently postured. As a result, the only way the District can ensure its interests will be adequately represented during the remedial stage of this case is through intervention.

### B. Alternatively, the Court should permit intervention under Rule 24(b).

Rule 24(b)(1)(B) allows the Court to grant intervention to a government agency that "has a claim or defense that shares with the main action a common question of law or fact." As shown above, the Court must adopt a remedial map to replace the one that it has invalidated. The District has various arguments to present at the remedial stage of the case that reach the core of the remaining issues presented in this case, including how much time should the legislature be given to adopt a remedial map, whether the remedial map enacted by the legislature should be adopted by the Court and why the Court should not adopt any remedial map proposed by Plaintiffs.

11

### C. The District's Motion Is Timely

Both intervention as a matter of right and permissive intervention require a timely filed motion. *See* FED. R. CIV. P. 24(a), (b). But "district court[s] should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under section (a) than if he qualifies for intervention under section (b)." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977). "The rule arose out of a concern that a section (a) intervenor may be seriously harmed if he is not permitted to intervene." *Id.* (internal quotations omitted). "In fact, [prejudice] may well be the only significant consideration when the proposed intervenor seeks intervention of right." *See Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019).

Timeliness is not determined by a hard deadline; rather, it depends on the circumstances of the case. *Id.* at 1170–71; *Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) (abrogated on other grounds) ("The timeliness analysis concerns not only the chronology leading up to the motion for intervention but also "all the circumstances."). "Timeliness is not a word of exactitude of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Chiles*, 865 F.2d at 1213.

> Courts consider four factors in determining timeliness:
>
> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

*Advance Loc. Media*, 918 F.3d at 1171. "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Id.*; see also, *Meek*, 985 F.2d at 1479 (describing prejudice as "the essence of the timeliness inquiry."). But "absolute measures of timeliness," such as "how far the litigation has progressed when intervention is sought" and "the amount of time that may have elapsed since the institution of the action" are not to be relied upon." *Meek*, 985 F.2d at 1479 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977)). Any "mere delay in determining the rights of existing parties is not a relevant consideration." *Id.* "Instead, the court must focus on any additional prejudice arising from the applicant's delay in seeking intervention." The Eleventh Circuit has explained further:

> [T]he prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to

13

> request intervention as soon as he knew or reasonably should have known about his interest in the action. Although it is sometimes suggested that any prejudice that would result by intervention is relevant, this is incorrect. Whether allowing intervention will delay the progress of the case or prejudice the rights of the original parties is a factor which the court must consider under section (b) of Rule 24 [which provides that the court should consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties"]. Since a similar provision is not included in section (a) of the Rule, it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a).

*Id.* (quoting *Stallworth*, 558 F.2d at 265).

Here, there is no prejudice to the Election Defendants, as they have in essence opted out of this litigation through their settlement agreement with Plaintiffs. (Doc. 190-1). For their part, Plaintiffs have been aware of the District's desire to participate in this case since December 19, 2022 when it filed its initial motion to intervene, and of course the District participated in this case as an intervenor until September 12, 2023 when the Court ruled that the District was no longer allowed to do so as a party at that point. The landscape has now changed with the Election Defendants voluntarily agreeing to capitulate to Plaintiffs' positions and desired relief, which was not the case when the District was granted intervention.

Indeed, Plaintiffs' settlement agreement with the Election Defendants anticipates that nonparties may seek to intervene during the remedial phase of the

case. (Doc. 190-1, ¶¶ 9-10). Thus, Plaintiffs cannot claim any unfair surprise that a nonparty is seeking to intervene at the remedial stage of this case. *See Smith*, 314 F. Supp.2d at 1283, 1310-11 (holding that motion to intervene in county commission case filed three days before evidentiary hearing to address proposed remedial maps was timely and granting motion). Moreover, the District has filed the instant Motion less than 30 days after the Court issued its December 14, 2023 Order granting Plaintiffs' Motion for Preliminary Injunction and before any proceedings with respect to a remedial map have taken place. *See Smith, supra*. Thus, the only "harm" to Plaintiffs would be the need to face an actual opponent in determining which remedial map the Court should adopt. The parties, thus, will not be prejudiced by the District's intervention at the remedial stage of this case.

On the other hand, the District would suffer significant prejudice and irreparable harm if intervention at this stage is denied. Absent the District's participation, the General Assembly likely would not have a reasonable opportunity to enact a remedial map because of the January 10, 2024 deadline proposed unilaterally by Plaintiffs without any input from the District. (Doc. 180; Doc. 212, p. 133). The District believes this is contrary to longstanding Supreme Court jurisprudence emphasizing that "redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (citing cases). "When a federal

court declares an existing apportionment scheme unconstitutional, it is therefore, appropriate, whenever practicable, to afford a *reasonable* opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Id.* at 540 (emphasis added).

Absent intervention by the District, therefore, Plaintiffs would be left to themselves to propose remedial maps to the Court that would advance their own political goals and invariably lead to a change in political control of the Board. Plaintiffs' overriding goal in this litigation, of course, has been to have the Court adopt a remedial map they propose to remake the political composition of the Board through non-democratic means. The effect of a redrawn map in this fashion could have ripple effects throughout the District, including turnover of District leadership and staff, local school leadership, and teachers. That instability would inevitably trickle down to, and ultimately have a negative effect on, the students the District serves. The District has a right to represent its clear interests in limiting or avoiding these consequences

For these reasons, the District's motion is timely.

### III. <u>CONCLUSION</u>

For the reasons discussed above, the Cobb County School District respectfully requests an order granting its Motion to Intervene for the remedial stage of this case.

/s/ *Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Jonathan D. Crumly
Georgia Bar No. 199466
jonathan.crumly@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com
Scott Eric Anderson
Georgia Bar No. 105077
scott.anderson@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com

*Attorneys for*
*Cobb County School District*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(833)330-3669 (facsimile)

## LOCAL RULE 7.1 CERTIFICATION

The undersigned does hereby certify that the foregoing has been prepared with New Times Roman 14-point font in compliance with Local Rule 5.1.

/s/ *Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

17

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing to the Clerk of Court using the Court's E-file system, which will automatically send electronic mail notification of such filing to all parties who have appeared in the action.

This 9th day of January, 2024.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com