# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT
# OF GEORGIA ATLANTA DIVISION

|  |  |
|---|---|
| KAREN FINN, DR. JILLIAN FORD, HYLAH DALY, JENNE DULCIO, GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC., NEW GEORGIA PROJECT ACTION FUND, LEAGUE OF WOMEN VOTERS OF MARIETTA-COBB, and GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., | CIVIL ACTION<br><br>NO. 1:22-CV-2300-ELR |
| Plaintiffs, |  |
| v. |  |
| COBB COUNTY BOARD OF ELECTIONS AND REGISTRATION and TATE FALL, in her official capacity as Director of the Cobb County Board of Elections and Registration, |  |
| Defendants. |  |

## PLAINTIFFS' RESPONSE IN SUPPORT OF
## <u>CONTINUED JURISDICTION</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

ARGUMENT .................................................................................................2

  I.    THE REMEDIAL PROCESS WAS CONTINUOUSLY GOVERNED BY
       THIS COURT'S PRELIMINARY INJUNCTION ....................................2

  II.   THE COURT'S TASK NOW IS FUTURE-FACING AND SHOULD
       FOCUS ON RESOLUTION .........................................................6

    A.   S.B. 338 Harms Plaintiffs in the Same Way as H.B. 1028 and Should Be
        Treated as an Ongoing Injury.................................................6

    B.   Redistricting Cases Provide the Model for Ongoing Injury Despite a
        Superseding Statute .........................................................8

  III.  MOOTNESS WOULD NOT SERVE THE INTERESTS OF JUDICIAL
       ECONOMY OR JUSTICE.........................................................9

CONCLUSION ............................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Balt. Cnty. Branch of NAACP v. Balt. Cnty.*,
 No. 21-cv-03232-LKG,
 2022 U.S. Dist. LEXIS 54138 (D. Md. Mar. 25, 2022) ......................................5

*Brooks v. Ga. State Bd. of Elections*,
 59 F.3d 1114 (11th Cir. 1995) ................................................................9

*Checker Cab Operators, Inc. v. Miami-Dade Cnty.*,
 899 F.3d 908 (11th Cir. 2018) ................................................................7

*Coal. for Abolition of Marijuana Prohibition v. City of Atlanta*,
 219 F.3d 1301 (11th Cir. 2000) ..............................................................6

*Covington v. North Carolina*,
 283 F. Supp. 3d 410 (M.D.N.C. 2018),
 *aff'd in part, rev'd in part on other grounds,* 585 U.S. 969 (2018) ...................6

*Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*,
 950 F.3d 790 (11th Cir. 2020) ...............................................................7

*GRACE, Inc. v. City of Miami*,
 682 F. Supp. 3d 1264 (S.D. Fla. 2023) ..................................................5

*Hall v. Sec'y, Ala.*,
 902 F.3d 1294 (11th Cir. 2018) ..............................................................7

*Hand v. Desantis*,
 946 F.3d 1272 (11th Cir. 2020) ..............................................................7

*Holloway v. City of Va. Beach*,
 42 F.4th 266 (4th Cir. 2022) ..................................................................7

*Jacksonville Branch of NAACP v. City of Jacksonville*,
 No. 3:22-cv-493-MMH-LLL,
 2022 U.S. Dist. LEXIS 227920 (M.D. Fla. Dec. 19, 2022) ...........................3, 5

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
66 F.4th 905 (11th Cir. 2023) ..................................................................7

*Moyle v. United States*,
144 S. Ct. 2015 (2024)............................................................................6

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)...........................................................................6, 8

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................................8

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*,
590 U.S. 336 (2020)................................................................................7

*North Carolina v. Covington*,
581 U.S. 486 (2017)................................................................................4

*Reynolds v. Sims*,
377 U.S. 533 (1964)..............................................................................10

*Singleton v. Allen*,
690 F. Supp. 3d 1226 (N.D. Ala. 2023)..............................................5, 9

*United States v. Georgia*,
778 F.3d 1202 (11th Cir. 2015) .............................................................7

*United States v. Munoz*,
112 F.4th 923 (11th Cir. 2024) ..............................................................8

*Wilson v. Jones*,
130 F. Supp. 2d 1315 (S.D. Ala. 2000),
*aff'd sub nom. Wilson v. Minor*, 220 F.3d 1297 (11th Cir. 2000) ........6

## Constitutions

U.S. CONST. amend XIV ...............................................................................9

## Statutes

Voting Rights Act of 1965 (codified as amended at 42 U.S.C. §§ 1971, 1973 to 1973bb-1)..............................................................................3

**Legislation**

H.B. 1028, 2021-2022 Gen. Assemb., Reg. Sess. (Ga. 2022) ...................................1

S.B. 338, 2023-2024 Gen. Assemb., Reg. Sess. (Ga. 2024)............................*passim*

**Other Authorities**

Georgia State Senate, *Legislative Day 8 | 2024 Session | 1/24/2024*,
    VIMEO (Jan. 24, 2024), https://vimeo.com/905639740 ........................................2

Jake Busch, *Tensions Flare in First Cobb Delegation Meeting on
    School Board Maps*, Marietta Daily J. (Jan 8, 2024),
    https://www.mdjonline.com/news/local/tensions-flare-in-first-
    cobb-delegation-meeting-on-school-board-maps/article_e737d31e-
    ae55-11ee-89b4-3bfe0f0b711f.html (last visited Sept. 11, 2024)...................1, 2

## **INTRODUCTION**

This lawsuit boils down to a straightforward, single-claim redistricting case in which a preliminary injunction was ordered, and the legislature passed a new map to purportedly remedy the existing map's legal infirmities.  Though never ordered by the Court to do so, the Georgia General Assembly exercised its right to have the first chance at passing a remedial map for the Cobb County School Board in response to this Court's Order granting Plaintiffs' preliminary injunction (the "PI"). (ECF 212.)  Because of a now-dissolved stay pending appeal issued by the Eleventh Circuit at the request of non-party Cobb County School District ("CCSD"), that remedy has yet to be tested in court.  The suit is now ripe for remedial proceedings.

Briefing by Defendants and proposed Amicus CCSD[1] obfuscates the clear factual record:  Senate Bill 338 ("S.B. 338") is a remedial map.  It was passed in response to this Court's PI with the goal of remedying violations identified by this Court, and it relies on the same considerations as the H.B. 1028 Map.  The law, judicial economy, and justice favor moving ahead to remedial proceedings to finally effectuate relief for Cobb County voters.

---

[1] CCSD filed a Motion for Leave to File Amicus Brief in Connection with Court's Briefing Order as to Mootness. (ECF 245.)  CCSD's amicus status is pending. Plaintiffs do not oppose CCSD's participation as an amicus.

## **ARGUMENT**

## I.    **THE REMEDIAL PROCESS WAS CONTINUOUSLY GOVERNED BY THIS COURT'S PRELIMINARY INJUNCTION**

At every step of the legislative process, the Georgia General Assembly was responding to the PI.  S.B. 338 was not introduced until prompted by the PI, and, to the extent possible, the legislature conformed its consideration of S.B. 338 to this Court's remedial schedule.  The legislative debate around S.B. 338 centered on the specifics of the PI.  And the legislature's focus on the PI remained constant, from before S.B. 338 was filed to its final passage into law.  Simply put, S.B. 338 would not exist without, and is directly responsive to, the PI.  This Court should not take Defendants' invitation to artificially divorce the two.

The Eleventh Circuit's temporary stay of the PI did not alter the S.B. 338 legislative process.  To begin, the remedial legislative process that resulted in S.B. 338 began before the stay was granted.  S.B. 338 was introduced on January 8, 2024, following the December 14, 2023 PI and predating the January 19, 2024 stay.  On the day S.B. 338 was introduced, the Cobb County Legislative Delegation held a meeting where Sen. Setzler and Rep. Anulewicz both presented their remedial map proposals.[2]  Rep. Anulewicz noted that "while she and the rest of the delegation are

---

[2] Jake Busch, *Tensions Flare in First Cobb Delegation Meeting on School Board Maps*, MARIETTA DAILY J. (Jan 8, 2024), https://www.mdjonline.com/news/local/tensions-flare-in-first-cobb-delegation-

neither plaintiffs nor defendants in the case, it falls on them to draw a map that will pass muster in court."[3]  This began the remedial process for replacing the enjoined map—before the Eleventh Circuit issued a stay on January 19.[4] (ECF 227.)

The stay did not derail the General Assembly's work to respond to the PI.  As Sen. Setzler explained on the Senate floor, the General Assembly viewed their duty to replace the map as unflagging; despite the deadline being "enjoined by the Eleventh Circuit Court of Appeals," he argued, "we the legislature have to act on this issue and put a plan in place for the Cobb County Board of [Education] in a timely way[.]"[5]  Nor did the stay change the legislature's focus in debating and passing S.B. 338:  remedying the defects identified in the PI. (*See* ECF 246 at 7-11.) And the core issue of this litigation—whether the Voting Rights Act justified the map drawing—remained the core issue of S.B. 338's legislative process. (*Id.* at 9-11); *Accord Jacksonville Branch of NAACP v. City of Jacksonville*, No. 3:22-cv-493-MMH-LLL, 2022 U.S. Dist. LEXIS 227920, at *41 (M.D. Fla. Dec. 19, 2022) (holding that a remedial plan was insufficient where an enacting jurisdiction "failed

---

meeting-on-school-board-maps/article_e737d31e-ae55-11ee-89b4-3bfe0f0b711f.html (last visited Sept. 11, 2024).

[3] *Id.*

[4] Plaintiffs' opening brief mistakenly stated that S.B. 338 was introduced on January 30, 2024 (ECF 246 at 6-7) and the PI was stayed by the Eleventh Circuit on January 12, 2024 (ECF 246 at 6).  As reflected above, the correct dates are January 8 and January 19, respectively.

[5] Georgia State Senate, *Legislative Day 8 | 2024 Session | 1/24/2024*, at 47:34, VIMEO (Jan. 24, 2024), https://vimeo.com/905639740.

to actually remedy the effects of the racial gerrymandering discussed in the Court's Preliminary Injunction Order").

Particularly as the General Assembly's remedial redistricting process was uninterrupted by the stay, allowing that temporary stay—which existed only because a non-party erroneously attempted to invoke the Eleventh Circuit's jurisdiction—to displace the remainder of the remedial proceedings would trump both precedent and common sense.  Defendants nonetheless make much of the stay, arguing that it renders *North Carolina v. Covington*, 581 U.S. 486 (2017) inapplicable. (ECF 244 at 7-9.)  But Defendants' reading of *Covington* is illogically limited.  Tellingly, they argue the underlying litigation in *Covington* would have been moot had the North Carolina General Assembly passed a remedial map while the Supreme Court's stay of the district court's injunction was in effect. (ECF 244 at 7-8 n.4.)  But it is not practical to allow remedial jurisdiction to be defeated in this way. *Cf. Covington*, 581 U.S. at 488 (discussing the need to focus on what is fair and workable when furnishing remedies).  If a temporary stay pending appeal offered this sort of unreviewable escape hatch to evade liability for unlawful redistricting, every legislature facing a challenge and encountering a stay would be sure to take advantage of it.  This cannot be the case.

Indeed, with or without a stay of the PI, the General Assembly was never *required* by court order to enact a new map.  Rather, this Court invited the General

Assembly to do so, and the General Assembly chose to take up the Court's invitation. (ECF 212 at 33.)  As such, it is irrelevant that, as Defendants argue, the PI was not "judicially enforceable" when S.B. 338 was passed (ECF 244 at 9) because the PI was never judicially enforceable against the General Assembly to begin with.  As the General Assembly was never under a legal obligation to pass a new map, that the remedial proceedings were temporarily stayed in no way changed the character of the General Assembly's action or the effect of the new map.  The key fact is that the General Assembly's enactment of a new map occurred *after* and in response to this Court's order finding a likelihood that the existing map was an unconstitutional racial gerrymander.  From that point onward, once the appellate proceedings concluded with an affirmance of the PI, any new map would have to be assessed within the context of this Court's findings.  That assessment can and must occur now.

CCSD further argues that the PI constituting preliminary, rather than final, injunctive relief, is somehow meaningful. (ECF 245-1 at 6-9.)  This argument has no basis in law and illustrates a basic misunderstanding of the normal progression of redistricting litigation.  Remedial objections to redistricting plans are frequently entertained pursuant to preliminary injunctions. *See, e.g.*, *Singleton v. Allen*, 690 F. Supp. 3d 1226 (N.D. Ala. 2023); *Balt. Cnty. Branch of NAACP v. Balt. Cnty.*, No. 21-cv-03232-LKG, 2022 U.S. Dist. LEXIS 54138 (D. Md. Mar. 25, 2022); *City of*

- 5 -

*Jacksonville*, 2022 U.S. Dist. LEXIS 227920; *GRACE, Inc. v. City of Miami*, 682 F. Supp. 3d 1264 (S.D. Fla. 2023) (stayed on other grounds).

## II.  THE COURT'S TASK NOW IS FUTURE-FACING AND SHOULD FOCUS ON RESOLUTION

### A.  S.B. 338 Harms Plaintiffs in the Same Way as H.B. 1028 and Should Be Treated as an Ongoing Injury

The PI is no longer subject to an appeal or a stay, and thus remains undisturbed. *See, e.g.*, *Moyle v. United States*, 144 S. Ct. 2015, 2017 (2024).  With the injunction back in effect, the routine next step is for the Court to assess the sufficiency of the remedy. *See Covington v. North Carolina*, 283 F. Supp. 3d 410, 431 (M.D.N.C. 2018), *aff'd in part, rev'd in part on other grounds,* 585 U.S. 969 (2018); *Wilson v. Jones*, 130 F. Supp. 2d 1315, 1322 (S.D. Ala. 2000), *aff'd sub nom. Wilson v. Minor*, 220 F.3d 1297 (11th Cir. 2000).  Despite entreaties from Defendants and CCSD to the contrary, this case offers the Court no reason to depart from the typical process.

Defendants and CCSD are correct that in some instances, a superseding statute moots plaintiffs' underlying claims. (ECF 244 at 4-6; ECF 245-1 at 3-6.)  However, they both miss the crucial point:  superseding legislation does not moot plaintiffs' claims if it continues to injure them "in the same fundamental way." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661-62 (1993); *see also Coal. for Abolition of Marijuana Prohibition v. City of*

*Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) (holding that case is not moot if "changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction").

Defendants' citations to authority miss the mark because they do not address situations where superseding legislation does not eliminate the underlying claim. For example, in *United States v. Georgia*, the Department of Justice challenged Georgia's compliance with federal law for overseas and military voters. 778 F.3d 1202, 1204 (11th Cir. 2015). The case became moot when Georgia changed the law to bring the state into compliance with federal law. *Id.* However, as here, where plaintiffs allege that a superseding statute does not extinguish their harm, the case is not moot. (ECF 246 at 9-11.) Cases cited by CCSD are distinguishable on the same grounds and are thus similarly inapplicable.[6]

---

[6] *See Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1297 (11th Cir. 2018) (moot because relevant election had passed and unique circumstances were highly unlikely to reoccur); *Hand v. Desantis*, 946 F.3d 1272, 1275 (11th Cir. 2020) (moot when state referendum eliminated challenged conduct); *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 916 (11th Cir. 2018) (moot when state law preempted challenged ordinance such that ordinance could no longer harm plaintiffs); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338 (2020) (moot when statute gave "precise relief that petitioners requested"); *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 949 (11th Cir. 2023) (parties agreed claim moot when legislature repealed challenged provision); *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 792 (11th Cir. 2020) (parties agreed case moot when state changed challenged law); *Holloway v. City of Va. Beach*, 42 F.4th 266, 270 (4th Cir. 2022) (moot when legislature eliminated at-large voting for most city council seats in case challenging exclusive use of at-large voting).

Unlike those cases, this Court remains positioned to "give meaningful relief," *Hall*, 902 F.3d at 1297, because the superseding statute continues to injure Plaintiffs in the "same fundamental way." *Ne. Fla. Chapter*, 508 U.S. at 661-62.  Plaintiffs need not provide "evidence that the state plans to return to the prior challenged map." (ECF 244 at 6.)  They need only to be given an opportunity to show that S.B. 338 does not remedy their harms.  As such, the case is not moot.

CCSD's arguments should be disregarded for another reason.  In the Eleventh Circuit Court of Appeals, CCSD agreed with Plaintiffs that the passage of S.B. 338 did not render the case moot. (*See* ECF 246 at 14 n.15.)  Now, confoundingly, the same party argues the exact opposite point without distinction from or even mention of its earlier position.  CCSD's sudden, silent reversal of position here casts serious doubt on the credibility of their presentation.[7]  CCSD has utilized delay tactics from the start of their involvement in this litigation.  This Court should reject CCSD's newest attempt to delay just relief on the basis of disingenuous arguments.

## B. Redistricting Cases Provide the Model for Ongoing Injury Despite a Superseding Statute

Further, and most importantly, the Supreme Court has held—and both

---

[7] *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding . . . he may not thereafter, simply because his interests have changed, assume a contrary position . . . ."); *United States v. Munoz*, 112 F.4th 923, 934 (11th Cir. 2024) (explaining that judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment") (citation omitted).

Defendants and CCSD concede—that redistricting litigation in particular does not become moot merely by the passage of a superseding remedial map. (*See* ECF 244 at 6-7; ECF 245-1 at 6; ECF 246 at 11-14.)  Plaintiffs' continued assertion that the map adopted in S.B. 338 did not remedy the constitutional violations present in the previous map underscores that there remains an "ongoing" case or controversy. *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118-19 (11th Cir. 1995).  As such, as with all other redistricting cases in this posture, the Court has jurisdiction to continue the remedial process.

## III.  MOOTNESS WOULD NOT SERVE THE INTERESTS OF JUDICIAL ECONOMY OR JUSTICE

The mootness analysis must account for practical considerations and the reality of the map's inception. *See, e.g.*, *Singleton*, 690 F. Supp. 3d at 1292.  Those factors require rejection of Defendants' claim that enactment of S.B. 338 moots this case.  Endorsing their position would create a road map for insulating redistricting plans from judicial review forever, in an end-run around the Fourteenth Amendment. As in *Singleton*, Defendants' position would create "an endless paradox that only it can break, thereby depriving Plaintiffs of the ability to effectively challenge and the courts of the ability to remedy." *Id.*

Conversely, supposed practical concerns that would *prevent* this litigation from continuing are illusory.  CCSD's proposed deadline for remedial action is a red herring. (*See* ECF 245-1 at 9-11.)  While courts typically strive to vindicate the

strong public interest in conducting elections on lawful redistricting maps by completing remedial processes in time for an upcoming election to use a constitutionally compliant plan, this outcome is not doctrinally required. (*See* ECF 246 at 14-15.)  In fact, Supreme Court caselaw clearly allows the exact scenario CCSD suggests is foreclosed:  "[U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a[n] apportionment case, even though the existing apportionment scheme was found invalid." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).  Therefore, the common-sense way to deal with these claims is through a normal remedial process rather than through a new lawsuit that would incorporate the record of this one and involve the same parties and claims.

## CONCLUSION

For the foregoing reasons, the Court should find continuing jurisdiction and set a schedule for resolution.

DATED this 13th day of September, 2024.

Respectfully Submitted,

*/s/ Pichaya Poy Winichakul*
Bradley E.  Heard (Ga. Bar No.  342209)
Pichaya Poy Winichakul (Ga. Bar No.  246858)
Michael Tafelski (Ga. Bar No.  507007)
Sabrina S. Khan*
Courtney O'Donnell (Ga. Bar No. 164720)
SOUTHERN POVERTY LAW CENTER
150 E.  Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
michael.tafelski@splcenter.org
sabrina.khan@splcenter.org
courtney.odonnell@splcenter.org

Caitlin May (Ga. Bar No. 602081)
Cory Isaacson (Ga. Bar No. 983797)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cmay@acluga.org
cisaacson@acluga.org
rgarabadu@acluga.org

Jeff Loperfido*
Christopher Shenton*
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
jeffloperfido@scsj.org
chrisshenton@scsj.org

Ezra D.  Rosenberg*
Julie M.  Houk*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
sfgold@lawyerscommittee.org

Douglas I. Koff*
Jacqueline Maero Blaskowski*
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000
Douglas.Koff@srz.com
Thomas.Mott@srz.com
Jacqueline.Maeroblaskowski@srz.com

*Admitted Pro Hac Vice

Counsel for Plaintiffs Karen Finn, Dr. Jillian
Ford, Hylah Daly, Jenne Dulcio, GALEO Latino
Community Development Fund, Inc., New Georgia
Project Action Fund, League of Women Voters of
Marietta-Cobb, and Georgia Coalition For The
People's Agenda, Inc.

/s/ Caren E.  Short
Caren E.  Short (Ga Bar No. 990443)
LEAGUE OF WOMEN VOTERS
OF THE UNITED STATES
1233 20th Street NW, Suite 500
Washington, DC 20036
202-921-2219
cshort@lwv.org

*Counsel for Plaintiff League of Women Voters Marietta-Cobb*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Respectfully submitted this 13th day of September, 2024.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No.  246858)
SOUTHERN POVERTY LAW CENTER
150 E.  Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

*Counsel for Plaintiffs Karen Finn, Dr. Jillian Ford, Hylah Daly, Jenne Dulcio, GALEO Latino Community Development Fund, Inc., New Georgia Project Action Fund, League of Women Voters of Marietta-Cobb, and Georgia Coalition For The People's Agenda, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notification of such filing to all

counsel of record in this case.

Respectfully submitted this 13th day of September, 2024.

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar No.  246858)
SOUTHERN POVERTY LAW CENTER
150 E.  Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
(404) 521-6700
poy.winichakul@splcenter.org

*Counsel for Plaintiffs Karen Finn, Dr. Jillian Ford,*
*Hylah Daly, Jenne Dulcio, GALEO Latino Community*
*Development Fund, Inc., New Georgia Project Action*
*Fund, League of Women Voters of Marietta-Cobb, and*
*Georgia Coalition For The People's Agenda, Inc.*